George J. Gigounas (CA Bar No. 209334)
george.gigounas@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105
Tel:   415.836.2500
Fax:   415.836.2501

*Attorney for Defendant*
*Michelin North America, Inc*

Gwendolyn Keyes Fleming (Admitted *Pro Hac Vice*)
Gwen.KeyesFleming@us.dlapiper.com
**DLA PIPER LLP (US)**
500 8th Street, NW
Washington, DC 20004
Tel:   202.799.4000
Fax:   202.799.5000

*Attorney for Defendant*
*Kumho Tire U.S.A., Inc.*

Adam Baas (CA Bar No. 220464)
adam.baas@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel:   415.836.2500
Fax:   415.836.2501

*Attorney for Defendant*
*Hankook Tire America Corp.*

Susan E. Smith (CA Bar No. 329539)
ssmith@bdlaw.com
**BEVERIDGE & DIAMOND PC**
456 Montgomery Street, Ste. 1800
San Francisco, CA  94104
Tel:   415.262.4023

*Attorneys for Defendants*
*Bridgestone Americas Tire   Operations, LLC; Continental Tire the Americas, LLC; GITI Tire (USA), Ltd.; The Goodyear Tire & Rubber Company, individually and as successor in interest to Cooper Tire & Rubber Company; Nokian Tyres Inc.; Nokian Tyres U.S. Operations, LLC; Pirelli Tire LLC; Sumitomo Rubber North America, Inc.; Sumitomo; Rubber USA, LLC; Toyo Tire Holdings of Americas, Inc.; and Yokohama Tire Corporation.*

(Additional Counsel on Signature Page)

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INSTITUTE FOR FISHERIES RESOURCES; and PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS,<br><br>                    Plaintiffs,<br><br>       v.<br><br>BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC; CONTINENTAL TIRE THE AMERICAS, LLC; GITI TIRE (USA), LTD.; THE GOODYEAR TIRE & RUBBER | CASE NO. 3:23-cv-05748-JD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>DATE: May 16<br>TIME: 10:00 A.M.<br>COURTROOM: 11, 19TH Floor<br>JUDGE: Hon. James Donato |

CO.; COOPER TIRE & RUBBER CO.; )
HANKOOK TIRE AMERICA CORP.; KUMHO )
TIRE U.S.A., INC.; MICHELIN NORTH )
AMERICA, INC.; NOKIAN TYRES; PIRELLI )
TIRE LLC; SUMITOMO RUBBER NORTH )
AMERICA, INC.; TOYO TIRE HOLDINGS OF )
AMERICAS INC.; and YOKOHAMA TIRE )
CORP., )
)
)
                Defendants. )

## I. INTRODUCTION

The Ninth Circuit's four-factor test under the primary jurisdiction doctrine strongly favors dismissal of this case to avoid conflict with EPA's comprehensive regulatory engagement on these precise issues. EPA is currently addressing, on an expedited basis, the novel and highly technical issues pertaining to chemical regulation, stormwater management, and fish biotoxicity that are central to Plaintiffs' claims, in coordination with federal, state, and local government agencies, legislators, tribes, industry, NGOs, scientists, fisheries businesses, and individuals. Plaintiffs' pursuit of this claim in this forum creates a substantial risk of conflict with EPA's efforts and is not poised to advance more quickly. Plaintiffs' Opposition does not overcome this argument. Instead, it mischaracterizes a Ninth Circuit decision as prohibiting primary jurisdiction in *any* ESA case, and then superficially distinguishes between ESA and non-ESA cases to address Defendants' substantively aligned precedents where, as here, resolution of the issues pursuant to a comprehensive regulatory scheme promotes efficiency and avoids inconsistency.

Further, Plaintiffs' ESA claim is not legally viable. The inclusion of a chemical in a lawful consumer product is not a "take" under the plain language of the ESA and its implementing regulations, which require specific *conduct that takes a listed species* to constitute actionable harm. The expansion of the ESA's "take" definition as Plaintiffs propose would be drastic and implicate nearly any maker or distributor of lawful consumer products. No case has ever found a "take" in remotely similar circumstances. Plaintiffs' attempts to argue precedent only underscores that their legal theory is unsupported by the text of the ESA.

