| | |
|---|---|
| Susan E. Smith (CA Bar No. 329539)<br>ssmith@bdlaw.com<br>**BEVERIDGE & DIAMOND PC**<br>456 Montgomery Street, Ste. 1800<br>San Francisco, CA  94104<br>Tel:    415.262.4023<br>*Attorneys for Defendants*<br>*Bridgestone Americas Tire Operations, LLC;*<br>*Continental Tire the Americas, LLC; GITI*<br>*Tire (USA), Ltd.; The Goodyear Tire &*<br>*Rubber Company, individually and as*<br>*successor in interest to Cooper Tire & Rubber*<br>*Company; Nokian Tyres Inc.; Nokian Tyres*<br>*U.S. Operations, LLC; Pirelli Tire LLC;*<br>*Sumitomo Rubber North America, Inc.;*<br>*Sumitomo Rubber USA, LLC; Toyo Tire*<br>*Holdings of Americas, Inc.; and Yokohama*<br>*Tire Corporation.* | George J. Gigounas (CA Bar No. 209334)<br>george.gigounas@us.dlapiper.com<br>**DLA PIPER LLP (US)**<br>555 Mission Street, Suite 2400<br>San Francisco, CA 94105<br>Tel:    415.836.2500<br>*Attorney for Defendant*<br>*Michelin North America, Inc*<br><br>Gwendolyn Keyes Fleming (Admitted *Pro Hac Vice*)<br>Gwen.KeyesFleming@us.dlapiper.com<br>**DLA PIPER LLP (US)**<br>500 8th Street, NW<br>Washington, DC 20004<br>Tel:    202.799.4000<br>*Attorney for Defendant*<br>*Kumho Tire U.S.A., Inc.* |

Adam Baas (CA Bar No. 220464)
adam.baas@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel:    415.836.2500
*Attorney for Defendant*
*Hankook Tire America Corp.*

(Additional Counsel on Signature Page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INSTITUTE FOR FISHERIES RESOURCES; and PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS,<br><br>              Plaintiffs,<br><br>      vs.<br><br>BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC; CONTINENTAL TIRE THE AMERICAS, LLC; GITI TIRE (USA) Ltd.; THE GOODYEAR TIRE & RUBBER COMPANY, individually and as | Case No. 23-cv-05748-JD<br><br>**DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS**<br><br>Note on Motion Calendar:<br>July 25, 2024 |

DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS –
Case No. 23-cv-05748-JD **-** Page 1

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7 | successor in interest to COOPER TIRE & RUBBER COMPANY; HANKOOK TIRE AMERICA Corp.; KUMHO TIRE U.S.A., Inc.; MICHELIN NORTH AMERICA, Inc.; NOKIAN TYRES Inc.; NOKIAN TYRES U.S. OPERATIONS LLC; PIRELLI TIRE LLC; SUMITOMO RUBBER NORTH AMERICA, Inc.; SUMITOMO RUBBER USA, LLC; TOYO TIRE HOLDINGS OF AMERICAS Inc.; and YOKOHAMA TIRE Corporation.<br><br>                             Defendants. |

## NOTICE OF MOTION AND MOTION TO DISMISS

Please take notice that on July 25, 2024, at 10:00 a.m. before the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Bridgestone Americas Tire Operations, LLC; Continental Tire The Americas, LLC; Giti Tire (USA) Ltd.; The Goodyear Tire & Rubber Company, individually and as successor in interest to Cooper Tire & Rubber Company; Hankook Tire America Corp.; Kumho Tire U.S.A., Inc.; Michelin North America, Inc.; Nokian Tyres Inc.; Nokian Tyres U.S. Operations LLC; Pirelli Tire LLC; Sumitomo Rubber North America, Inc.; Sumitomo Rubber USA, LLC; Toyo Tire Holdings of Americas Inc.; and Yokohama Tire Corporation ("Companies") will and hereby do move the Court for an order dismissing all claims asserted by Plaintiffs in their First Amended Complaint for Declaratory and Injunctive Relief (the "FAC").

Companies make this motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Companies assert a factual challenge to subject matter jurisdiction and seek dismissal with prejudice. Companies' motion is based on this Notice of Motion, the Memorandum of Points and Authorities, all pleadings and papers filed in this action, and such oral argument and other matters as may be presented to the Court at the time of hearing.

## STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Civil L.R. 7-4(a)(3), the Companies submit that this motion presents a single question: Should the Court dismiss Plaintiffs' claims for lack of subject matter jurisdiction?

DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS –
Case No. 23-cv-05748-JD **-** Page 2

# I. INTRODUCTION

Plaintiffs ask this Court to redress harm to their organizational missions by enjoining alleged incidental take of listed salmonids under the Endangered Species Act ("ESA"). But, in reality, the First Amended Complaint ("FAC") [Dkt. 19] attempts to transform the ESA into a product regulatory statute that is outside the ESA's language and the intent of Congress. The alleged "take" derives from a series of events involving locations, infrastructure, and conduct controlled by public and private individuals and entities who are not before the Court. The ESA was not intended to cover such wide swaths of conduct.

Plaintiffs' claim is built upon a December 2020 article reporting a study showing 6PPDq, a transformation product of 6PPD, caused biological harm to salmonids in laboratory conditions. From this study, the Plaintiffs propose that the Court reach across a long and speculative chain of events involving countless non-parties, to address manufacturing activities that are entirely outside the scope of the ESA by drawing a torturous causal connection between the Companies' activities and Plaintiffs' purported injury. Such action is unsupported by precedent, unwarranted, unlikely to prove successful, and would substitute this Court for the regulatory agencies that are designed for and charged with addressing this very issue.

Plaintiffs seek to "enjoin [the Companies] from continuing unauthorized take." Dkt. 19 at ¶ 109. The relief Plaintiffs seek here is legally unprecedented and not achievable under the ESA. Prohibiting manufacture and distribution of 6PPD-containing tires in one state could not prevent other states' drivers' entry. A nationwide injunction would not stop the alleged take because there are over 1 billion tires on the road today, every one of which contributes to the alleged take if Plaintiffs' claims are taken as true. And an order to apply for ESA incidental take permits—a statutory mechanism designed for specific types of activities not present here—would result in

nearly immediate rejection of those applications by the permitting agency.

The Plaintiffs already have and can continue to seek redress from the EPA and other federal agencies. Where injunctive relief cannot effectively 'enjoin unauthorized take', dismissal of the claims is warranted for lack of standing. The Companies ask that the Court dismiss this case for lack of Article III jurisdiction.

## II.   BACKGROUND

6PPD is a critical safety component that is essential to meeting Federal Motor Vehicle Safety Standards. Dkt. 19 at 29 fn 1, ¶ 73; 49 U.S.C. §§ 30101 et seq.; C.F.R. §§ 571.110, 571.139, 571.119. There is no known alternative. Declaration of Susan Smith ("Smith Decl.") at ¶ 2, Ex. A pp. ES-1–ES-5; 59-63. 6PPDq is a transformation product of 6PPD and ozone. There were 282 million vehicles in the United States in 2021, outfitted with over one billion tires. Smith Decl. at ¶ 3, Ex. B. Americans purchase roughly 260 million replacement tires each year. *Id*.

Plaintiffs allege that stormwater discharging from roads exposes salmonids to 6PPDq. Dkt. 19 at ¶¶ 33-58, 74-75, 91. They also accuse the Companies of being responsible for these discharges. Dkt. 115 at 12 (claiming inclusion of 6PPD in tires "discharges a toxic substance into the environment, where it kills salmonids within hours"). But the Companies do not design, build, or maintain the roads that generate stormwater or the related stormwater management systems or control the parties that do.

## III.   LEGAL STANDARDS

The "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under [Fed. R. Civ. P.] 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The Plaintiffs have the burden of establishing standing by alleging (1) an "injury in fact"; (2) that

is "fairly traceable" to the challenged action of the defendant; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 943 (9th Cir. 2021). The party challenging the complaint may dispute "the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038-39 (9th Cir. 2004). The court need not presume the truthfulness of the Plaintiffs' allegations. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

To resolve factual attacks on jurisdiction, this Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Meyer*, 373 F.3d at 1039. "[T]he party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing the subject matter jurisdiction." *Meyer*, 373 F.3d at 1039.

