Susan E. Smith (CA Bar No. 329539)
ssmith@bdlaw.com
**BEVERIDGE & DIAMOND PC**
456 Montgomery Street, Ste. 1800
San Francisco, CA  94104
Tel:    415.262.4023
*Attorneys for Defendants*
*Bridgestone Americas Tire Operations, LLC;*
*Continental Tire the Americas, LLC; GITI*
*Tire (USA), Ltd.; The Goodyear Tire &*
*Rubber Company, individually and as*
*successor in interest to Cooper Tire & Rubber*
*Company; Nokian Tyres Inc.; Nokian Tyres*
*U.S. Operations, LLC; Pirelli Tire LLC;*
*Sumitomo Rubber North America, Inc.;*
*Sumitomo Rubber USA, LLC; Toyo Tire*
*Holdings of Americas, Inc.; and Yokohama*
*Tire Corporation.*

George J. Gigounas (CA Bar No. 209334)
george.gigounas@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105
Tel:    415.836.2500
*Attorney for Defendant*
*Michelin North America, Inc*

Gwendolyn Keyes Fleming (Admitted *Pro
Hac Vice*)
Gwen.KeyesFleming@us.dlapiper.com
**DLA PIPER LLP (US)**
500 8th Street, NW
Washington, DC 20004
Tel:    202.799.4000
*Attorney for Defendant*
*Kumho Tire U.S.A., Inc.*

Adam Baas (CA Bar No. 220464)
adam.baas@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel:    415.836.2500
*Attorney for Defendant*
*Hankook Tire America Corp.*

(Additional Counsel on Signature Page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INSTITUTE FOR FISHERIES RESOURCES; and PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, <br><br> Plaintiffs, <br><br> vs. <br><br> BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC; CONTINENTAL TIRE THE AMERICAS, LLC; GITI TIRE (USA) Ltd.; THE GOODYEAR TIRE & RUBBER COMPANY, individually and as | Case No. 23-cv-05748-JD <br><br> **DEFENDANTS' MOTION TO STRIKE DECLARATIONS OF G. SPAIN [DKT. 128-1], J. KAWAHARA [DKT. 128-2], D. BITTS [DKT. 128-3], AND S. BATES [DKT. 128-4].** <br><br> Note on Motion Calendar: July 25, 2024 |

successor in interest to COOPER TIRE & RUBBER COMPANY; HANKOOK TIRE AMERICA Corp.; KUMHO TIRE U.S.A., Inc.; MICHELIN NORTH AMERICA, Inc.; NOKIAN TYRES Inc.; NOKIAN TYRES U.S. OPERATIONS LLC; PIRELLI TIRE LLC; SUMITOMO RUBBER NORTH AMERICA, Inc.; SUMITOMO RUBBER USA, LLC; TOYO TIRE HOLDINGS OF AMERICAS Inc.; and YOKOHAMA TIRE Corporation.

Defendants.

## NOTICE OF MOTION AND MOTION TO DISMISS

Please take notice that on July 25, 2024 at 10:00 am before the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Bridgestone Americas Tire Operations, LLC; Continental Tire The Americas, LLC; Giti Tire (USA) Ltd.; The Goodyear Tire & Rubber Company, individually and as successor in interest to Cooper Tire & Rubber Company; Hankook Tire America Corp.; Kumho Tire U.S.A., Inc.; Michelin North America, Inc.; Nokian Tyres Inc.; Nokian Tyres U.S. Operations LLC; Pirelli Tire LLC; Sumitomo Rubber North America, Inc.; Sumitomo Rubber USA, LLC; Toyo Tire Holdings of Americas Inc.; and Yokohama Tire Corporation ("Companies") will and hereby do move the Court for an order striking ¶¶  4, 7, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, and 26, and Exs. A, B, C, E, F, G of the Declaration of Glen H. Spain [Dkt. 128-1] (Spain Decl.), ¶¶ 7, 8, 9, 11, 12, 13, and 14 of the Declaration of Joel Kawahara [Dkt. 128-2] (Kawahara Decl.), ¶¶ 6, 7, 9, 10, and 11 of the Declaration of David Bitts [Dkt. 128-3] (Bitts Decl.), and ¶¶ 4, 5, 6, 7, 8, 9, 10, 11, and 12 of the Declaration of Sarah Jane Bates [Dkt. 128-4] (Bates Decl.) (collectively "the Declarations").

