| | |
|---|---|
| Susan E. Smith (CA Bar No. 329539) | George J. Gigounas (CA Bar No. 209334) |
| ssmith@bdlaw.com | george.gigounas@us.dlapiper.com |
| **BEVERIDGE & DIAMOND PC** | **DLA PIPER LLP (US)** |
| 456 Montgomery Street, Ste. 1800 | 555 Mission Street, Suite 2400 |
| San Francisco, CA  94104 | San Francisco, CA 94105 |
| Tel:    415.262.4023 | Tel:    415.836.2500 |
| *Attorneys for Defendants* | *Attorney for Defendant* |
| *Bridgestone Americas Tire Operations, LLC;* | *Michelin North America, Inc* |
| *Continental Tire the Americas, LLC; GITI* | |
| *Tire (USA), Ltd.; The Goodyear Tire &* | Gwendolyn Keyes Fleming (Admitted *Pro* |
| *Rubber Company, individually and as* | *Hac Vice*) |
| *successor in interest to Cooper Tire & Rubber* | Gwen.KeyesFleming@us.dlapiper.com |
| *Company; Nokian Tyres Inc.; Nokian Tyres* | **DLA PIPER LLP (US)** |
| *U.S. Operations, LLC; Pirelli Tire LLC;* | 500 8th Street, NW |
| *Sumitomo Rubber North America, Inc.;* | Washington, DC 20004 |
| *Sumitomo Rubber USA, LLC; Toyo Tire* | Tel:    202.799.4000 |
| *Holdings of Americas, Inc.; and Yokohama* | *Attorney for Defendant* |
| *Tire Corporation.* | *Kumho Tire U.S.A., Inc.* |

Adam Baas (CA Bar No. 220464)
adam.baas@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel:    415.836.2500
*Attorney for Defendant*
*Hankook Tire America Corp.*

(Additional Counsel on Signature Page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INSTITUTE FOR FISHERIES RESOURCES; and PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, <br><br>Plaintiffs,<br><br>vs.<br><br>BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC; CONTINENTAL TIRE THE AMERICAS, LLC; GITI TIRE (USA) Ltd.; THE GOODYEAR TIRE & RUBBER COMPANY, individually and as successor in interest to COOPER TIRE & RUBBER COMPANY; HANKOOK TIRE AMERICA Corp.; | Case No. 23-cv-05748-JD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12(b)(1) MOTION TO DISMISS**<br><br>Note on Motion Calendar: July 25, 2024 |

KUMHO TIRE U.S.A., Inc.; MICHELIN NORTH AMERICA, Inc.; NOKIAN TYRES Inc.; NOKIAN TYRES U.S. OPERATIONS LLC; PIRELLI TIRE LLC; SUMITOMO RUBBER NORTH AMERICA, Inc.; SUMITOMO RUBBER USA, LLC; TOYO TIRE HOLDINGS OF AMERICAS Inc.; and YOKOHAMA TIRE Corporation.

          Defendants.

//

//

//

//

DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12(b)(1) MOTION TO DISMISS
Case No. 23-cv-05748-JD **-** Page 2

## I. Plaintiffs rely on the wrong legal standard and fail their jurisdictional burden.

The Companies have brought a factual challenge against Plaintiffs' standing by presenting substantial evidence showing that the Court lacks subject matter jurisdiction. Dkt. 127 at 4-5. As a result, "[t]he court need not presume the truthfulness of [Plaintiffs'] allegations," as Plaintiffs incorrectly claim. *Norkunas v. Wynn Las Vegas, LLC*, 343 Fed.Appx. 269, 270 (9th Cir. 2009). Instead, Plaintiffs must "present affidavits or any other evidence necessary to satisfy [their] burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). They have not done so.[1] "Based upon this waiver, Plaintiffs did not carry their burden …" *Norkunas*, 343 Fed.Appx. at 270-71.

## II. Plaintiffs do not show that their overly attenuated harm is fairly traceable.

Plaintiffs attempt to defy the "bedrock principle" that their claimed injury must be "fairly traceable to the challenged action" of the defendant, and not the result of "the independent action of some third party not before the court." *Murthy v. Missouri*, – U.S. –, 2024 WL 3165801 at *7-8 (2024); *Bennett v. Spear*, 520 U.S. 154, 167 (1997). They demand redress from manufacturers and distributors of consumer products, but their alleged injury arises only after the intervening actions of countless third parties, occurring hundreds or thousands of miles away and long after the products have left the Companies' custody. *See* Dkt. 127 at 6-7. Their position fails.

First, Plaintiffs distort this Court's 12(b)(6) order, claiming the Court had found sufficient allegations of "proximate cause" and, therefore, that their harm necessarily is fairly traceable. Dkt. 128 at 5. But neither the Companies' motion nor this Court's order addressed proximate cause. *Compare* Dkt. 111 at 19-23 *and* Dkt. 116 at 9, fn. 6 *with* Civil Mins., ECF No. 123.

