UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INSTITUTE FOR FISHERIES RESOURCES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CONTINENTAL TIRE THE AMERICAS, LLC, et al.,<br><br>Defendants. | Case No. 3:23-cv-05748-JD<br><br>**ORDER RE STAY** |

The crux of this environmental case is whether the use of N-(1,3-dimethylbutyl)-N'-phenyl-p-phenylenediamine (6PPD) in car and truck tires made by defendants resulted in road runoff in the form of 6PPD-quinone (6PPD-q) that caused a "taking" of protected salmonid fish species in West Coast populations under Section 9 of the Endangered Species Act, 16 U.S.C. § 1361 *et seq* (ESA). Dkt. No. 19 (first amended complaint). The Court denied defendants' motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 123. This order resolves defendants' request for a stay under the "primary jurisdiction doctrine." Dkt. No. 111.

Defendants say that the case involves issues that "'have been placed within the special competence of an administrative body,'" namely the Environmental Protection Agency. *Id*. at 5 (quoting *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956)). Defendants urge the Court to put the case on ice pending the outcome of rulemaking proceedings for 6PPD by the EPA under the Toxic Substances Control Act, 15 U.S.C. § 2601 *et seq.* (TSCA).

"Primary jurisdiction is a 'prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the

relevant agency rather than by the courts.'" *Freedline v. O Organics LLC*, 445 F. Supp. 3d 85, 91 (N.D. Cal. 2020) (quoting *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002)). The doctrine is not jurisdictional per se, but rather serves as a prudential mechanism to promote harmony and avoid undue conflict when judicial and agency concerns overlap. *See Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (citation omitted); *Syntek*, 307 F.3d at 780. It is reserved for a "limited set of circumstances" that require "resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Clark*, 523 F.3d at 1114 (internal quotation omitted).

To determine whether application of the primary jurisdiction doctrine is appropriate, the Court may consider: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Astiana v. Hain Celestial Grp.*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Syntek*, 307 F.3d at 781). The decision to stay a case on the basis of primary jurisdiction is entrusted to the Court's sound discretion. *Id.* at 761.

Defendants say a stay is warranted because the EPA granted a citizen's petition submitted by Native American tribes "to adopt a rule that prohibits the manufacture, processing, use, and distribution of 6PPD in and for tires." Dkt. No. 111-3 at 15.[1] Petitioners called upon the EPA to initiate a rulemaking under Section 6(a) of the TSCA, which directs the agency to regulate the use of chemicals that present "an unreasonable risk of injury to health or the environment." 15 U.S.C. § 2605(a); Dkt. No. 111-3 at 15. The petition was filed by Earthjustice, counsel for plaintiffs in this case, and discussed the impact of 6PPD-q road runoff on protected salmonid species, among other arguments presented in support of a rulemaking. *See, e.g.,* Dkt. No. 111-3 at 11-13. The EPA noted that "the data that are currently reasonably available to the EPA suggest a link between 6PPD use in tires and the presence of 6PPD-quinone" in streams, and granted the petition. Dkt.

---

[1] Defendants attached the petition and the EPA letter granting it, Dkt. No. 111-4, to their motion to dismiss, Dkt. No. 111. Both sides discussed the contents of these documents, and neither objected to their consideration by the Court.

2

No. 111-4 at 5. The agency stated that it would "promptly commence an appropriate rulemaking proceeding under TSCA Section 6(a)," but "cannot commit to a specific rulemaking timeframe or outcome." *Id*. at 6. The EPA said it was aiming to publish a notice of proposed rulemaking by "Fall 2024," and to "finalize the rule before 2025." *Id*.

Defendants contend that the petition "asserted precisely the same issues and problems that are asserted in" plaintiffs' complaint. Dkt. No. 111 at 3. It is true that, in making the case for granting the petition, the tribes and counsel at Earthjustice highlighted some of the same impacts on protected fish species that underlie this litigation. But as the EPA observed, it was the petitioners' burden to "present 'the facts which it is claimed establish that it is necessary'" for the agency to act, Dkt. No. 111-4 at 2, and so some degree of factual overlap is not in itself particularly instructive here.

What matters for present purposes is that the TSCA and the ESA are different statues that serve different purposes. "Congress enacted TSCA in 1976 with the express purpose of limiting the public health and environmental risks associated with exposure to and release of toxic chemical substances and mixtures." *America Unites for Kids v. Rousseau*, 985 F.3d 1075, 1094 (9th Cir. 2021) (quoting *Physicians Comm. for Responsible Med. v. Johnson*, 436 F.3d 326, 327 (2d Cir. 2006)). To that end, Congress specifically assigned to the EPA the duty of regulating chemicals that pose an "unreasonable risk" to human or environmental health. 15 U.S.C. § 2605(a).

Congress's stated purposes for the ESA were "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved," and "to provide a program for the conservation of such species." *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 180 (1978) (quoting 16 U.S.C. § 1531(b) (1976 ed.)) (cleaned up). In furtherance of these goals, Congress expressly mandated that "all Federal departments and agencies *shall* seek *to conserve endangered species* and threatened species" using all necessary means and procedures. *Id*. (quoting 16 U.S.C. § 1531(c) (1976 ed.)) (emphases in original); *see also Babbitt v. Sweet Home Chapter of Cmtys. for a Great Oregon*, 515 U.S. 687, 699 (1995) (Congress enacted the

ESA "to halt and reverse the trend toward species extinction, whatever the cost.") (internal citation omitted).

