1
2
3

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

INSTITUTE FOR FISHERIES RESOURCES; and
PACIFIC COAST FEDERATION OF
FISHERMEN'S ASSOCIATIONS,

　　　　　Plaintiffs,

　　vs.

BRIDGESTONE AMERICAS TIRE OPERATIONS,
LLC; CONTINENTAL TIRE THE AMERICAS,
LLC; GITI TIRE (USA) Ltd.; THE GOODYEAR
TIRE & RUBBER COMPANY, individually and as
successor in interest to COOPER TIRE & RUBBER
COMPANY; HANKOOK TIRE AMERICA Corp.;
KUMHO TIRE U.S.A., Inc.; MICHELIN NORTH
AMERICA, Inc.; NOKIAN TYRES Inc.; NOKIAN
TYRES U.S. OPERATIONS LLC; PIRELLI TIRE
LLC; SUMITOMO RUBBER NORTH AMERICA,
Inc.; SUMITOMO RUBBER USA, LLC; TOYO
TIRE HOLDINGS OF AMERICAS Inc.; and
YOKOHAMA TIRE Corporation.

　　　　　Defendants.

Case No. 23-cv-05748-JD

~~[PROPOSED]~~ **STIPULATED**
**ORDER RE DISCOVERY OF**
**ELECTRONICALLY STORED**
**INFORMATION**

Judge:  Hon. James Donato
Court:  Courtroom 11 – 19th Floor

19
20
21
22
23
24
25
26
27
28

### 1.    PURPOSE

　　This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. If there is a conflict between this Order and any of the foregoing rules, the foregoing rules shall govern.

### 2.   COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

### 3.   LIAISONS

The parties have identified to each other the individuals who are and will be knowledgeable about and responsible for discussing their respective ESI (each an "E-discovery Liaison"). The E-discovery Liaisons are, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties have been relying on, and will continue to rely on the E-Discovery Liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention. Any party may change its E-discovery Liaison by providing written notice to all other Parties.

### 4.   PRESERVATION

a)    The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that: a)       The parties will exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably necessary, provided however, that when if one Party requests that another Party add custodian(s) to the latter's preservation, collection, or production efforts, such request shall be the subject of a good-faith meet-and-confer discussion between the affected Parties;

b)      The parties will meet and confer on the number of custodians per party for whom ESI will be preserved;

c)      The Parties agree that the needs of this case do not warrant the preservation, review or production of ESI that is not reasonably accessible if, and only to the extent that, the party in possession of that ESI believes in good faith that ESI is unlikely to contain significant relevant information not otherwise available in reasonably accessible sources. For purposes of this paragraph, the parties agree that the following sources of ESI are not reasonably accessible:

- Backup Media and Backup Systems;
- Legacy Data and Legacy Systems;
- Dynamic fields of databases or log files that are not retained in the usual course of business;
- Residual, deleted, fragmented, overwritten, slack, damaged, or temporary data only accessible by forensics;
- Online access data such as temporary internet files, history, cache, cookies;
- Corrupted data or otherwise inaccessible files that cannot be recovered by the systems currently in use;
- Automatically saved versions of documents and/or data in metadata fields that are frequently updated automatically, such as last-opened dates;
- Server, system or network logs;
- System and program files; and
- Data stored on photocopiers, scanners, and fax machines.

**5.      SEARCH**

The Parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that

is subject to production in discovery and filter out ESI that is not subject to discovery. The Parties shall reach agreement as to the method of searching, and the words, terms, and phrases to be searched with the assistance of the respective E-Discovery Liaisons. The Parties also shall reach agreement as to the timing and conditions of any additional searches which may become necessary in the normal course of discovery. To minimize expense and burden, the Parties may consider limiting the scope of the electronic search (*e.g.* the document types and fields to be searched),

On-site inspections of electronic media under Federal Rule of Civil Procedure 34(b) shall not be permitted absent exceptional circumstances where good cause and specific need have been demonstrated.

## 6.   PRODUCTION FORMATS

The Parties agree to generally produce documents in the following file formats: ☒ PDF and/or ☒TIFF and/or ☐native and/or ☒paper, or a combination thereof, with the production of documents in TIFF and native formats subject to the production specifications set forth in the Production Format Standard (Exhibit A). If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties agree not to degrade the searchability of documents as part of the document production process.