This Court should dismiss Plaintiffs' claim under the primary jurisdiction doctrine or dismiss it with prejudice because Plaintiffs assert no cognizable "take" as a matter of law.

## II. ARGUMENT

### A. The Doctrine of Primary Jurisdiction is Applicable Here and Should Guide the Court's Discretion.

Plaintiffs' argument that primary jurisdiction cannot apply as a matter of law is unsupported and should be rejected. Plaintiffs essentially ignore Defendants' contention that the doctrine supports dismissal of this case because it implicates important technical and policy

questions that EPA is actively and comprehensively regulating. Plaintiffs provide no legitimate argument against the doctrine under the Ninth Circuit's four-factor test, nor disagree that EPA's TSCA regulatory process is a proper means to investigate and address inclusion of 6PPD in tires.

### 1. Plaintiffs Mischaracterize Ninth Circuit Precedent and Wrongly Argue Primary Jurisdiction Cannot Apply as a Matter of Law.

Plaintiffs flatly misstate the Ninth Circuit's holding in *Washington Toxics Coalition v. EPA*, claiming the Court determined primary jurisdiction was "'inapplicable' in ESA cases" because other environmental statutes "do not 'trump those [remedies] Congress expressly made available under the ESA.'" Pltfs.' Opp. to Motion to Dismiss (ECF 115) ("Opp.") at 5:19-22; *see also, id.* 1:18-21; 7:1-12. Not so. Beyond mentioning the words twice in passing, the Court never evaluated the primary jurisdiction doctrine at all, let alone found it "inapplicable in ESA cases."

In *Washington Toxics*, a coalition of environmental organizations (including Plaintiffs in this case) claimed EPA violated the ESA § 7 by failing to consult with the National Marine Fisheries Service, before issuing a series of pesticide registrations under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). *Wash. Toxics Coal. v. EPA*, 413 F.3d 1024, 1028 (9th Cir. 2005) *abrogated on other grounds as recognized in Ctr. for Food Safety v. Regan,* 56 F.4th 648, 653 (9th Cir. 2022)). The Court examined, and rejected, EPA's argument that, *as a matter of law*, its authority under FIFRA trumped its consultation obligations under the ESA. *Id.* at 1031-33. The Court then spent two paragraphs evaluating and rejecting EPA's argument that, *as a matter of law*, FIFRA's administrative procedures for challenging registrations had to be exhausted before plaintiffs could pursue ESA relief. *Id.* at 1033-34. While the Court glancingly mentioned the words "primary jurisdiction" twice, it never analyzed the application of the doctrine's factors, nor concluded that the doctrine could never apply to ESA citizen suits. *Id.* at 1033, 1034. Instead, the Court seemingly treated the doctrine as an extension of EPA's administrative exhaustion argument and summarily found both "inapplicable in *this* case." *Id.* at 1034 (emphasis added).[1]

---

[1] Plaintiffs' desired *per se* rule of categorical inapplicability conflicts with the Supreme Court's instructions: "No fixed formula exists for applying the doctrine of primary jurisdiction. In *every case* the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *United States v.*

1       The instant Motion differs in nearly every relevant respect. In asking this Court to dismiss

2 under the primary jurisdiction doctrine, Defendants do not argue that TSCA or the CWA preclude

3 Plaintiffs, as a matter of law, from asserting an ESA claim. Nor do Defendants argue Plaintiffs

4 have failed to exhaust administrative remedies. Rather, Defendants point to EPA's extensive

5 engagement and crystal-clear intent to address the precise complex and novel issues that Plaintiffs

6 ask this Court to concurrently take on. Defs.' Motion to Dismiss (ECF 111) ("Motion") at 3:17-

7 4:19. Applying the Ninth Circuit's four-factor test to the instant factual record overwhelmingly

8 favors discretionary dismissal or, at a minimum, a stay of this case. EPA's simultaneous TSCA

9 proceedings are directly addressing control of the manufacture, processing, use, or distribution of

10 6PPD in tires to eliminate any unreasonable risk, including to ESA-protected salmonids.