### IV.    ARGUMENT

Plaintiffs have the burden of establishing standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan* 504 U.S. 555 (1992). At the pleading stage, Plaintiffs must "clearly . . . allege facts demonstrating each element." *Spokeo Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490 (1975)). Plaintiffs have not met this burden.

**A.    Plaintiffs' alleged harm is not fairly traceable to the Companies' conduct.**

Plaintiffs "must demonstrate a causal connection between the injury and the conduct complained of—the injury ha[s] to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1227 (9th Cir. 2008) (citing *Lujan*, 504

U.S. at 560-61). This causal connection "cannot be too speculative, or rely on conjecture about the behavior of other parties," and cannot "involve[] numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries . . ." *Ocean Advocates v. U.S. Army Corps of Engineers*, 402 F.3d 846, 860 (9th Cir. 2005); *Village of Kivalina v. ExxonMobil Corp*, 696 F.3d 849, 867-69 (9th Cir. 2012) (quotes omitted) (Pro, J. concurring).

Plaintiffs claim standing because, they contend, the inclusion of 6PPD in tires results in an unlawful take that injures their interests. The connection between the manufacture and distribution of tires and the alleged injury-causing take is not actionable because it rests on speculation and the independent behavior and actions of many other actors.

The alleged causal chain here is as follows: 1) the Companies make tires with 6PPD to slow rubber breakdown; 2) the Companies distribute tires to third parties who install them on vehicles; 3) third parties drive those vehicles on roads across the country; 4) 6PPD in the tires reacts with ozone and transforms into a new substance: 6PPDq; 5) the tires leave behind particles containing 6PPDq on the roads; 6) those particles and other road materials such as brake pad dust, oil, antifreeze, gasoline, metals, hyrdocarbons, dirt, and salt remain until a storm entrains those materials; 7) that stormwater is directed off the roads into nearby stormwater management controls built and maintained by third parties; 8) the stormwater is directed to an outfall; 9) the operator of the outfall discharges the 6PPDq into a receiving waterbody[1], which may or may not

---

[1] The Clean Water Act ("CWA") prohibits any party from discharging a pollutant, including "chemical waste," into waters of the U.S. without a permit. 33 U.S.C. §§ 1311, 1323(a), 1362(5)-(6). The party responsible for obtaining a CWA discharge permit is the party that discharges a pollutant into the water. 40 C.F.R. §§ 122.21(b); *see also Jones v. E.R. Snell Contractor, Inc.*, 333 F.Supp.2d 1344, 1348-49 (N.D. Ga. 2004), *aff'd* 120 Fed. Appx. 786 (finding county was not a "discharger" of stormwater under the CWA and therefore "cannot be enjoined from violations of the law caused by the [state's] ownership, operation and maintenance of a state highway").

DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS –
Case No. 23-cv-05748-JD **-** Page 6

be listed salmonid habitat; 10) the 6PPDq travels in the waterbody until reaching a listed salmonid; 11) the 6PPDq causes "take" of the salmonid; and 12) the alleged "take" is responsible for economic and cultural damage to Plaintiffs' shared mission.  Smith Decl. ¶ 4, Ex. C at 38-41; ¶ 5, Ex. D at 800-2.

Tracing a line of causation to Plaintiffs' alleged harm requires casually leaping from the Companies' actions to the actions of parties who buy and install the tires, to the actions of parties who use the tires, to the actions of parties who design and operate the roads, to the actions of stormwater control managers, to the actions of stormwater dischargers, to the salmonids in their habitat, and then to Plaintiffs.  That chain is simply too attenuated.  *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1141 (2013); *See also WildEarth Guardians v. U.S. Forest Serv.*, 70 F.4th 1212, 1216 (9th Cir. 2023) (holding that an injury is not fairly traceable because it resulted from the independent actions of a third party and was two-steps removed from defendant); *Kivalina*, 696 F.3d 849 at 867-69 (holding that plaintiffs could not plausibly trace injury to defendants' actions) (Pro, J. concurring); *Pritikin v. Dep't of Energy*, 254 F.3d 791, 797-99 (9th Cir. 2001) (holding that plaintiff failed to establish causation because they did not "sue[] a party with the clear ability to act.").  There are more than a dozen intervening steps involving the independent actions of numerous third parties.[2]  Plaintiffs' alleged injury is not fairly traceable.