The Companies make this motion pursuant to Rule 7-5(b) of the Civil Local Rules.  The Companies' motion is based on this Notice of Motion, the Memorandum of Points and authorities, all pleadings and papers filed in this action, and such oral argument and other matters as may be presented to the Court at the time of hearing.

**STATEMENT OF ISSUES TO BE DECIDED**

Pursuant to Civil L.R. 7-4(a)(3), the Companies submit that this motion presents a single question:  Should the Court strike selected portions of the Declarations Glen H. Spain [Dkt. 128-1], Joel Kawahara [Dkt. 128-2], David Bitts [Dkt. 128-3], and Sarah Jane Bates [Dkt. 128-4] from the record for failure to comply with the requirements of Fed. R. Civ. P. 56(c)(4) and Rule 7-5(b) of the Civil Local Rules.

## I.       INTRODUCTION AND BACKGROUND

The Companies moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1), challenging the causation, or "fairly traceable", and redressability elements of Article III standing, Dkt. 127 at 4-12.  This Motion presented a factual challenge that placed the burden on Plaintiffs to "furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1029 (9th Cir. 2004).  Dkt. 127 at 4, 5.  Plaintiffs attempt to meet this burden by submitting declarations which fail to meet the requirements of Fed. R. Civ. P. 56(c)(4) and Rule 7-5(b) of the Civil Local Rules. Dkt. 128.1-4.  Plaintiffs' declarants are lay people.  None are experts.  None are scientists.  None of their declarations should be before this Court on issues that require scientific and technical expertise.  And none are competent to offer lay opinion testimony.  The Companies ask this Court to strike the Declarations as improper.

Glen Spain, the Northwest Regional Director and General Legal Counsel for Plaintiffs Institute for Fisheries Resources (IFR) and Pacific Coast Federation of Fisherman's Associations (PCFFA), submitted a declaration detailing the structure and purpose of the organizations and the alleged effects of 6PPD on them.  Spain Decl. at ¶¶ 1-26.  Mr. Spain does not testify to having any background in chemistry, toxicology, the federal Endangered Species Act (ESA), ecology, or economics, but yet seeks to opine on each of these topics based on his anecdotal understanding and conversations with members who also lack such expertise. Mr. Spain's declaration focuses largely on Plaintiffs' injuries, in part because he has "had conversations with countless fishing

DEFENDANTS' MOTION TO STRIKE DECLARATIONS –
Case No. 23-cv-05748-JD **-** Page 3

family members." Spain Decl. at ¶ 18. Mr. Spain states that the 2024 commercial salmon fishing season cost "coastal salmon-dependent communities many tens of millions of dollars in lost income, and driving some out of business." Spain Decl. at ¶ 16. Mr. Spain offers his conclusions that these injuries are due to the Companies inclusion of 6PPD in their products. Referring generally to studies of which he is "aware", he offers that "[b]ased on [his] understanding, more than decade ago scientists observed a correlation between stormwater runoff and Coho mortality. Scientists have since identified the chemical contained in stormwater that was causing much of the mortality observed among coho, as well as Chinook and steelhead: [6PPD]." Spain Decl. at ¶ 13. He continues that 6PPD "helps to explain why so many stocks of Coho salmon are at such low numbers that they have become listed as endangered or threatened species under the federal [ESA]." Spain Decl. at ¶ 15. And, "fish harvesters may face harm if the salmon they catch and deliver to market are contaminated with 6PPD-Q (or merely if the public fears such contamination), as emerging science suggests 6PPD-Q could be neurotoxic to humans," again, without elaboration or citation. Spain Decl. at ¶ 18.