Second, Plaintiffs rely on inapposite caselaw that is readily distinguishable. *S.F. Herring*

---

[1] Four of the declarations Plaintiffs filed in opposition (Spain [Dkt. 128-1], Kawahara [Dkt. 128-2], Bitts [Dkt. 128-3], and Bates [Dkt. 128-4]) are not properly before the Court. *See* Dkt. 129. Those declarations are lay testimony, replete with anecdotal and unsubstantiated claims, conjecture, and hearsay. At best, they appear designed to support Plaintiffs' organizational standing—something the Companies have not yet challenged. The fifth declaration (Stern [Dkt. 128-5]) consists of excerpts from five documents that are generic, irrelevant, and/or incapable of rebutting the specific and directly applicable factual information the Companies submitted in support of their motion. These declarations, both individually and collectively, fall well short of carrying Plaintiffs' burden.

*Ass'n v. Pac. Gas & Elec. Co.* involved an immediate causal connection between the defendant's conduct and the plaintiff's alleged harm: the continuous "discharge of [waste from defendant's plant] into the San Francisco Bay" without a Clean Water Act permit. 81 F.Supp.3d 847, 857-58 (N.D. Cal. 2015).[2] Nor have Plaintiffs alleged, let alone shown, that the Companies "influenc[ed] the conduct of [the] third parties," as the Ninth Circuit required in *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014).[3] Plaintiffs also cite several irrelevant cases that involved unrelated factors that *cumulatively contributed* to the alleged harm, not *intervening* third party actions in the causal chain, as is the case here.[4] Finally, Plaintiffs cite *FDA v. All. for Hippocratic Med.*, in which the Supreme Court found no standing, reiterating that courts must reject theories of standing that rely on lines of causation that are "too speculative or attenuated" and "rely on speculation about the unfettered choices made by independent actors not before the court." 602 U.S. 367, 383 (2024). No case Plaintiffs cite supports their claim.

### III. No available relief is substantially likely to redress Plaintiffs' alleged harm.

In response to the Companies' factual attack on jurisdiction, Plaintiffs have proffered no evidence showing that this Court can redress their economic and cultural injury. "To establish Article III redressability, the plaintiffs must show that the relief they seek is both (1) *substantially likely* to redress their injuries; *and* (2) within the district court's power to award." *Juliana v. U.S.*, 947 F.3d 1159, 1170 (9th Cir. 2020) (emphasis added). Such a showing cannot be "speculative." *Id.* That is so even for partial redress. As Plaintiffs themselves acknowledge, the reduction of the claimed injury still must constitute a "*meaningful* step" and be "*likely*" to occur. Dkt. 128 at 7 (emphasis added). Here, Plaintiffs are unable to identify a single injunctive remedy available that is not (at best) highly unlikely to redress the alleged harm, entirely

---

[2] *Maya v. Centex Corp.* also found a "direct causal link" from the defendant inducing buyers to pay higher prices for homes by creating artificial demand. 658 F.3d 1060, 1070 (9th Cir. 2011).
[3] Plaintiffs misrely on *Brill v. Chevron*, 2017 WL 76894 (N.D. Cal. 2017), for the same reason.
[4] *See Barnum Timber Co. v. EPA*, 633 F.3d 894, 898-99 (9th Cir. 2011); *Wild Fish Conservancy v. Thom*, No. C20-417-RAJ-MLP, 2021 WL 8445587 at *9 (W.D. Wash. Sept. 27, 2021); *Coho Salmon v. Pacific Lumber Co.*, 61 F. Supp. 2d 1001, 1013-14 (N.D. Cal. 1999); *Loggerhead Turtle v. Cnty. Council of Volusa Cnty.*, 148 F.3d 1231, 1253 (11th Cir. 1998). The *Loggerhead Turtle* court also held that plaintiffs lacked standing under the ESA due to the defendant's lack of legal control over nonparties. 148 F.3d at 1258 (11th Cir. 1998).

speculative, or beyond the Court's power.[5]

Prohibiting or limiting the use of 6PPD in future tire manufacturing (Dkt. 128 at 7) would not be substantially likely to redress the alleged injury.[6] Plaintiffs do not deny that 6PPD is essential to tire safety or that over 1 billion 6PPD-containing tires beyond the Companies' control are in use today and the foreseeable future. Plaintiffs do not dispute that a 6PPD substitute would be necessary.[7] The Companies also have properly introduced evidence showing that, while experts are working to identify an effective 6PPD substitute, none currently exists. Dkt. 127-2 at Ex. A. Plaintiffs' misreading (Dkt. 128 at 8) of that same evidence to say otherwise is objectively wrong. They, therefore, have not shown that such an injunction would be "substantially likely" to redress their harm.