Congress did not assign regulatory authority for Section 9 of the ESA to the EPA. Consequently, the EPA's determination of whether 6PPD poses an unreasonable risk under the TSCA will not answer the question at the heart of this lawsuit, namely whether defendants' use of 6PPD in tires caused a taking of protected salmonid species in West Coast fish populations. To prove a taking, plaintiffs will need to establish, among other elements, that defendants: (1) "harassed" the fish by "an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavior patterns which include, but are not limited to, breeding, feeding, or sheltering," *Arizona Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*, 273 F.3d 1229, 1237 (9th Cir. 2001) (quoting 50 C.F.R. § 17.3); or (2) "harmed" the fish by "actually" killing or injuring them through "significantly impairing essential behavioral patterns, including breeding, feeding or sheltering," *id*. at 1237-38 (quoting 50 C.F.R. § 17.3 and citing *Babbitt,* 515 U.S. at 696-700). This litigation will entail complex legal and factual questions of road runoff and discharge into West Coast aquatic environments, salmonid biology, causation, possible mitigation measures, and the like. Irrespective of what the EPA might do under the TSCA, these questions will need to be answered on the basis of independent evidence specific to plaintiffs' ESA claim.

These circumstances distinguish this case from those where a stay or dismissal was granted on primary jurisdiction grounds. In *Astiana*, for example, a lawsuit challenging the labeling of cosmetics as "natural" substantially overlapped with Congress's delegation of that issue to the FDA. *See Astiana*, 783 F.3d at 759-61 (citing 21 C.F.R. § 700.3, *et seq.*). In *Clark*, a lawsuit challenging telecom "slamming," which is a covert change in a customer's telephone service, overlapped with Congress's delegation of slamming to the FCC. *Clark*, 523 F.3d at 1115 ("Congress has specifically delegated responsibility to the FCC to define "slamming" violations."). Not so here. The question of a taking under Section 9 has not been delegated in whole or part to the EPA, and a rulemaking under the TSCA will not decide that question.

It may be, as defendants urge, that the EPA will bring some expertise to the analysis of 6PPD, but the doctrine of primary jurisdiction "is not designed 'to secure expert advice' from agencies 'every time a court is presented with an issue conceivably within the agency's ambit.'" *Clark*, 523 F.3d at 1114 (quoting *Brown v. MCI WorldCom Network Servs.*, 277 F.3d 1166, 1172 (9th Cir. 2002)). In addition, defendants have not demonstrated that declining to regulate 6PPD under the TSCA would necessarily foreclose plaintiffs' ESA claim. No matter what the EPA decides with respect to the TSCA, there will likely be a lot to fight about over 6PPD and 6PPD-q in this case, especially in light of the overruling of *Chevron* deference to agency decisionmaking. *See Loper Bright Enterprises v. Raimondo*, ___ S.Ct. ___, No. 22-1219, 2024 WL 3208360 (U.S. June 28, 2024).

Although defendants suggest that litigating this case might "short-circuit the EPA's ongoing efforts," Dkt. No. 111 at 2, the concern is the other way around. The Court "must also consider whether invoking primary jurisdiction would needlessly delay resolution of claims" presented in the complaint. *Astiana*, 783 F.3d at 760 (citation omitted). Judicial efficiency "is the 'deciding factor' in whether to invoke primary jurisdiction." *Id*. (citation omitted). Primary jurisdiction "does not require resort to an administrative proceeding when the case must eventually be decided on a controlling legal issue wholly unrelated to determinations for the ascertainment of which the proceeding was sent to the agency." *Id.* (quoting *Amalgamated Meat Cutters & Butcher Workmen of N. Am. v. Jewel Tea Co.*, 381 U.S. 676, 686 (1965)).

That is the situation here. The controlling legal issue is whether defendants have violated Section 9 of the ESA, which the EPA's rulemaking under the TSCA will not, and cannot, adjudicate. Delaying this case while the agency's wheels are turning makes little sense.

This is not to say that the EPA's exercise of its regulatory authority under the TSCA may be disregarded entirely. Rather, "the mere fact" that the EPA has certain regulatory authority does not "trump those [remedies] Congress made available under ESA." *Washington Toxics Coal. v. Env't Prot. Agency*, 413 F.3d 1024, 1034 (9th Cir. 2005); *see also Conservation L. Found., Inc. v. Exxon Mobil Corp.*, 3 F.4th 61, 70 (1st Cir. 2021) ("[C]itizen suit provisions demonstrate

circumstances where Congress wanted to allow individuals to bring lawsuits, even where an agency has some authority.").

Consequently, a stay on primary jurisdiction grounds is denied.  Defendants may ask the Court to revisit a stay if the EPA publishes a notice of rulemaking in Fall 2024 that provides good cause for another look.

**IT IS SO ORDERED.**

Dated:  July 10, 2024

JAMES DONATO
United States District Judge