## 7.   PHASING

When a Party propounds discovery requests pursuant to Fed. R. Civ. P. 34, and a Producing Party makes a request to phase the production of ESI and other materials, the Parties agree to accommodate reasonable requests and meet and confer if necessary to determine a schedule for production from certain ESI sources.

## 8.   DOCUMENTS PROTECTED FROM DISCOVERY

a)   Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, ESI, or information, whether inadvertent or otherwise, is

not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

b) Within 30 days of production being substantially complete, the Producing Party will produce a privilege log of documents that were withheld based on an assertion of privilege, in Microsoft Excel format. If a Producing Party needs additional time to produce a privilege log, it will make such a request to the Parties and the Parties will not unreasonably deny such a request. Inadvertent failure to log privileged documents or metadata will not result in the waiver of privilege, provided that upon discovering the inadvertent omission, the Producing Party sends to the requesting party an addendum to the appropriate privilege log explaining the reason for the omission and providing the required privilege log entries for the document(s).

c) Communications and work product about this litigation that post-date the issuance of the Sixty-Day Notice of Violations on August 15, 2023 that are between a Producing Party and/or its in-house legal team and/or/its Outside Counsel, consultants or other persons providing assistance to outside trial counsel, need not be placed on a privilege log. Communications and work product may be identified on a privilege log by category, rather than individually, if appropriate.

**9.    ADDITIONAL PROVISIONS**

a) <u>Protective Order</u>. The Parties have agreed to a separate Stipulated Protective Order governing the disclosure, production and handling of documents and information designated by any Party as "Confidential" or "Highly Confidential – Attorney's Eyes Only", which applies to ESI designated as such by any Party.

b) <u>Safeguards for Confidential Documents and Information</u>. The Parties agree to maintain an information security program that includes reasonable

administrative, technical, and physical safeguards designed to protect the security and confidentiality of ESI designated as "Confidential" or "Highly Confidential-Attorney's Eyes Only" pursuant to the Protective Order, protect against any reasonably anticipated threats or hazards to the security of such ESI, and protect against unauthorized access to such ESI, in the same manner as it would for its own such ESI.

c)      Proprietary Databases or Structured Data. Certain types of databases are dynamic in nature and will often contain information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Certain other proprietary databases may not have functionality to export a reasonably readable form other than a static image. Relevant Structured Data will be produced in reasonably readable export format available in the ordinary course of business for that particular database.  Upon review of the exported report(s) or static image, the requesting Party may, on a showing of particularized need, request from the producing Party additional information to explain any codes, abbreviations, or other information necessary to ensure the document is reasonably usable.  In the event of such a request, the Parties will meet and confer regarding the most reasonable means to provide the information.

d)      Foreign Language Documents. All documents shall be produced in their original language.  Nothing in this agreement shall require a Producing Party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.  In the event production of translations of the documents are necessary, the Parties will meet and confer on regarding the most reasonable means to provide the translations, including, but not limited to, consideration of cost-sharing for translating expenses.

e)      No Waiver. Nothing in this Stipulated Order shall be interpreted to require disclosure of ESI which is not relevant or proportional to the needs of the case, or information protected by the attorney-client privilege, work-product doctrine, or any

other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility or confidentiality of ESI. The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose. Further, performing keyword searches as a privilege screen prior to production of ESI constitutes "reasonable steps to prevent disclosure" as that term is used in Federal Rule of Evidence 502(b).

f)   <u>Further Agreement</u>.  Any provision of this Stipulated Order may be varied by agreement of the Parties and confirmed in writing where such variance is deemed appropriate to facilitate the timely and economical exchange of physically-stored information or ESI.

h)   <u>Reimbursement</u>.  Nothing in this Stipulated Order shall affect, in any way, a Producing Party's right to seek reimbursement for costs associated with collection, review, and/or production of physically-stored information or ESI.

**10.   MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.


Dated: July 29, 2024

*/s/Janette Brimmer*_____
*Attorney for Plaintiff*

Dated: July 29, 2024

*/s/George J. Gigounas*_____
*Counsel for Defendant Michelin North America, Inc.*

Dated: July 29, 2024

*/s/Justin Park*_____
*Counsel for Defendant Kumho Tire U.S.A., Inc.*

Dated: July 29, 2024

*/s/Adam P. Baas*_____
*Counsel for Defendant Hankook Tire America Corp.*

Dated: July 29, 2024

*/s/Loren R. Dunn*
*Counsel for Defendants Bridgestone Americas Tire*
*Operations, LLC; Continental Tire the Americas, LLC;*
*GITI Tire (USA), Ltd.; The Goodyear Tire & Rubber*
*Company, individually and as successor in interest to*
*Cooper Tire & Rubber Company; Nokian Tyres Inc.;*
*Nokian Tyres U.S. Operations, LLC; Pirelli Tire LLC;*
*Sumitomo Rubber North America, Inc.; Sumitomo; Rubber*
*USA, LLC; Toyo Tire Holdings of Americas, Inc.; and*
*Yokohama Tire Corporation.*