11 Considered with its extensive other actions on 6PPD-q, EPA is developing a regulatory approach

12 to the entire range of activity that Plaintiffs argue constitutes a "take" under the ESA § 9. *Davel*

13 *Comm., Inc. v. Qwest Corp.*, 460 F.3d 1075, 1090 (9th Cir. 2006) ("It is precisely the purpose of

14 the primary jurisdiction doctrine to avoid the possibility of conflicting rulings by courts and

15 agencies concerning issues within the agency's special competence.").

16       Plaintiffs similarly misapprehend the primary jurisdiction doctrine when arguing that:

17 (i) under *Washington Toxics*, FIFRA and the ESA have "complementary purposes such that" EPA

18 could not escape its obligation to comply with the ESA (Opp. 7:9-12), and thus (ii) "TSCA and

19 FIFRA are similar statutes," so TSCA should not bar "simultaneous enforcement of remedies

20 available through the ESA." *Id.* at 7:13-15, 18-19. Again, Defendants do not argue that primary

21 jurisdiction is a "bar" to simultaneous enforcement of any laws, but rather that it guides the

22 Court's discretion in avoiding the risks of frustrating or abrogating EPA's regulatory discretion

23

24 *W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956) (emphases added). Accordingly, only three cases cite to *Washington Toxics Coalition* and mention the term "primary jurisdiction," none of which support Plaintiffs' new reading of its holding. *See Ctr. for Biological Diversity v. Envtl. Protec. Agency*,

25 No, 11-cv-00293-JCS, 2013 WL 1729573, at *16 (N.D. Cal. Apr. 22, 2013) (the administrative exhaustion and primary jurisdiction doctrines do not concern jurisdictional provisions of FIFRA §

26 16); *Coalition for a Sustainable Delta v. Fed. Emerg. Mgt. Agency*, 812 F. Supp. 2d 1089, 1129 (E.D. Cal. 2011) ("doctrines of exhaustion and primary jurisdiction are inapplicable in a ESA § 7

27 challenge to EPA's failure to consult regarding its registration of certain pesticides…"); *Nat. Resources Def. Council v. Norton,* No. 1:05-cv-01207-OWW-LJO, 2007 WL 14283, at *16 (E.D.

28 Cal. Jan. 3, 2007) (request to stay denied pending completion of re-consultation under ESA § 7).

and of creating conflicting rulings or other confusion. *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008) (primary jurisdiction is "designed to protect agencies possessing quasi-legislative powers and that are actively involved in the administration of regulatory statues") (quotations omitted). Relatedly, despite Plaintiffs' effort to distinguish the aquatic life toxics criteria for 6PPD-q in stormwater proposed by Washington Ecology, their repeated contention that 6PPD-q is "a transformation product" discharged into the environment (Opp. 12:2-4; 13:17-20) reinforces the significance of this regulatory action, which, after EPA review and approval, will become permitting criteria.[2]

### 2. Plaintiffs Do Not Refute The Application of Primary Jurisdiction In This Case.

Beyond mischaracterizing *Washington Toxics* as holding primary jurisdiction was "inapplicable" in ESA cases, and misapprehending Defendants' argument as one of compulsion not discretion, Plaintiffs do not directly contest that the applicable Ninth Circuit factors favor dismissal. *Clark*, *supra*, 523 F.3d at 1114 (listing primary jurisdiction factors). Plaintiffs agree that EPA's TSCA process and this Court's adjudication will address the same issues (Opp. 7:20-23; 8:6-13) but make superficial distinctions in the case law between "ESA" and "non-ESA" cases.