### B. Plaintiffs' alleged injury is not redressable under the ESA.

A favorable decision could not redress Plaintiffs' alleged injury here.  "[R]edressability

---

[2] This causal chain likewise ignores the myriad intervening and long-recognized salmonid stressors including: hydrosystems, irrigation, agriculture, hatcheries, habitat fragmentation, habitat loss, habitat degradation, sedimentation, and climate change, among others, many of which have been the subject of Plaintiffs' prior litigation efforts.  *See, e.g., Pac. Coast Fed. of Fishermen's Assoc. v. Gutierrez*, 606 F. Supp. 2d. 1122, 1137-43 (E.D. Cal. 2008); *see also* Smith Decl. ¶ 6, Ex. E at 18:9-13.

DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS –
Case No. 23-cv-05748-JD **-** Page 7

analyzes the connection between the alleged injury and requested judicial relief." *Bellon*, 732 F.3d 1131 at 1146.  Plaintiffs must show that there would be a "change in legal status" as a consequence of a favorable decision and that "the practical consequence of that change would amount to a significant increase in the likelihood that plaintiff would obtain relief that directly redresses the injury suffered." *Utah v. Evans*, 536 U.S. 452, 464 (2002). "There is no standing if, following a favorable decision, whether the injury would be redressed would still depend on 'the unfettered choices made by independent actors not before the courts.'" *Novak v. U.S.*, 795 F.3d 1012, 1020 (9th Cir. 2015) (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)).

The only relief available in an ESA citizen suit is an injunction against the alleged violation.  16 U.S.C. § 1540(g)(1)(A).  Thus, Plaintiffs ask this Court to "[e]njoin [the Companies] from continuing the unauthorized take of ESA-protected [salmonids]."  No injunctive relief exists that can redress Plaintiffs' claimed economic and cultural injuries.

There are over one billion tires in use in the United States today—171 million just in California.  Dkt. 19 at 29, fn. 1.  Some vehicle and tire manufacturers recommend replacing tires that are 6-10 years old, regardless of treadwear. Smith Decl. at ¶ 3, Ex. B.  That means Plaintiffs' alleged injury cannot be redressed by enjoining inclusion of 6PPD in tires, as the claimed injury will continue for years.[3]

6PPD is an integral component of every tire.  There currently is no known substitute.  Enjoining the Companies' activities and the availability of replacement tires, therefore, would paralyze the country's transportation system.  But it would not redress Plaintiffs' claimed injury.

---

[3] As this Court recently recognized, "It's going to take a long time for the natural attrition rate – even, let's say, tomorrow EPA banned 6PPD, it's going to take, minimum, many years before those tires are completely off the roads." Smith Decl. ¶ 6, Ex. E at 7:22-25, 8:1-6.

DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS –
Case No. 23-cv-05748-JD **-** Page 8

Redress "would still depend on 'the unfettered choices made by independent actors not before the courts'"—namely, the roadway operators, stormwater managers, and each person who continues to drive a motor vehicle on the roadways. *Novak v. U.S.*, 795 F.3d 1012, 1020 (9th Cir. 2015) (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)).

Nor is redress available through incidental take permits. Plaintiffs incorrectly claim that the Companies can develop a habitat conservation plan ("HCP") and receive incidental take permits ("ITPs") authorizing take of listed salmonids. They recently told this Court that it should order the Companies do so. Smith Decl. ¶ 6, Ex. E at 7:15-19, 8:10-22, 19:25, 20:1-5. This fundamentally mischaracterizes the ESA's HCP/ITP program. The Companies are not eligible for ITPs because (1) the impacts to salmonids from discharges of 6PPDq cannot constitute "incidental take," (2) the Companies lack the requisite legal control, and (3) the HCP/ITP process does not cover developing and selling consumer products.

Section 10 of the ESA establishes a voluntary process for project proponents to apply to the U.S. Fish and Wildlife Service ("FWS") and National Marine Fisheries Service ("NMFS") (together, the "Services") to authorize take of listed species so long as that take is "incidental to, and not the purpose of, the carrying out of an otherwise lawful activity." The take Plaintiffs allege here cannot qualify as "incidental take." As pled, it results from an activity that is not "otherwise lawful"— alleged discharges of toxic amounts of 6PPDq.