Mr. Spain also offers a purported solution to his proffered cause of Plaintiffs' injuries, various forms of redress that he alleges could be ordered from this Court, about which Mr. Spain has no expertise or experience. Mr. Spain states that he is "aware of studies explaining that the construction of stormwater green infrastructure along roadways can effectively mitigate more than 90% of 6PPD-Q from entering streams . . . the Court could order [the Companies] to fund such green infrastructure to prevent 6PPD-Q from entering aquatic habitats through its broad authority to fashion injunctive relief." Spain Decl. at ¶ 24. Mr. Spain suggests "[t]he Court could also require [the Companies] to obtain a permit under Section 10 of the [ESA] in order to lawfully take the species . . . as part of the Section 10 permit process, [the Companies] could, among other mitigation measures, fund the green infrastructure necessary to remove 6PPD-Q produced from their tires before it enters aquatic habitats and/or fund other habitat restoration measures to offset the harm from 6PPD-Q, which would also provide considerable relief to

DEFENDANTS' MOTION TO STRIKE DECLARATIONS –
Case No. 23-cv-05748-JD - Page 4

1    Plaintiffs and their members."  Spain Decl. at ¶ 25.  Alternatively, Mr. Spain states that the Court

2    could also have the Companies "entirely remove 6PPD from their tires, and substitute it with an

3    alternative that is safer for fish. This would obviously . . . redress the injuries being suffered by

4    [Plaintiffs]." Spain Decl. at ¶ 24.  Again, Mr. Spain borrows from the FAC for purposes of injury

5    [FAC ¶¶ 12-23], causation [FAC ¶¶ 83-84, 96-98, 105-06], and redressability [FAC ¶¶ 23, 108-

6    09].

7           With respect to the studies noted above, exhibits A, B, and C concern the toxicity of

8    6PPD to salmonids and exhibits E, F, and G, concern bioretention and other stormwater

9    management practices.  Spain Decl. at ¶¶ 13, 24 and Exs. A, B, C, E, F and G.  Mr. Spain does

10   not testify to having expertise in either subject.

11          Mr. Kawahara, a commercial salmon troller and the vice president and director of an

12   organizational member of IFR and PCFFA, provided a declaration focused on the decline of his

13   industry, which he attributes to 6PPD from tires.  He does not testify to having any scientific

14   background or training.  Kawahara Decl. at ¶¶ 1-14.  He describes one occasion when he spoke

15   to a neighbor who had participated in an unsuccessful salmon restoration project and concludes

16   that "[i]n retrospect, it seems likely that this was because of road runoff (containing 6PPD/6PPD-

17   q) from nearby roads".  Kawahara Decl. at ¶ 13.  He then opines that if the "court were to grant

18   the relief that [Plaintiffs] are seeking" then he would have "a fighting chance" as a salmon

19   troller. Kawahara Decl. at ¶ 14.

20          David Bitts, a professional commercial fisherman and a member of PCFFA and IFR,

21   provided a declaration suggesting similar conclusory results.  Bitts Decl. at ¶¶ 1, 5-8, 10.  Mr.

22   Bitts' insight into salmon biology rests only on his role representing "California trollers on two

23   federal advisory committees dealing with Klamath River salmon issues for over ten years each."

24   Bitts Decl. at ¶ 4.  Mr. Bitts does not testify to having any scientific training or experience with

25   the ESA Section 10 permitting process involving HCPs or ITPs.  Mr. Bitts describes, generally,

26   Chinook population decline "in recent years" and its economic impact on his business,

27

28   DEFENDANTS' MOTION TO STRIKE DECLARATIONS –
     Case No. 23-cv-05748-JD - Page 5

1   attributing both to the Companies' inclusion of 6PPD in tires.  Bitts Decl. at ¶¶ 7-9.  His

2   assertions regarding causation are based on his "understand[ing]" that 6PPD is "toxic to Coho,

3   Chinook, and steelhead", that a byproduct of 6PPD (6PPD-q) "gets into the natural environment

4   by shedding off [Defendants'] tires", and that he has "heard that 6PPD-q causes prespawn

5   mortality" in these salmonid species."  Bitts Decl. at ¶¶ 9.  Mr. Bitts states that he "ha[s] also

6   heard that prespawn mortality of Coho, Chinook, and steelhead brought about by 6PPD-q has

7   been a major factor in driving our ocean commercial harvests downward, coastwide, year by

8   year."  Bitts Decl. at ¶ 9.  Mr. Bitts concludes that "an order from the Court granting [Plaintiffs]

9   relief . . . will help to improve [his] commercial fishing prospects for Chinook, and those of [his]

10  younger colleagues."  Bitts Decl. at ¶ 11.