Moreover, such injunctive relief would not be "narrowly tailored to remedy the specific harm shown." *Aubin v. Bonta*, 665 F.Supp.3d 1097, 1107 (N.D. Cal. 2023). "[I]njunctive relief should be no more burdensome to the defendants than necessary to provide complete relief to the plaintiffs." *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991) (quotations omitted). Removing 6PPD from all automotive tires without a viable substitute would paralyze the transportation sector nationwide (Dkt. 127 at 8)—hardly "fearmongering." Dkt. 128 at 8. U.S. drivers require nearly 280 million replacement tires every year to keep their vehicles on the road.[8] Those replacements would not simply appear overnight should any of the experimental 6PPD substitutes prove viable.[9] Further, national security depends on a number of

---

[5] Stating that "an injunction … could take many forms" and that the Court can simply "enjoin [the take]" (Dkt. 128 at 7) is hopelessly generic and speculative. *Juliana*, 947 F.3d at 1170.
[6] Separately, this is precisely the relief Plaintiffs already requested from EPA under the Toxic Substances Control Act – a request that EPA actively is implementing using the comprehensive regulatory authority Congress prescribed—which only underscores the propriety of the Court invoking the primary jurisdiction doctrine. *See* Dkt. 111 at 12-19.
[7] Plaintiffs likewise have introduced no evidence showing that reducing 6PPD in tires is feasible or would be substantially likely to redress their alleged harm, even incrementally.
[8] *See* Declaration of Susan Smith (Smith Decl.) at Ex. A.
[9] *Massachusetts v. EPA* does not support Plaintiffs' delayed redress theory because the nature of the claim there could be asserted "without meeting all the normal standards for redressability and immediacy." 549 U.S. 497, 517-18 (2007). Plaintiffs' reliance on *Sierra Club v. Franklin Cnty. Power of Ill., LLC,* fares no better because the court found the injunction would provide immediate relief. 546 F.3d 918, 927–28 (7th Cir. 2008).

the Companies constantly supplying the U.S. military with replacement tires through the Department of Defense's Global Tire Program.[10] For these reasons, this relief would be overbroad, unduly burdensome, completely speculative, and contrary to "the balance of equities and consideration of the public interest—[which] are pertinent in assessing the propriety of any injunctive relief, preliminary or permanent." *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 32 (2008) (refusing to preliminarily enjoin sonar use under the ESA because it would impede military preparedness); *Juliana*, 947 F.3d at 1170.

Nor would Plaintiffs' proposed mitigation remedies redress their alleged harm. Ordering the Companies "to fund[] stormwater infrastructure" (Dkt. 128 at 7-9) could not provide redress due to the numerous laws restricting all levels of government from accepting private funds.[11] Further, ordering the Companies to implement stormwater treatment would require access to enter and alter countless third-party properties across the Western U.S. Neither the Court nor the Companies have the requisite condemnation authority or legal control over third parties or their properties to accomplish such relief, rendering it not "within the district court's power to award." *Juliana*, 947 F.3d at 1170.[12]

Finally, Plaintiffs fail to articulate how the Companies could receive approval for a habitat conservation plan (HCP) or obtain incidental take permits (ITPs) to redress their alleged harm. Dkt. 127 at 9-12.[13] First, Plaintiffs misunderstand and, therefore, do not respond to the

---

[10] *See* Smith Decl. Ex. B.

[11] *See, e.g.,* Smith Decl. Ex. C (stating that a government agency cannot accept a gift of money or other property "in the absence of specific statutory authority"); Cal. Const., art. XVI, § 7 ("Money may be drawn from the Treasury only through an appropriation made by law and upon a Controller's duly drawn warrant").

[12] In any event, the efficacy of such mitigation measures is entirely speculative. Two of the studies Plaintiffs submitted (Dkt. 128-1, Exs. E & F) involved experiments completed years before 6PPD was first discovered. The third (Dkt. 128-1, Ex G) involved a single "mature, field-scale" retention cell, not newly constructed features of the sort Plaintiffs seek.

[13] Plaintiffs attempt to dismiss the HCP and ITP Processing Handbook as "nonbinding agency guidance" (Dkt. 128 at 10-11), but they overlook that courts routinely grant the Handbook and similar agency guidance *Skidmore* deference and look to it to inform their decisions. *See*, *e.g.*, *Union Neighbors United Inc. v. Jewell*, 831 F.3d 564, 580 (D.D.C. 2016) (finding Handbook persuasive under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)); *see also Pacific Coast*

Companies' straightforward point that *unpermitted third-party discharges* are not "otherwise lawful" and, therefore, are ineligible for ITPs. Second, Plaintiffs' misrepresentations of several HCPs and ITPs in no way counter the Companies' fully supported conclusion that an HCP and ITPs are unavailable here.[14] Finally, Plaintiffs do not rebut the declaration of Mr. Miranda-Castro, one of the nation's foremost HCP/ITP practitioners, who stated that FWS would likely take the lead on the proposed HCP Plaintiffs describe and that any ITP applications based on that HCP would be summarily rejected. Dkt. 127.1 at ¶¶ 13, 15. Plaintiffs have not furnished *any* evidence necessary to counter that, relying instead on uninformed conjecture and lay testimony that misreads the HCP Handbook and a few HCPs and ITPs.[15] Nothing Plaintiffs offer comes close to carrying their burden to establish jurisdiction. *Norkunas*, 343 Fed.Appx. at 270-71.