    **IT IS ORDERED** that the forgoing Stipulated Order is approved.

Dated:  August 5, 2024

_____
    UNITED STATES DISTRICT/MAGISTRATE JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

## PRODUCTION FORMAT STANDARD

The Parties agree to the following specifications for the production of ESI in response to discovery requests pursuant to Fed. R. Civ. P. 34.

**1. DEFINITIONS**

The Parties agree to the following definitions used in this ESI Protocol:

A. "Agreed Custodian" shall mean any individual of a Producing Party as agreed by the parties during a meet and confer as having possession, custody, or control of potentially relevant information, Documents, or Electronically Stored Information ("ESI").

B. "Backup Media" refers to magnetic tapes, CDS, DVDs, hard drives or other storage onto which Backup Systems stored electronic information.

C. "Backup Systems" refers to computer systems used to store copies of electronic information on Backup Media to permit recovery of the information in the of loss or damage to the original data.

D. "Custodial Data Source" means any data source used for business purposes in or on which Agreed Custodian may store potentially relevant Documents, ESI or Hard Copy Documents, whether or not created or generated by an Agreed Custodian or Potential Custodian.

E. "Document" shall have the meaning contemplated by Federal Rule of Civil Procedure 34(a)(1)(A).

F. "Document Family" means a collection of pages or files maintained together constituting a logical single communication of information, but consisting of more than a single stand-alone record. An example of a document family include a letter being the "Parent" and attachment to the letter being a "Child" or a Power point presentation with embedded files.

G. "Email" means an electronic means for communicating written information that is deliverable to designated recipients at specific addresses associated with particular Internet domains.

H. "Extracted text" or "Full Text" means the text extracted from a Native Document, and includes all header, footer, and document body information when available. A "Text File" is a file containing the full text of native files extracted directly from the native file, or, in the case of Hard Copy Documents or scanned PDF documents, subject to OCR, a file containing the text resulting from the OCR.

I. "Hard Copy Document" means a Document that was maintained in paper form.

J. "Legacy System" and "Legacy Data" means systems that have been retired, sunset, or taken offline to archive status and stored data generated from the archived system that are unintelligible or unreadable on the available current active systems.

K. "Load File" means an electronic file that is used to import all required production information into a Document database, including, if available, Document images, Full Text or OCR text, Native Format files where required by this ESI Protocol, and reasonably available Metadata, as well as information indicating Document breaks, and Document relationships, such as a Power point and its embedded files.

L. "Metadata" means structured information about ESI that is created by the file system or application, embedded in the Document and sometimes modified through ordinary business use.  Metadata of the ESI describes, inter alia, the characteristics, origins, usage and validity of the ESI.

M. "Native Format" means the format of ESI in the application in which such ESI was originally created.

N. "Non-Custodial Data Source" or "Central Data Source" means any data source that is not kept or maintained by any particular Agreed Custodian but which may contain potentially relevant Documents or ESI, including data sources used by any department, business unit, or division of a Producing Party, or shared storage systems used by multiple users/computers that may contain potentially relevant information.

O. "Non-standard ESI" includes voicemails, and other potentially non- visual, transitory forms of communications.

P. "OCR" means the optical character recognition technology used to read paper Documents or electronic images of Documents and output such Documents to a searchable text format.  The latter text is referred to as the OCR text."

Q. "Search Term" means a word or a combination of words or phrases designed to capture potentially relevant ESI, and includes strings of words and phrases joined by proximity and Boolean connectors or other syntax.

R. "Static Image" means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.

S. "TAR" (Technology-Assisted Review) means a process for prioritizing or coding a collection of ESI using a computerized system, using algorithms or systematic rules, that harnesses human judgments of subject matter expert(s) on a smaller set of Documents and then extrapolates those judgments to the remaining Documents in the collection.

T. "Structured data" means data that resides in a fixed field within a record or file, or stored in a structured format, such as databases (e.g. Oracle, SQL, Access) or data sets or proprietary system according to specific form and content rules as defined by each field of the database, data set or system.