Plaintiffs seek to distinguish Defendants' citations by arguing they did not involve ESA cases and were "claims regarding 'novel and technical' questions that extensively overlapped with pending agency determinations. Opp. 8:26-9:7. But these non-ESA cases are instructive here precisely because, to Defendants' knowledge, no ESA claim of this type has ever been brought by any plaintiff, let alone simultaneously with heavily active, comprehensive EPA involvement. And that these cases involved "novel and technical" questions with extensive agency overlap emphatically *supports* the Court's exercise of its discretion under primary jurisdiction here. The 6PPD issues are textbook examples of novel and technical matters and the extensive overlap of Plaintiffs' case with pending EPA determinations is obvious.[3]

---

[2] Indeed, on March 27, 2024, EPA Region 10 announced $12 million in funding for upgrades to Puget Sound stormwater infrastructure to reduce 6PPD and other toxics from "entering Puget Sound through retrofit planning, stormwater parks, and finding and fixing toxic hotpots." Defs.' Supp. Request for Judicial Notice ("RJN"), Ex. J.

[3] Plaintiffs' argument that this case is distinguished from those with "extensive overlap" with pending agency actions (Opp. 8:26-9:19) is particularly absurd, considering EPA is actively

4

1   In contrast, Plaintiffs string-cite a litany of ESA § 9 cases that they argue "uniformly"
2   rejected the primary jurisdiction doctrine. Opp. 9:9-19. These site-specific cases involved direct
3   species-impacting activities, such as operating dams or harvesting timber. Parties in these cases
4   argued primary jurisdiction based on either incidental take permit applications or agency
5   consultation that are irrelevant to this case or involve no ongoing federal agency activity. *None* of
6   these cases involved novel, complex technical issues of national applicability that EPA or another
7   federal agency was actively, comprehensively addressing. *See*, *Coho Salmon v. Pac. Lumber Co.*,
8   61 F. Supp. 2d 1001, 1016 (N.D. Cal. 1999) (regarding timber harvesting, "no potential for
9   conflicting decisions" between the court's § 9 take determination and regulators' habitat
10  conservation plan and incidental take permit decisions); *Our Children's Earth v. Leland Stanford*
11  *Junior Univ.*, No. 13-CV-00502-EDL, 2015 WL 12745786 at *1 (N.D. Cal. Dec. 11, 2015)
12  (rejecting stay based on defendant's "pre-permitting discussions with agencies" to alleviate dam
13  operation on fish passage); *WaterWatch of Or. v. Winchester Water Control Dist.*, No. 3:20-CV-
14  01927-IM, 2021 WL 4317150 at *6-7 (D. Or. Sept. 22, 2021) ("no indication that either [state
15  agency] is conducting any process that will impact the operations" of defendant's dam);
16  *Loggerhead Turtle v. Cnty. Council of Volusia Cnty., Fla.*, 896 F. Supp. 1170, 1177 (M.D. Fla.
17  1995) (court is not divested of jurisdiction "simply because the County has filed an application for
18  an incidental taking permit" for ordinances affecting protected turtle species); *Atl. Salmon Fed'n*
19  *U.S. v. Merimil Ltd. P'ship,* No. 1:21-CV-00257-JDL, 2022 WL 951709, at *4 (D. Me. Mar. 30,
20  2022) (NMFS's ongoing biological opinion analysis of dam operations "has little bearing on [the
21  court's] analysis of what harms are caused by the status quo and whether anything should be done
22  about those harms between now and the date that the [d]efendants, if successful in the
23  administrative process, restore their incidental take authority"); *Friends of Merrymeeting Bay v.*
24  *NextEra Energy Res. LLC,* No. 2:11-CV-38-GZS, 2011 WL 4025713 (D. Me. July 22, 2011),
25  aff'd, No. 2:11-CV-38-GZS, 2011 WL 4025508 (D. Me. Sept. 9, 2011) (defendants commenced

28  addressing the identical issue raised in this case, at the request of Plaintiffs' counsel, who wrote to EPA that these issues "***are precisely what TSCA was designed to address***." Motion 3:17-28.