The Clean Water Act prohibits the discharge of any pollutant – including "chemical waste" such as the alleged toxic concentrations of 6PPDq – to jurisdictional waters without a permit. 33 U.S.C. §§ 1311(a), 1362(6). That is precisely what Plaintiffs claim the Companies are doing and that those discharges "kill[] salmonids within hours." Dkt. 115 at 12. In other words, Plaintiffs accuse the Companies of taking listed salmonids by unlawfully discharging

DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS –
Case No. 23-cv-05748-JD **-** Page 9

6PPDq into salmonid habitat. If taken as true, that activity is not "otherwise lawful" and, therefore, the ESA prohibits authorizing the alleged take with an ITP. 16 U.S.C. § 1539(a)(1)(B); *see also* Declaration of Leopoldo "Leo" Miranda-Castro ("Miranda Decl.") at ¶¶ 11(b), 14(b)(i) (explaining the Companies' ineligibility for ITP coverage under the "otherwise lawful" requirement). As the Services plainly state, "we cannot cover take due to illegal activities like oil spills or wastewater releases. . . . [A]ny [such] take of a listed species and mitigation of effects would be addressed under other authorities, such as the Federal Water Pollution Control Act." Smith Decl. at ¶7, Ex. F at 3-18.

Even were that not so, the Companies are ineligible for ITPs because they do not have the requisite legal control over the stormwater, the discharges, or the dischargers:

> A qualified applicant is one who has the legal authority to execute a project on the lands proposed for coverage under an HCP, and who has enough legal control over these lands to implement the HCP. Legal control may comprise ownership of property in fee simple, an easement, a lease agreement that grants authority for the proposed project, or a similar type of legal authority to conduct the proposed activities (50 CFR 17.22(b)(2)(F), 17.32(b)(2)(F)). . . . In addition to having legal authority to carry out the proposed project, the applicant must also have direct control over any other parties who will implement any portion of the proposed activity and the HCP (see 50 CFR 13.25; 50 CFR 222.305(b)).

Smith Decl. at ¶7, Ex. F at 3-5; *see also* Miranda Decl. at ¶¶ 11(c), 14(b) (explaining the Companies' ineligibility for ITP coverage under the "legal control" requirement). This element of control is necessary because every ITP that the Services issue must identify the "permit area – [the] area *under the permittee's control* where take may occur." Smith Decl. at ¶7, Ex. F at 16-9, G-20 (defining "permit area" as "[t]he geographic area where the incidental take permit applies. It includes the area *under the control of the applicant/permittee(s) where covered activities will occur*. The permit area must be delineated in the permit and be included within the plan area of the HCP.")(emphasis added).

DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS –
Case No. 23-cv-05748-JD **-** Page 10

Taking the FAC's allegations as true, the Companies meet none of these requirements. They do not control drivers, the roads, or stormwater managers or the infrastructure they operate. Nor do they generate or control stormwater that discharges 6PPDq into salmonid streams, which the Plaintiffs allege is the mechanism that exposes salmonids to 6PPDq.  Dkt. 19 at ¶¶ 74-75, 92. Nor do they have legal authority to implement stormwater controls for the countless "streets, roads, highways, parking lots, and alleys" from which 6PPDq allegedly discharges [Dkt. 19 at ¶¶ 78-79].  As a result, even if the Companies were ordered to develop an HCP, they are ineligible to receive ITPs. *See* Miranda Decl. at ¶¶ 12-15 (explaining why the Companies are ineligible for ITPs for the alleged take and concluding FWS would deny their ITP applications if submitted).

Finally, the HCP/ITP process does not apply to manufacture and distribution of a consumer product like tires.  Those activities are too remote in time and space from the alleged take.  A party can only apply for an ITP "if they are conducting (or planning to conduct) any type of activity *in an area where ESA-listed species are known to occur and where their activity or activities are reasonably certain to result in incidental take*." HCP Handbook at 3-2 (emphasis added).[4] Because the Companies do not manufacture or distribute tires where listed salmonids or