11          Sarah Jane Bates, a commercial fish harvester and a member of PCFFA and IFR,

12  provided a declaration suggesting similar conclusory results.  Bates Decl. at ¶¶ 1, 3-8.  Ms. Bates

13  testifies, without any relevant expertise or experience, that "based on [her] understanding, the

14  Defendants' inclusion of 6PPD in tires bears significant responsibility for the declining Chinook

15  and coho populations along the entire West Coast, which is directly affecting [her] bottom line,"

16  and that "[she's] heard that this chemical causes mass die-offs of Chinook and coho, which helps

17  to explain why population numbers are so low that federal officials have to designate some

18  populations as Threatened or Endangered and close salmon fisheries altogether."  Bates Decl. at

19  ¶ 10.  Ms. Bates states, without reference to any source, that "the San Francisco Bay /

20  Sacramento-San Joaquin River Delta area receives thousands of tons of contaminants annually,

21  including stormwater runoff, which contains 6PPD and 6PPD-q" and links this to the decline of

22  Sacramento River Chinook.  Bates Decl. at ¶ 11.  Ms. Bates then speculates that if the Court

23  were to "enjoin [the Companies] from continuing [to take salmonids]" then "[her] ability to make

24  a living by fishing salmon would improve significantly."  Bates Decl. at ¶ 12.

25          The Companies move to strike portions of the Declarations from the record and request

26  that this Court decline to consider them in ruling on the Companies' Motion to Dismiss because

27

28  DEFENDANTS' MOTION TO STRIKE DECLARATIONS –
    Case No. 23-cv-05748-JD - Page 6

1    the Declarations fail to comply with Civ. L.R. 7-5(b) and none of the declarants are proper lay or

2    expert witnesses.

3                              II.      **LEGAL STANDARDS**

4            In the Northern District, "[f]actual contentions made in support of or in opposition to any

5    motion must be supported by an affidavit or declaration and by appropriate references to the

6    record…[and]…may contain only facts, must conform as much as possible to the requirements

7    of Fed. R. Civ. P. 56(e), and must avoid conclusions and argument.  Any statement made upon

8    information or belief must specify the basis therefor.  An affidavit or declaration not in

9    compliance with this rule may be stricken in whole or in part." Civ. L.R. 7-5(b).  Federal Rule of

10   Civil Procedure 56(c)(4), previously enumerated as subdivision (e), provides that "[a]n affidavit

11   or declaration used to support or oppose a motion must be made on personal knowledge, set out

12   facts that would be admissible in evidence, and show that the affiant or declarant is competent to

13   testify on the matters stated."  Fed. R. Civ. P. 56(c)(4); *Mulato v. Wells Fargo Bank, N.A.*, 76 F.

14   Supp. 3d 929, 946 (N.D. Cal. 2014).  *See also* Fed. R. Evid. 602.

15           Declarations cannot contain improper expert opinions.  District courts have a continuing

16   duty to ensure expert testimony, that is, assertions regarding "matters beyond the common

17   knowledge of the average layman," "rests on a reliable foundation and is relevant to the task at

18   hand."  *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001); *Kumho Tire Co., Ltd. v.

19   Carmichael*, 526 U.S. 137, 141 (1999) (*citing Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S.

20   579, 597 (1993)); *United States v. Freeman*, 498 F.3d 893, 904 (9th Cir. 2007).  Under Fed. R.

21   Evid. 702(a), only a witness "who is qualified as an expert by knowledge, skill, experience,

22   training, or education" may furnish opinion testimony, and only if, *inter alia*, "the expert's

23   scientific, technical, or other specialized knowledge will help the trier of fact to understand the

24   evidence or to determine a fact in issue[.]"  Fed. R. Evid. 702(a); *United States v. Vallejo*, 237

25   F.3d at 1019.  Federal Rule of Evidence 701 provides that, "if a witness is not testifying as an

26   expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the

27

28   DEFENDANTS' MOTION TO STRIKE DECLARATIONS –
     Case No. 23-cv-05748-JD **-** Page 7

witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

Declarations cannot contain irrelevant statements. Under Rule 401 of the Federal Rules of Evidence, evidence is relevant if (a) it has the tendency to make a fact more or less probable than it would be without that evidence, and (b) the fact is of consequence in the action Fed. R. Evid. 401.