There is no relief, however broad or narrow, that can redress Plaintiffs' claimed injury. Plaintiffs do not have standing.

### IV. CONCLUSION

For the foregoing reasons, the Companies ask this Court to dismiss with prejudice.

---

*Federation of Fishermen's Associations v. Gutierrez*, 606 F.Supp.2d 1195, 1209 (E.D. Cal. 2008) (giving the counterpart ESA Section 7 Consultation Handbook *Skidmore* deference).

[14] Plaintiffs cite a self-described "atypical," *island-wide* HCP submitted by the Hawaii Department of Land and Natural Resources, which sought a standardized HCP under which all individual ITP applicants could cost-share to support an off-site seabird preserve. Dkt. 128-5, Ex. B. The Companies do not possess such authority or capability as private, individual applicants who lack access to and control over third-party actors and their properties to effectuate mitigation activities. Moreover, Plaintiffs cherry-pick an irrelevant, out-of-context quote in an ITP issued to the Washington Department of Natural Resources—that "[b]ull trout are . . . affected by factors beyond the control of WSDNR"—to inaccurately claim that the Services "*routinely*" approve ITPs where permittees lack legal control over covered areas when the quote merely describes the Service's inability to *measure* the "amount or extent of take" due to additional contributing factors. Dkt. 128-5, Ex. D. Plaintiffs also cite the Sierra Pacific Land & Timber Company's HCP, which, unlike the Companies' alleged conduct, is necessarily premised on the timber company's take-related activities in proximity to impacted species' habitat to qualify for an ITP. Dkt. 128-5, Ex. E.

[15] Plaintiffs' identification (Dkt. 128 at 9-10) of various mitigation strategies under prior HCPs/ITPs entirely misses the point. Under ESA Section 10, the take-causing activities are the predicate for the HCP and the mitigation required under it, not the other way around. *See* 16 U.S.C. § 1539(a).

| | | |
|---|---|---|
| Dated: July 5, 2024 | | **BEVERIDGE & DIAMOND PC** |
| | By: | */s/ Susan E. Smith* |
| | | SUSAN E. SMITH |
| | | LOREN DUNN (*Admitted Pro Hac Vice*) |
| | | W. PARKER MOORE (*Admitted Pro Hac Vice*) |
| | | *Attorneys for Defendants Bridgestone Americas Tire Operations, LLC; Continental Tire the Americas, LLC; GITI Tire (USA), Ltd.; The Goodyear Tire & Rubber Company, individually and as successor in interest to Cooper Tire & Rubber Company; Nokian Tyres Inc.; Nokian Tyres U.S. Operations, LLC; Pirelli Tire LLC; Sumitomo Rubber North America, Inc.; Sumitomo Rubber USA, LLC; Toyo Tire Holdings of Americas, Inc.; and Yokohama Tire Corporation.* |
| Dated: July 5, 2024 | | **DLA PIPER LLP (US)** |
| | By: | */s/ George Gigounas* |
| | | GEORGE GIGOUNAS |
| | | CAROLINE LEE |
| | | PAUL WIERENGA (*Admitted Pro Hac Vice*) |
| | | *Attorneys for Defendant Michelin North America, Inc.* |
| Dated: July 5, 2024 | | **DLA PIPER LLP (US)** |
| | By: | */s/ Gwendolyn Keyes Fleming* |
| | | GWENDOLYN KEYES FLEMING (*Admitted Pro Hac Vice*) |
| | | JUSTIN PARK |
| | | DONGHYUN KIM |
| | | *Attorneys for Defendant Kumho Tire U.S.A., Inc.* |
| Dated: July 5, 2024 | | **DLA PIPER LLP (US)** |
| | By: | */s/ Adam Baas* |
| | | ADAM BAAS |
| | | ALLEXANDERIA BINGHAM |
| | | *Attorneys for Defendant Hankook Tire America Corp.* |

# CERTIFICATE OF SERVICE

I hereby certify that on the below date, I caused to be served a true and correct copy of the foregoing, which was served on all counsel of record using the Court's CM/ECF system.

Dated: July 5, 2024

*/s/Natasha Johnston*
Natasha Johnston, Legal Assistant
on behalf of Loren R. Dunn