U.  "Unstructured data" refers to free-form data which either does not have a data structure or has a data structure not easily readable by a computer without the use of a specific program designed to interpret the data, including but not limited to word processing documents, slide presentations, email, PDFs, spreadsheets and others of similar variable format. For purposes of this ESI Protocol, Unstructured data does not include Email and Non-Standard ESI.

**2.      PRODUCTION SPECIFICATIONS**

Productions must be delivered via secure electronic download. If this method is not feasible for a specific production, the Producing Party shall discuss alternative, secure methods with the Receiving Party.

**A.**      Passwords or decryption keys must not be contained in the cover letter or transmittal message accompanying the production.

**B.**      Productions made via electronic delivery should be announced via email and made available for timely download upon receipt of the email. The maximum compressed size of the download should not exceed 50 GB whenever possible.  Delivery should be made via a secure file transfer (SFT) system, or a password-protected link. Productions made via insecure file transfer sites or sent via email may be rejected. Electronic deliveries must remain accessible for thirty days after the production date.

**3.      PRODUCTION OF PHYSICALLY STORED INFORMATION**

**A.      PDFs.** Hardcopy paper documents shall be scanned as multi-page PDF images using a print setting of at least 300 dots per inch (DPI). Each PDF shall have a unique file name to reflect the Bates number of the first page of the document. Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape).

**B.      Metadata Fields.** Appendix 2 sets forth the metadata which shall be produced for physically-stored information and included in the data load file to the extent such metadata (i) exists for any particular file; (ii) is associated with and retained as part of the file,

document, or data in the ordinary course of business; and (iii) is reasonably accessible. A Producing Party shall not be required to convert files, documents, or data to create or add metadata which is not part of the routine manner in which the information is stored in the ordinary course of business. Subject to the above, reasonably accessible, and available metadata will be produced at the same time as the PDF images and any Optical Character Recognition (OCR)-acquired text files are produced.

   **C.**  **OCR Acquired Text Files.** Documents subject to an OCR process will be treated in accordance with current industry standards, in support of full searchability. The Producing Party will apply the same OCR process to the produced documents as it uses for the Producing Party's own copy of the produced documents. To the extent a party believes the quality of the OCR performed on a specific document is not satisfactory, the parties will meet and confer regarding what additional measures, if any the Producing Party will take to address the concern.

   **D.**  **Database Load Files/Cross-Reference Files.** Documents shall be produced with (i) a delimited metadata file (.dat or .csv), and (ii) an image load file (.lfp or .opt), as detailed in Appendix 1, to the extent such metadata: (a) exists for any particular file; (b) is associated with and retained as part of the file, document, or data in the ordinary course of business; and (c) is reasonably accessible. A party shall not be required to convert files, documents, or data to create or add metadata which is not part of the routine manner in which the information is stored in the ordinary course of business.

   **E.**  **Bates Numbering.** All images must be assigned a Bates/control number which is: (i) unique across the entire document production; (ii) maintains a consistent length (zero/0-padded) across the entire production; (iii) contains no special characters or embedded spaces; and (iv) is sequential within a given document; if a Bates number or series of Bates numbers is skipped in a production (thereby creating a gap), the Producing Party will identify the Bates numbers or ranges for this gap, upon transmittal.

**F.     Document Families.** To the extent parent-child relationships are maintained for Document Families in the ordinary course of business either in active use, archival or storage locations, such relationships shall be preserved. Subject to the previous limitation, when attachments and embedded files are combined with their parent documents, the "BegAttach" and "EndAttach" fields, listing the unique beginning and ending number for each attachment or embedded document, must be included in the data load file.

**G.     Unitization of Documents.** To the extent paper documents are stored and maintained in the ordinary course of business in a document-level unitized format, reasonable efforts will be used to maintain such unitization in the document scanning process.

**4.     PRODUCTION OF ELECTRONICALLY-STORED INFORMATION**

Consistent with the Parties' Joint Stipulation, the Parties agree to the following:

**A.     Machine-Readable ESI.** Subject to an applicable document request, the Parties will meet and confer in good faith regarding the form of production and other matters, consistent with the Federal Rules of Civil Procedure, this Court's Local Rules of Civil Procedure, and any other applicable orders and rules.

**B.     System Files.** Common system and program files (i.e., Windows operating system) need not be processed, reviewed, or produced. This agreement does not prohibit discovery, if otherwise appropriate, of any code, scripts, data structures, or other system related documents created specifically for this litigation or potentially relevant systems. Each Producing Party shall employ industry standard processes to identify and filter system or program files. Prior to or concurrent with the first production, each Producing Party shall provide the receiving party with a list of any file extensions which were excluded.