incidental take authorization processes for dam operations).[4]

Finally, Plaintiffs claim primary jurisdiction resting with EPA "would only serve to 'significantly postpone a ruling that this court is otherwise competent to make.'" Opp. 10:2-8, quoting *Robles v. Domino's Pizza LLC*, 913 F.3d 898 (9th Cir. 2019). But the facts do not bear out Plaintiffs' timing concern—in fact, they suggest the opposite. EPA is aggressively pursuing its regulatory authority. Before this case was filed, EPA granted the TSCA Petition (Defs. RJN (ECF 111-1) Ex. B.), determining that a rulemaking under TSCA § 6(a) can proceed without a separate risk evaluation, typically a multi-year process. In granting the TSCA Petition, EPA explained it intends to issue an Advance Notice of Proposed Rulemaking to manage risk from 6PPD in tires by Fall 2024 and has *already* issued a separate Proposed Rule seeking unpublished 6PPD health and safety studies. *Id.*; Supp. RJN, Ex. K (EPA Proposed Rule issued on March 26, 2024).[5] EPA is thus likely to issue a Notice of Proposed Rulemaking under TSCA § 6(a) before the January 2026 trial in this case, increasing the substantial risk of conflicting rulings and abrogation of EPA regulatory authority should this case proceed. Ninth Circuit precedent supports dismissal under primary jurisdiction, given that "efficiency is the deciding factor in whether to invoke primary jurisdiction." *Robles, supra*, 913 F.3d at 910. This Court should exercise its discretion to allow EPA's comprehensive and interdisciplinary regulatory effort to proceed. *See*, *e.g.,* Motion 10:3-5.

**B. The Defendants Have Not Committed a "Take" Under the ESA.**

**1. Inclusion of a Chemical In a Lawful Consumer Product Is Not a "Take".**

The ESA defines "take" as to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect" a listed species. 16 U.S.C. § 1532(19). Each of these terms requires "*conduct* that poses a threat of serious harm to an endangered animal." *People for the Ethical Treatment of Animals,*

---

[4] Plaintiffs incompletely cite *Davel* to suggest primary jurisdiction should not be applied at the motion to dismiss stage (Opp. 6:17-22), without including the Ninth Circuit's full statement: "if, on the other hand, the primary jurisdiction doctrine applies on any set of facts that could be developed by the parties, there is no reason to await discovery, summary judgment, or trial, *and the application of the doctrine properly may be determined on the pleadings*." *Davel*, *supra*, 460 F.3d at 1088 (emphasis added).

[5] Further illustrating EPA's commitment to rapid action, a recent EPA Region 10 press release asserted it addressed calls for a method to measure 6PPD-q in water "in what seems like lightspeed… The faster we can identify where problems exist, the faster we can correct them." Supp. RJN, Ex. L.

*Inc. v. Miami Seaquarium*, 879 F.3d 1142, 1147 (11th Cir. 2018) (emphasis added). Defendants' "inclusion" of 6PPD in tires falls well outside this definition of a "take," as a matter of law, because it does not involve any act to "kill," "harass," "wound," or "harm" the protected salmonids.[6] (*See* Motion 11:1-14:6.) Plaintiffs effectively concede this by citing (as did Defendants) the NMFS regulations defining "harm" under the ESA as "an act which *actually kills or injures* fish or wildlife." 50 CFR § 222.102 (emphasis added). Opp. 11:14-15.

Plaintiffs cite no authority to support their theory of product "take." That is because there is none. Nothing in the ESA, the regulations, or agency guidance provides that the manufacture and sale of a product can "take" a listed species. Instead, Plaintiffs argue that that "inclusion" of a chemical in a product is somehow a "discharge" into ESA protected waters because the Supreme Court in *Babbitt* found that § 9 "harm" could include "indirect as well as direct injuries." (Opp. 11:18-20, citing *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 697-98 (1995).) Plaintiffs then ignore statutory construction and logic, instead engaging in an irrelevant proximate cause analysis. (Opp. 12:5-13:20.) But the statute's language cannot be ignored. The inclusion of a chemical in a lawful consumer product is not an "indirect injury/discharge" to protected species in specific West Coast waterways. (Motion 12:15-14:6.)