---

[4] As the Services have explained,

> HCPs can cover a variety of residential, commercial, agricultural, and industrial development and any associated activities that may result in incidental take.  They can also cover resource extraction (e.g., oil and gas, mining), sustainable use (e.g., timber harvest, wind energy production, fisheries harvest), recurring activities (e.g. irrigation ditch clearing, water diversions, hydroelectric power, seawall maintenance, recreation), or ongoing operations and maintenance of existing or new projects. Many activities that HCPs cover are permanent projects on the landscape with permanent effects, such as loss of habitat from a development of a residential sub-division. HCPs also can cover short-term activities that result in temporary effects, such as one-time take of a specific number of individuals from a bridge replacement. Some longer term activities may result in temporary rather

DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS –
Case No. 23-cv-05748-JD **-** Page 11

their habitat occur, the HCP/ITP process is not an option. *See* Miranda Decl. at ¶ 14.a. And, after extensive search of thousands of publicly available HCPs, the Companies can find no ITP that has ever been issued for such activities. *See also* Miranda Decl. at ¶ 15.

## V.   CONCLUSION AND RELIEF

This matter is not suited for resolution under the ESA, and Plaintiffs do not have standing to prosecute their claims. The facts pled are too attenuated, beginning in manufacturing and distribution facilities hundreds of miles from listed salmonid habitat and bypassing over a dozen intervening acts and actors before eventually reaching and allegedly taking salmonids and purportedly injuring Plaintiffs' interests. Even then, the injunctive relief Plaintiffs seek cannot alleviate their claimed harm. To halt the manufacture and distribution of tires containing 6PPD would devastate the nation's transportation system and the economy while the alleged salmonid take would continue. To order the Companies to apply for incidental take permits would result in swift denial. For these reasons, the Companies respectfully request that the Court dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted,

Dated: June 6, 2024

**BEVERIDGE & DIMOND PC**

By: */s/ Susan E. Smith*
SUSAN E. SMITH
LOREN DUNN (*Admitted Pro Hac Vice*)
W. PARKER MOORE (*Admitted Pro Hac Vice*)

---

than permanent effects, such as rotational timber harvest. Covered activities can be of any scale, from building a single-family residence to constructing a multi-State gas pipeline.

Smith Decl. at ¶ 7, Ex. F at 5-2. In other words, HCPs and ITPs cover development and related activities occurring where listed species live.

DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS –
Case No. 23-cv-05748-JD **-** Page 12

|  |  |
|---|---|
|  | *Attorneys for Defendants Bridgestone Americas Tire Operations, LLC; Continental Tire the Americas, LLC; GITI Tire (USA), Ltd.; The Goodyear Tire & Rubber Company, individually and as successor in interest to Cooper Tire & Rubber Company; Nokian Tyres Inc.; Nokian Tyres U.S. Operations, LLC; Pirelli Tire LLC; Sumitomo Rubber North America, Inc.; Sumitomo Rubber USA, LLC; Toyo Tire Holdings of Americas, Inc.; and Yokohama Tire Corporation.* |
| Dated: June 6, 2024 | **DLA PIPER LLP (US)** |
|  | By: /s/ *George Gigounas*<br>     GEORGE GIGOUNAS<br>     CAROLINE LEE<br>     PAUL WIERENGA (*Admitted Pro Hac Vice*)<br>     *Attorneys for Defendant*<br>     *Michelin North America, Inc.* |
| Dated: June 6, 2024 | **DLA PIPER LLP (US)** |
|  | By: /s/ *Gwendolyn Keyes Fleming*<br>     GWENDOLYN KEYES FLEMING (*Admitted Pro Hac Vice*)<br>     JUSTIN PARK<br>     DONGHYUN KIM<br>     *Attorneys for Defendant*<br>     *Kumho Tire U.S.A., Inc.* |
| Dated: June 6, 2024 | **DLA PIPER LLP (US)** |
|  | By: /s/ *Adam Baas*<br>     ADAM BAAS<br>     ALLEXANDERIA BINGHAM<br>     *Attorneys for Defendant*<br>     *Hankook Tire America Corp.* |

## CERTIFICATE OF SERVICE

I hereby certify that on the below date, I caused to be served a true and correct copy of the foregoing, which was served on all counsel of record using the Court's CM/ECF system.

DATED this 6th day of June, 2024.

*/s/Natasha Johnston*
Natasha Johnston, Legal Assistant
on behalf of Loren R. Dunn