Declarations cannot rely on inadmissible hearsay. Rule 801(c) of the Federal Rules of Evidence defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "Hearsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court." Fed. R. Evid. 802.

## III.    ARGUMENT

### A.    The Declarations contain improper opinion testimony on scientific, technical and specialized matters.

No declarant here testifies to having scientific, technical or other specialized knowledge regarding chemistry, toxicology, or the environmental fate and transport of chemicals in the environment, yet each declarant opines that 6PPD and 6PPD-q are toxic to certain salmonid species and are a cause of the decline in those species' populations. For example, Mr. Spain attributes the "significant mortality of Coho, Chinook, and steelhead…in large part to 6PPD impacts," and that "[the Companies] inclusion of 6PPD in tires has been devastating to the organizational missions of IFR an PCFFA and to the livelihoods of their individual members. Spain Decl. at ¶ 22. *See also* Kawahara Decl. at ¶ 12 and Bates Decl. at ¶ 12. Despite their lack of qualifications or expertise and no proper factual basis, the declarants also seek to opine on the efficacy of salmon restoration projects (Kawahara Decl. at ¶ 13); the scientific causes of

allegedly reduced salmon harvests (Bitts Decl. at ¶ 9); and the scientific link between contaminants in two particular surface waters and an alleged decline in Chinook. (Bates Decl. at ¶ 11.

Each declarant here also opines about the potential benefits of various forms of injunctive relief this Court might award.  Kawahara Decl. at ¶ 14; Spain Decl. at ¶¶ 24-26, Bitts Decl. at ¶ 11, Bates Decl. at ¶ 12.  But again, no declarant discloses any qualifications or factual bases sufficient to establish a proper foundation for these opinions.

None of the declarants claim to have the necessary qualifications to offer expert opinion testimony; none disclose the factual bases for their opinions or the sources of the referenced facts and figures; and none of the opinions stated reflect the application of expert knowledge to admissible facts utilizing a generally recognized expert methodology.  Hence, none of the opinions are admissible under Rule 702. *Daubert*, 509 U.S. at 592-93; *Kennedy v. Collagen Corp.*, 161 F.3d 1236, 1228 (9th Cir. 1998).

Nor are the Declarations admissible as lay opinion testimony.  Opinions that 6PPD or 6PPD-q are toxic to salmonids and are a cause of the alleged decline in salmonid populations and related economic and cultural impacts, or that any proposed mitigation effort could be obtained through an ESA Section 10 permitting process and would have a beneficial impact on salmonid populations necessarily require "scientific, technical, or other specialized knowledge within the scope of Rule 702" and are not the proper subject of lay opinion testimony.  Nor are such opinions "rationally based on the witness's perception."

The declarants' statements of opinion lack any proper foundation under Rules 701 and 702 of the Federal Rules of Evidence and are nothing more than speculation, conclusion and argument disallowed by Fed. R. Civ. P. 56(4) and Civil L.R. 7-5(b).

**B.    The Declarations contain assertions not made on personal knowledge.**

The Declarations' assertions are entirely unsupported.  The declarants recite that they have "personal knowledge" of all matters stated in the Declarations, but the Declarations do not