**C.     E-mail.** Producing party shall produce relevant, non-privileged emails with all agreed upon and available metadata, content, and attachments. To the extent such information exists in a reasonably accessible format, meeting notices, calendar items contacts

1    and tasks, if relevant, shall be extracted from the email database and produced in a mutually

2    agreed upon format.

3           **D.**      **De-Duplication.** Each Party may de-duplicate ESI on a global level

4    (across all custodians) prior to production. The basis for such deduplication shall be the MD5 or

5    SHA1 Hash values at a family level. Attachments should not be eliminated as duplicates for

6    purposes of production unless the parent document and all attachments are also duplicates. No

7    party shall remove near-duplicate documents without the consent of the requesting party and

8    allowing time for the parties to meet and confer in advance.  The CUSTODIAN field must list

9    the custodian of produced version of the document after deduplication.  Any other custodians

10   that are associated with the Document (that are excluded due to de-duplication) must be listed in

11   an "ALL_CUSTODIAN" field.  Email thread analysis may be used to reduce the volume of

12   emails reviewed and produced, provided that the produced emails must include all of the

13   responsive information from a thread, including attachments.  Email thread analysis will be

14   conducted using reasonable and standard measures to ensure that discoverable information and

15   metadata are not excluded from production, and that responsive emails with attachments not

16   present on the last-in-time email are produced as separate email threads.  A receiving party may

17   request that Producing Party separately produce any document that has been removed from

18   production due to de-duplication or email threading, and a Producing Party shall make

19   reasonable efforts to honor such requests, provided that no party shall be required to produce

20   such duplicate or lesser-included documents if doing so would be overly burdensome or

21   disproportionate to the needs of the litigation.  Nothing contained in this paragraph shall preclude

22   a Party, in its sole discretion, from opting not to de-duplicate its ESI prior to production.

23          **E.**      **Metadata Fields and Processing.**  The Parties have met and conferred to

24   determine mutually agreed upon metadata fields for production, which are contained in

25   Appendix 2. The Parties are not obligated to manually populate any of the fields in Appendix 2.

26

27

28

**F.     PDFs.** Multi-page PDF images shall be provided using at least 300 DPI print setting. Each image shall have a unique file name, which is the Bates number of the first page of the document. Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape). To the extent possible using industry standard technology, PDFs will show any and all text and images which would be visible to the reader using the native software that created the document.

**G.     Embedded Objects.** Objects embedded in Microsoft Word and .RTF documents, which have been embedded with the "Display as Icon" feature, will be extracted as separate documents, and treated as attachments to the document. The Parties shall meet and confer as to the handling of embedded objects other than embedded objects in email (*e.g.*, inline images such as company logos, stationary, icons, files containing no user created content).

**H.     Compressed Files.** Compression file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

**I.     Text Files.** To the extent text and metadata exists for a given document, a single text file shall be provided, per document, along with the image files and agreed upon metadata. The text file name shall be the same as the page Bates/control number of the first page of the document/image. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document is redacted, an image file, or a physical file. In these instances, a text file created using OCR will be produced in lieu of extracted text consistent with Section 3(C) for OCR requirements. Under no circumstances other than redaction of a text file for privilege, confidentiality or relevance shall the receiving party be required to rely upon a less accurate version of the fully-searchable text than the Producing Party. For example, if the Producing Party has access to extracted text from electronic document files, the receiving party shall receive extracted text as well, instead of

OCR'd text generated from an image file unless the extracted text file contains data that has been redacted for privilege, confidentiality or relevance.

       **J.**     **Spreadsheets.** Spreadsheets shall be produced in Native format along with the extracted text and relevant metadata identified in Appendix 2 for the entire spreadsheet.

       **K.**     **Microsoft PowerPoint or Other Presentation Programs.** Parties shall produce MS PowerPoint and other presentation programs as Native document files along with the extracted text and relevant metadata identified in Appendix 2 for the entire document.

       **L.**     **Audio and Video Files.** Audio files and video files which are relevant and reasonably accessible shall be produced in the format in which they are maintained in the ordinary course of business or in a reasonably usable format mutually agreed upon by the parties (e.g., .mp4, .wav format).