Plaintiffs' proximate cause and foreseeability arguments are grounded in an impermissible stretch of their allegations. Plaintiffs now claim Defendants' "tires [ ], by design, *discharge* [6PPD-q]... *into the environment, where it kills salmonids within hours*..."[7] Opp. 12:2-4

---

[6] Plaintiffs fail to refute or meaningfully engage with Defendants' argument, instead addressing only "foreseeability" and proximate cause. Opp. 15:6-7. "A plaintiff's failure to respond to a party's argument in an opposition to a motion to dismiss amounts to a concession that such claims should in fact be dismissed." *2Tee Couture, Inc. v. By Together*, No. 2:14-cv-07735-R-PJWx, 2014 WL 12577077, at *3 (C.D. Cal., Dec. 16, 2014) (quotation omitted); *see also Pernell v. City of Los Angeles*, 650 F.Supp.3d 910, 933 (C.D. Cal. 2022) ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.") (quotation omitted).

[7] The Amended Complaint does not allege Defendants themselves release 6PPD-q to the environment. *See e.g.,* FAC (ECF 19) ¶¶ 2, 5, 78. Plaintiffs may not assert different theories of liability than those of which they explicitly notified the defendants. *See Reno v. Nielson*, 424 F.Supp.3d 1045, 1053 (D. Haw. 2019) ("An opposition to a motion to dismiss is an improper vehicle to assert additional facts not initially alleged, which Plaintiff may properly assert through an amended complaint").

(emphasis added); *see also id.* 13:17-20. For the first time, Plaintiffs argue that Defendants themselves "discharge" 6PPD-q "into" salmonid waters. But the Amended Complaint alleges that Defendants manufacture and distribute tires. They do not "discharge"—directly or indirectly— 6PPD-q or anything else into the aquatic environment. This implication is false and not plausible.

### 2. The Consequences of Plaintiffs' Theory of "Take" Liability are Extreme.

If accepted here, Plaintiffs' argument could be applied to the manufacture, distribution, or sale of any product or component that may harm a listed species, all of which could then cause a "take."[8] This result is fundamentally at odds with the ESA's very specific definitions, which focus on *conduct* that takes a species. It is also an unprecedented argument. If accepted here, for example, petroleum refineries and brake manufacturers could be enjoined due to the "foreseeable" shedding of motor oil, gasoline, and brake dust to roads during vehicle operations. Manufacturers of carbon-fiber windmill blades could be enjoined due to the "foreseeable" incidental take of listed birds, bats, and winged insects. Boat manufacturers could be enjoined due to "foreseeable" pursuit, harassment, or vessel collisions with listed marine mammals. Fishing rod and tackle manufacturers could be enjoined due to the "foreseeability" of sport fishers catching listed species. These are not the results Congress intended. The text of the ESA and its implementing regulations, which also define the scope of a § 9 "take," do not allow such claims or injunctions.

### 3. Plaintiffs' Caselaw Authority is Inapposite or Supports Defendants' Position.

No case holds that manufacture or distribution of a product constitutes a "take" nor do the cases salvage Plaintiffs' failure to plausibly allege the initial requisite *conduct* that could constitute a "take." Instead, Plaintiffs analogize to two types of ESA "take" cases: (1) those involving direct species-impacting conduct via habitat alteration and food reduction; and (2) those involving government authorization of "take" conduct. Neither type pertains to the conduct at issue here.

The first case type involves the *actual* conduct that modifies, alters, or destroys a protected species' habitat or infringes on a species' food source. *See, e.g.*, Opp. 13:7-15 and n. 5 (citing *National Wildlife Federation v. Burlington Northern Railroad*, 23 F.3d 1508 (9th Cir. 1994) (train

---

[8] Notably, the ESA can provide for criminal liability for "take". *See* 16 U.S.C. § 1539 (imposing criminal liability for general intent of "knowingly" violating the ESA).