reveal any basis for their personal knowledge of matters pertaining to: (1) any link between stormwater runoff and Coho mortality [Spain Decl. at ¶¶ 13, 14, 15, 18, 22; Kawahara Decl. at ¶¶ 12, 13; Bitts Decl. at ¶¶ 8, 9]; Bates Decl. at ¶¶ 10, 11], (2) the nature of 6PPD and 6PPD-q and their fate and transport in the environment [Spain Decl. at ¶14; Kawahara Decl. at ¶12; Bitts Decl. at ¶9; Bates Decl. at ¶10], (3) a relationship between 6PPD, 6PPD-q and impacts to salmonids or fisheries [Spain Decl. at ¶¶ 14, 20, 22-23, 26; Kawahara Decl. at ¶¶ 11, 12; Bitts Decl. at ¶¶ 8, 9; Bates Decl. at ¶¶ 9, 11], (4) that 6PPD or 6PPD-q caused the alleged harms to PCFFA, IFR or their individual members [Spain Decl. at ¶¶ 13, 14, 15, 18, 22; Kawahara Decl. at ¶¶ 12, 13; Bitts Decl. at ¶ 9; Bates Decl. at ¶ 12], (5) the potential benefits of various forms of injunctive relief proffered by the declarants [Spain Decl. at ¶¶ 24-25; Kawahara Decl. at ¶ 14; Bitts Decl. at ¶ 11; Bates Decl. at ¶ 12], and (6) the potential for Defendants to obtain an ESA Section 10 permit and the hypothetical requirements of such a permit [Spain Decl. at ¶¶ 25, 26]. These assertions above are matters of opinion, speculation, or conjecture rather than assertions of fact based on personal knowledge.

The declarants are individuals engaged in aspects of the commercial fishing industry (Kawahara, Bates, and Bitts) and the regional director and general counsel of a fishing industry trade association (Spain).  No declarant claims to have personal knowledge related to the constituents of stormwater runoff; any link between stormwater and salmonid mortality generally, much less mortality among ESA-listed salmonid populations at issue in this case; the chemistry and toxicology of 6PPD and 6PPD-q and the environmental fate and transport of these chemicals; whether the reduction of 6PPD entering the environment would have any impact on salmonid populations and the health of fisheries, or any aspect of the ITP/HCP process and what actions could or could not be carried out pursuant to an ESA Section 10 permit.  Nor does any declarant claim to have any personal experience conducting any scientific study related to 6PPD or the efficacy of any proposed mitigation or restoration activity.  The Declarations leave it to speculation that the declarants have personal knowledge of these matters.

C.     **The Declarations contain irrelevant assertions that are not admissible.**

The declarants advance testimony that has no relevance to the Companies' motion to dismiss.  The assertions in Plaintiffs' declarations that Plaintiffs have been injured by the Companies' inclusion of 6PPD in tires and the allegedly associated decline in salmon harvests. Spain Decl. ¶¶17-23; Kawahara Decl. ¶¶7-9, 11; Bates Decl. ¶¶6-8; Bitts Decl. ¶7. Dkt. 128 at 3:9-13.  The Companies' motion does not challenge injury-in-fact or cause-in-fact but instead focuses on the "fairly traceable" and redressability aspects of Article III standing.  Dkt. 127 at 5-7.  The assertions regarding causation and foreseeability are likewise unconnected to the Companies' Motion to Dismiss.  *See, e.g.*, Spain Decl. ¶¶ 14, 18, 22; Kawahara Delc. ¶¶ 12-13; Bitts Decl. ¶ 9; Bates Decl. ¶¶ 10-11.  Plaintiffs again conflate the "fairly traceable" element of Article III standing with inapplicable proximate cause considerations that are not at issue in the Companies' motion and have not been argued in this matter.

D.     **The Declarations rely on inadmissible hearsay.**

The declarations are replete with inadmissible hearsay.  Mr. Spain refers to "conversations [with] fishing family members" and what 'scientists tell us' about "the proliferation of 6PPD and 6PPD-q" and "Coho and Chinook populations plummeting", and his "understanding" about the observations of unnamed scientists.  Spain Decl. at ¶¶ 12, 18.  He also refers to six scientific studies he is merely "aware of".  Spain Decl. at ¶ 13 and 24, and Exs. A, B, C, E, F and G.   Mr. Bitts refers to information he has "heard" about 6PPD-q, *e.g.*, that it "causes prespawn mortality in Coho, Chinook and steelhead…[and] that prespawn mortality [of these species] brought about by 6PPD-q has been a major factor in driving our ocean commercial harvests downward, coastwide, year by year."  Bitts Decl. at ¶ 9.  Ms. Bates also refers to matters information "based on [her] understanding", *e.g.*, that "Defendants' inclusion of 6PPD in tires bears significant responsibility for the declining Chinook and coho populations along the entire West Coast … [and she has] heard that this chemical causes mass die-offs of Chinook and coho, which helps to explain why population numbers are so low that federal officials have to

1  designate some populations as Threatened or Endangered and close salmon fisheries altogether."