       **M.**     **Native File Productions.** Any native files shall be produced with a Bates-numbered PDF image slip-sheet stating: "Document has been produced in native format." Any native files produced shall be produced with the original source file path, as well as all extracted text and applicable metadata fields set forth in Appendix 2.

       **N.**     **Confidentiality Designations.** If a party converts native files or other ESI containing confidential information to hardcopy form, such party shall mark the physical document with the same confidentiality designation. Further, to the extent confidential files or documents are produced in native format, produced metadata will include the appropriate confidentiality designation under the Protective Order.

       **O.**     **Non-Responsive Attachments.** Completely non-responsive documents attached to an otherwise production eligible document can be produced as a single-page Bates-stamped PDF slip-sheet stating the document has been withheld as non-responsive.  For all attachments withheld as non-responsive, the producing Party shall produce the ESI metadata listed in Appendix 1 with the exception of text as part of the load file.  When producing

responsive attachments, the parent email will be produced regardless of responsiveness unless otherwise protected from disclosure.

### P. Additional ESI Production Protocols:

**i.** Redactions. Documents with redactions shall include a redaction legend or placeholder document for a withheld family member should indicate the reason for the redaction as follows: REDACTED- PRIVILEGED, or WITHHELD – PRIVILEGED; REDACTED – WORK PRODUCT or WITHHELD -WORK PRODUCT; or REDACTED – PII/PHI; or REDACTED – NOT RELEVANT CONFIDENTIAL INFORMATION.

**ii.** Database Load Files/Cross-Reference Files. Documents shall be provided with (a) a delimited data file (.dat or .csv) and (b) an image load file (.lfp or .opt), as detailed in Appendix l.

**iii.** File Size Limitations/Non-Standard Files. The format of production of unusually large files and non-standard electronic files or large oversized documents will be discussed before production to determine the optimal production format.

**iv.** Color. Documents containing color must be produced in color.

**v.** Replacements. All file replacements, for any reason must be designated with a new previously unused Bates number and the production shall be accompanied by a cross reference file indicating the original and newly-designated Bates number.

### 5. ASSERTIONS OF PRIVILEGE

If a Producing Party withholds Document(s) or portion of a Document(s) protected by attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity from disclosure, the Producing Party must provide a log identifying the Document(s) or portion of Document(s) withheld.

A.     Privilege Logs shall be provided in Excel format and contain the following information for each responsive Document or ESI withheld or redacted:

    i.     A sequential number associated with each privilege log record;

    ii.     The date of the Document or ESI;

    iii.     The Bates Numbers of Documents or ESI redacted or a numerical or other identifier for each Document or ESI withheld;

    iv.     Identification of the relationship of the Document or ESI redacted as a Parent, Attachment or Standalone;

    v.     The identity of persons who sent (and, if different, the identity of all persons who authored or signed) the Document or ESI and the addressees, the recipients, copyees, and blind copyees (with senders, signers, authors, addressees/recipients, copyees, and blind copyees, each separately identified by those categories), and identification of which of them are attorneys, and the job title or general description of the job responsibilities of such persons, if known or reasonably knowable.  The identification of job titles or responsibilities of such persons may be satisfied by providing a key accompanying the log that provides the job title or general job responsibilities for such persons and by identifying those persons whose title or responsibilities are unknown rather than by entering such titles or descriptions in the log itself, or by providing organizational charts or similar documents sufficiently detailed for the Requesting Party to readily identify the job titles or responsibilities of such persons;

    vi.     A description of the subject matter of the information contained in the Document or ESI that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the Document and the basis of the claim of privilege or immunity.  The same description

may be used for multiple Documents (i.e., a categorical description) so long as the Producing Party has, in good faith evaluated the Document to ensure the categorical description accurately reflects the contents of the Document and is sufficient for the Receiving Party to evaluate the claim of privilege or immunity;

vii.  For email threads, the Producing Party shall log an entry for each lesser included email in the thread, or the Producing Party shall log a single entry for the entire thread and produce a redacted version of the threaded email;

viii.  The type of nature of the privilege asserted shall be identified along with the identification of whether the Producing Party or some other entity holds the privilege or protection asserted; and

ix.  An indication of whether the Document or ESI has been redacted ad produced or withheld in its entirety.

x.  For ESI, as an alternative to manually entering the information required under this Paragraph, a portion of each Producing Party's privilege log may be generated by exporting objective Metadata from the review tool used to identify privileged or work product protected Documents where the objective Metadata provides the information required under these subparagraphs, provided, however, that: the Metadata are reasonably understandable and legible; the required to provide a key or other documents sufficient to identify job titles or job responsibilities of the persons identified in the Metadata is satisfied; and that for email, email and any attachments are sequentially logged.