1  derailments caused corn spills along tracks, altering grizzly bear habitat and feeding, resulting in
2  bear deaths); *Palila v. Hawaii Dept. of Land and Natural Resources*, 852 F.2d 1106 (9th Cir.
3  1988) (state's permitting sheep in endangered Palila habitat decreased available food and degraded
4  habitat to possible extinction); *Defenders of Wildlife v. Boyle*, 608 F. Supp. 3d 336, 345-46
5  (D.S.C. 2022) (defendant directly harvested critical food source from protected species' habitat).

6  The second case type relates to *government authorization* of third-party conduct that
7  causes a "take." Opp. 13 n. 5, 14:1-15:3. In *Strahan v. Coxe*, a state agency licensed the use by
8  fishers of gillnets and lobster pots, which use harmed a threatened whale species. 127 F.3d 155,
9  163-64 (1st Cir. 1997), *cert. denied*, 525 U.S. 830 (1998). In *Loggerhead Turtle v. Cnty. Council*
10 *of Volusia Cnty., Fla.*, a county whose ordinance allowed landowners to use beachfront lighting
11 that harmed protected sea turtles was liable for a "take." 148 F.3d 1231, 1251 (11th Cir. 1998).
12 And in *Nat'l Wildlife Fed'n v. Hodel*, government authorization to use lead shot in hunting was a
13 "take" of endangered species that consumed shot animals and suffered lead poisoning. No. S-85-
14 0837-EJG (E.D. Cal. 1985), 23 Env't Rep. Cas. (BNA) 1089, 1092–93.[9] Finally, Plaintiffs cite
15 ESA pesticide registration cases, where EPA was sued for failure to prevent harm by registering
16 pesticides, the application of which harmed listed species.[10]

17 None of these cases expand the scope of direct or indirect private party conduct that
18 constitutes a § 9 "take." They all involve underlying *conduct* that, while authorized by
19 government, still directly or indirectly "takes" a listed species. In *Strahan v. Coxe,* nobody sued
20 the manufacturer or distributor of the gillnets or lobster pots. In *Loggerhead Turtle*, nobody sued
21 the companies that made the lights used by landowners on the beach. In *National Wildlife*
22 *Federation v. Hodel*, nobody sued the manufacturer of the lead shot that hunters purchased and

---

[9] The relevant reasoning of *American Bald Eagle v. Bhatti*, 9 F.3d 163, 164 (1st Cir. 1993), was the same, but with insufficient evidence of lead shot consumption.

[10] *Defenders of Wildlife v. Administrator, E.P.A.*, 882 F.2d 1294, 1301 (8th Cir. 1989) (EPA's registering of certain pesticides without necessary incidental taking statement violates ESA ); *Nw. Coal. for Alternatives to Pesticides v. U.S. E.P.A.*, No. C10-1919 TSZ, 2012 WL 4511371, at *7–9 (W.D. Wash. Oct. 1, 2012) (finding causation addressing where EPA "failed to ensure that the pesticide registrations and labels governing the use of these six pesticides comply with its obligation under the ESA to avoid jeopardy, adverse modification, and take of listed salmonids").

used. And in the pesticide cases, nobody sued the manufacturers of the registered pesticides.[11]

### 4. Plaintiffs are Not Without an ESA Remedy.

The crux of Plaintiffs' Amended Complaint is the discharge of roadway runoff containing 6PPD-q. Plaintiffs' claim is not cognizable against the Defendants. If the facts are as the Plaintiffs have alleged in their Amended Complaint, however, the parties who facilitate the actual conduct and control the discharge of such roadway runoff may be subject to ESA claims.