2  Bates Decl. at ¶ 10-11.  *See also* Kawahara Decl. at ¶¶ 12, 13 (relying on "news releases" and his

3  "understanding" and information garnered from "speaking to" a neighbor).

4      The referenced statements that the declarants heard from others[1], the information the

5  declarants came to "understand", and the scientific studies Mr. Spain is merely "aware of" are

6  out-of-court statements, not by the declarants, and are offered to prove the truth of the matter

7  asserted.  As such, the assertions are inadmissible hearsay and are not properly before the court.

8                          IV.    CONCLUSION AND RELIEF

9      For the foregoing reasons, the Companies respectfully request that the Court strike the

10  following: ¶¶ 4, 7, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, and 26, and Exs. A, B, C,

11  E, F, G of the Spain Decl. [Dkt. 128-1]; ¶¶ 7, 8, 9, 11, 12, 13, and 14 of the Kawahara Decl.

12  [Dkt. 128-2]; ¶¶ 6, 7, 9, 10, and 11 of the Bitts Decl. [Dkt. 128-3]; and ¶¶ 4, 5, 6, 7, 8, 9, 10, 11,

13  and 12 of the Bates Decl. [Dkt. 128-4].

14                      Respectfully submitted,

15

16  Dated: July 5, 2024                    **BEVERIDGE & DIAMOND PC**

17                                  By:  */s/ Susan E. Smith*
                                          SUSAN E. SMITH
18                                        LOREN DUNN (*Admitted Pro Hac Vice*)
                                          W. PARKER MOORE (*Admitted Pro*
19                                        *Hac Vice*)
                                          *Attorneys for Defendants*
20                                        *Bridgestone Americas Tire Operations,*
                                          *LLC; Continental Tire the Americas,*
21                                        *LLC; GITI Tire (USA), Ltd.; The*
                                          *Goodyear Tire & Rubber Company,*
22                                        *individually and as successor in interest*
                                          *to Cooper Tire & Rubber Company;*
23                                        *Nokian Tyres Inc.; Nokian Tyres U.S.*
                                          *Operations, LLC; Pirelli Tire LLC;*
24                                        *Sumitomo Rubber North America, Inc.;*

25

26  _____
    [1] The sources of the declarants' "understanding" are not disclosed. Presumably, sources included
27  information heard from others.

28  DEFENDANTS' MOTION TO STRIKE DECLARATIONS –
    Case No. 23-cv-05748-JD **-** Page 12

1

2

*Sumitomo Rubber USA, LLC; Toyo Tire Holdings of Americas, Inc.; and Yokohama Tire Corporation.*

3

4

Dated: July 5, 2024                    **DLA PIPER LLP (US)**

5                    By:   */s/ George Gigounas*

6                                GEORGE GIGOUNAS
                               CAROLINE LEE
                               PAUL WIERENGA (*Admitted Pro Hac*

7                                *Vice*)

8                                *Attorneys for Defendant*
                               *Michelin North America, Inc.*

9

10

Dated: July 5, 2024                    **DLA PIPER LLP (US)**

11                    By:   */s/ Gwendolyn Keyes Fleming*

12                                GWENDOLYN KEYES FLEMING
                               (*Admitted Pro Hac Vice*)
                               JUSTIN PARK

13                                DONGHYUN KIM
                               *Attorneys for Defendant*

14                                *Kumho Tire U.S.A., Inc.*

15

Dated: July 5, 2024                    **DLA PIPER LLP (US)**

16                    By:   */s/ Adam Baas*

17                                ADAM BAAS
                               ALLEXANDERIA BINGHAM

18                                *Attorneys for Defendant*
                               *Hankook Tire America Corp.*

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the below date, I caused to be served a true and correct copy of the

foregoing, which was served on all counsel of record using the Court's CM/ECF system.


Dated: July 5, 2024


/s/Natasha Johnston
Natasha Johnston, Legal Assistant
on behalf of Loren R. Dunn