1.  Such Metadata shall include the following:

a.  A unique privilege log identifier, or in the case of redacted documents, the Bates number assigned to such document;

b.  Author;

c.  From;

d.  To:

e.  Cc:

f.  BCC:

g.  Date Sent, Received or Created

h.  Document Type, (for example Email, ATT (attachment), DOC, Excel, PPT)

i.  Page count or file size

# APPENDIX 1: FILE FORMATS

**1.      IMAGE LOAD FILES**

A.      Every document referenced in a production image load file shall have all corresponding images, text, and data logically grouped together.

B.      Documents shall be produced in only one image load file throughout the production(s) unless a document is noted as a replacement.

C.      The name of the image load file shall mirror the name of the delivery volume and include an .opt or .lfp extension (i.e., XYZ001.opt).

D.      The volume names shall be consecutive (i.e., XYZ001, XYZ002, et. seq.).

E.      The load file shall contain one row per produced document.

F.      Every image in the delivery volume shall be contained in the image load file.

G.      The image key shall be named the same as the Bates number of the first page.

H.      Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc. (i.e., a separate volume shall be created for each piece of media delivered.

**2.      METADATA LOAD FILES**

A.      The metadata load file shall consistently use the same data delimiters to support:

    i.      Column Delimiter

    ii.      Text Qualifier

    iii.      New line

    iv.      Multi-Value

    v.      Nested Values

B.      Document Metadata shall be produced in only one data load file throughout the productions unless the document is noted as a replacement.

C.      The first metadata loadfile line will contain the field names in the order of the data set forth in Appendix 2.

1      D.      Metadata fields which are not applicable to a document will be designated with no

2  value. NULL values will be produced for fields which were obtained due to a processing error or

3  corrupt file.

4      E.      All date fields shall be produced in "mm/dd/yyyy" format.

5      F.      A carriage/hard return shall be used to indicate the start of the next record.

6      G.      Load files will not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a

7  separate volume will be created for each piece of media delivered.

8      H.      The name of the metadata load file shall mirror the name of the delivery volume

9  and include a .dat or .csv extension (i.e., XYZ001.dat).

10     I.      The volume names will be consecutive (i.e., XYZ001, XYZ002, et. seq.).

# APPENDIX 2: ESI METADATA AND
# CODING FIELDS

| Field Name | Data Example | Field Description |
|---|---|---|
| BEGIN DOC | XYZ00000177 | Bates number of first page. |
| ENDDOC | XYZ00000177 | Bates number of last page. |
| BEGATTACH | XYZ00000178 | Bates number of first page of attachment range. Blank if no attachments. |
| ENDATTACH | XYZ00000179 | Bates number of last page of attachment range. Blank if no attachments. |
| ATTACH ID | XYZ00000178; XYZ00000179 | Semicolon separated list of Bates number of first page of each attachment. |
| PARENT ID | XYZ00000177 | It refers to the main email body the attachments belong to. Bates number of first page of parent. Only populated for attachments. |
| DOCUMENT TYPE | EMAIL | Descriptor for the type of document: E-document, Email, E-Attachment, or Physical. |
| EMAIL SENT DATE | 04/15/2022 | The date email was sent in the format MM/DD/YYYY using local time zone provided.  If no local time is provided, Universal Time (formerly GMT) is used. |
| EMAIL SENT TIME | 02:45:22 PM | Time email was sent in the format HH:MM:SS XM using local time zone provided.  If no local time is provided, Universal Time (formerly GMT) is used. |
| EMAIL DATE RECEIVED | 04/15/2022 | Date email was received in the format MM/DD/YYYY using local time zone provided.  If no local time is provided, Universal Time (formerly GMT) is used. |
| EMAIL TIME RECEIVED | 02:45:22 PM | Time email was received in the format HH:MM:SS XM using local time zone provided.  If no local time is provided, Universal Time (formerly GMT) is used. |
| DATECREATED | 04/15/2022 | It will show the date the native file is stored in the properties of the file, when it was first created. |