NMFS regulations define conduct that "may harm listed species and, therefore constitute a 'take' under the ESA." 64 Fed. Reg. 60727, 60730 (Nov. 8, 1999). That list includes "*[d]ischarging* pollutants such as oil, toxic chemicals, radioactivity, carcinogens, mutagens, teratogens or organic nutrient-laden water including sewage water into a listed species' habitat." 64 Fed. Reg at 60370 (emphasis added). The Defendants do not discharge pollutants into salmonid habitats. But there are parties who may—the operators of road and highway systems. Such parties have been pursued, successfully, for violations of the ESA in the past.

The Plaintiffs know this. The Amended Complaint admits that "[c]urrent stormwater management practices are nonexistent to insufficient to remove 6PPD-q from hard surfaces and stormwater runoff or to prevent it from entering aquatic environments." FAC (ECF 19) ¶ 95. And they know, too, that in June 2023, the Center for Biological Diversity issued a 60-day notice of intent to sue Federal and state highway authorities for violating ESA § 7, due to discharges of 6PPD-q in stormwater runoff. Supp. RJN, Ex. M. The Plaintiffs could have pursued claims against such operators but have not. They have brought the wrong defendants to the table.

### III.  CONCLUSION AND RELIEF

This Circuit's standard for applying the doctrine of primary jurisdiction is amply satisfied in this case and no authority insulates the ESA from the doctrine. Further, Defendants have not committed a "take" as a matter of law. Defendants thus ask that the Court dismiss Plaintiffs' case.

///

---

[11] The personal injury cases involving tire manufacturers are irrelevant to this ESA litigation. Opp. 15, n. 7. Damages suits describing truck tire blowouts and detreading have nothing to do with the ESA or this case.

|   |   |   |
|---|---|---|
| | | Respectfully submitted, |
| Dated: March 29, 2024 | | **DLA PIPER LLP (US)** |
| | | By:  /s/ *George Gigounas* |
| | | GEORGE J. GIGOUNAS |
| | | CAROLINE LEE |
| | | PAUL WIERENGA (*Admitted Pro Hac Vice*) |
| | | Attorneys for Defendant Michelin North America, Inc. |
| Dated:  March 29, 2024 | | **DLA PIPER LLP (US)** |
| | | By:  /s/ *Gwendolyn Keyes Fleming* |
| | | GWENDOLYN KEYES FLEMING (*Admitted Pro Hac Vice*) |
| | | JUSTIN PARK |
| | | DONGHYUN KIM |
| | | Attorneys for Defendant Kumho Tire U.S.A., Inc. |
| Dated:  March 29, 2024 | | **DLA PIPER LLP (US)** |
| | | By:  /s/ *Adam Baas* |
| | | ADAM BAAS |
| | | ALLEXANDERIA BINGHAM |
| | | Attorneys for Defendant Hankook Tire America Corp. |
| Dated:  March 29, 2024 | | **BEVERIDGE & DIAMOND PC** |
| | | By:  /s/ *Susan E. Smith* |
| | | SUSAN E. SMITH |
| | | LOREN DUNN (*Admitted Pro Hac Vice*) |
| | | W. PARKER MOORE (*Admitted Pro Hac Vice*) |
| | | Attorneys for Defendants Bridgestone Americas Tire Operations, LLC; Continental Tire the Americas, LLC; GITI Tire (USA), Ltd.; The Goodyear Tire & Rubber Company, individually and as successor in interest to Cooper Tire & Rubber Company; Nokian Tyres Inc.; Nokian Tyres U.S. Operations, LLC; Pirelli Tire LLC; Sumitomo Rubber North America, Inc.; Sumitomo; Rubber USA, LLC; Toyo Tire Holdings of Americas, Inc.; and Yokohama Tire Corporation. |

I, George J. Gigounas, hereby attest pursuant to Civil Local Rule 5-1(i)(3) that all other signatories listed, and on whose behalf the filing is submitted, concur in the contents of this filing and have authorized it.

Dated:  March 29, 2024                             **DLA PIPER LLP (US)**

                                                                    By:   /s/ *George Gigounas*
                                                                                 GEORGE J. GIGOUNAS