| Field Name | Data Example | Field Description |
|---|---|---|
| TIMECREATED | 02:45:22 PM | Time native file was created in the format HH:MM:SS XM using local time zone provided.  If no local time is provided, Universal Time (formerly GMT) is used. |
| FILE TITLE | Planning Guide | Any value populated in the Title filed of the document properties. |
| FILE DATE LAST MODIFIED | 04/15/2022 | Date Last Modified for native files in the format MM/DD/YYYY using local time zone provided.  If no local time is provided, Universal Time (formerly GMT) is used. |
| FILE TIME LAST MODIFIED | 02:45:22 PM | Time native file was modified in the format HH:MM:SS XM using local time zone provided.  If no local time is provided, Universal Time (formerly GMT) is used. |
| AUTHOR | Adam Brooks | Populated from the Author field of electronic documents |
| ORIGINAL FOLDER | Mailbox—Smith, John\Inbox\Client Materials | Email message directory. |
| IMPORTANCE | Flag | Priority of an email message. |
| EMAIL FROM | Adam Brooks (abrooks@abc.com) | Author for Native files. Sender for Emails. |
| EMAIL TO | John Doe (jdoe@abc.com); | Semicolon separated list of Recipients for Email. The exact value depends on multiple factors including the email client address book. This includes name, email address, and/or Moniker. |
| EMAIL CC | John Junior (jjunior@abc.com) | Semicolon separated list of Carbon Copy Recipients for Email. The exact value depends on multiple factors including the email client address book. This includes name, email address, and/or Moniker. |

| Field Name | Data Example | Field Description |
|---|---|---|
| EMAIL BCC | Sarah Smith | Semicolon separated list of Blank Carbon Copy Recipients for Email. The exact value depends on multiple factors including the email client address book. This includes name, email address, and/or Moniker. |
| EMAIL SUBJECT | Meeting time changed | Subject of the email. |
| FILENAME | Proposed Retainer - clean copy | Filename without extension of the native file. |
| FILEEXTENSION | .doc | File extension of native file. |
| VOLUME | PROD_IMG001 | Fixed. |
| NATIVE LINK | ORIGINALS/001/XYZ 00000177.xlsx | Relative file path of Native files. |
| PAGECOUNT | 20 | Number of pages if file was converted to PDF. |
| FILEPATH | ORIGINALS/001/XYZ 00000177.xlsx | The directory structure of the original file. |
| ATTACHMENT COUNT | 3 | The total number of attachments including any attachments which were not processed & the contents of additional attached containers.  A zero value should be returned for files with no attachments. |
| TEXTPATH | TEXT\001\XYZ 00000177.TXT | Relative file path of Extracted / OCR text. |
| CUSTODIAN | Malta | Holder of the source document. |
| ADDTL CUSTODIANS | John Smith | A list of custodians assigned to duplicates of the document. |
| REDACTED | Yes | Indicator for whether a produced document contains redactions. Typically, "Yes" or "No". |

| Field Name | Data Example | Field Description |
|---|---|---|
| CONFIDENTIALITY | Confidential, Highly Confidential-Attorney's Eyes Only | Indicator for level of confidentiality per document level endorsement |
| MD5 | c8054025235fbra26e4bc242aef543b6 | Unique checksum ID for a file. |
| EMAIL CONVERSATION ID | c8054025235fbra26e4bc242aef543b6 | Email Thread Identifier—generally applicable to Outlook messages. |
| EMAIL THREAD ID | c8054025235fbra26e4@mail.gmail.com | Email Thread Identifier—generally applicable to Gmail messages. |
| SIZE | 1408 | Size, in bytes, of the original file. |

1

2

## **ATTESTATION**

3

Pursuant to Civil Local Rule 5-1(h)(3), I attest that all other signatories listed, and on

4

whose behalf this filing is submitted, concur in the filing's content and have authorized the

5

filing.

6

7      Dated July 29, 2024                    **BEVERIDGE & DIAMOND P.C.**

8                                     By: */s/ Loren R. Dunn*
                                      Loren R. Dunn, *(pro hac vice)*
9                                     ldunn@bdlaw.com
                                      600 University Street, Ste. 1601
10                                    Seattle, WA  98101
                                      P: 206-315-4810
11

12                                    Susan E. Smith, (CA Bar No. 329539)
                                      ssmith@bdlaw.com
13                                    456 Montgomery Street, Ste. 1800
                                      San Francisco, CA  94104
14                                    P: 415-262-4023

15
                                      W. Parker Moore *(pro hac vice)*
16                                    pmoore@bdlaw.com
                                      1900 N. Street NW, Ste. 100
17                                    Washington, D.C.  20036
                                      P: 202-789-6028
18

19

20

21

22

23

24

25

26

27

28