

**DLA Piper LLP (US)**
555 Mission Street
Suite 2400
San Francisco, California 94105-2933
www.dlapiper.com

George Gigounas
george.gigounas@us.dlapiper.com
T  415.615.6005
F  415.659.7305

December 3, 2024                                                                                                         *Via ECF*

Re:     **Michelin North America, Inc., (MNAI) Response to Plaintiffs' Discovery Dispute**
         *IFR et al. v. Bridgestone Americas Tire Operations LLC et al.*, No. 3:23-cv-05748-JD

Dear Hon. James Donato:

This letter responds to Plaintiffs' discovery dispute letter under the Court's November 19, 2024 Order and Plaintiffs' later filed response to Michelin North America, Inc.'s response to Plaintiffs' administrative motion to consider whether another party's material should be sealed, (collectively, Plaintiffs' "Discovery Challenge').

### I. Plaintiffs Did Not Meaningfully Meet and Confer Before Filing Their Dispute Letter, and Michelin's Efforts Have Substantially Narrowed the Dispute.

Plaintiffs' Discovery Challenge has substantially narrowed following a meet and confer effort occurring *after*, rather than before, Plaintiffs' filing its Challenge with the Court, in contravention of your Honor's Standing Order for Discovery ¶ 18. Plaintiffs arranged a perfunctory meet and confer video conference on November 12, responsive to MNAI's November 8 Notice of Claw Back (clawing back documents in a manner consistent with the October 11 privilege log that Plaintiffs held without contesting for over a month).[1] Hours later, Plaintiffs filed the Discovery Challenge letter with the Court, including Exhibit A, MNAI's November 8 Notice of Claw Back and the associated twenty protected documents, and Exhibit B, MNAI's October 11 privilege log, with an Administrative Motion to Seal under Local Rule 79-5. ECF 175, 176.

Within days of the November 12 meet and confer, MNAI substantially narrowed its assertion of privilege and limited its claw back to only seven documents—three replacements with only minor redactions, and four to be fully clawed back. *See* ECF 179-1 (Gigounas Decl.) Ex. 1. MNAI correspondingly revised its October 11 privilege log. *See* Ex. A attached hereto (November 21 Transmittal of Revised Production to Plaintiffs). MNAI has offered by telephone and in writing to meet and confer further regarding the detailed legal basis for asserting the narrowed protections in its revised Notice of Claw Back and promptly submitted the evidence supporting the narrowed assertion. Plaintiffs declined to consider MNAI's evidence or withdraw their Discovery Challenge (despite the fact that most of it is moot), instead seeing MNAI's legal support for its assertion of privilege for the first time in MNAI's response documents to the Court. For that reason alone, the Court should deny Plaintiffs' Discovery Challenge.

### II. U.S. Tire Manufacturers Association's Privileged Communications and Work Product Should Be Protected.

Documents reflecting attorney-client communications and/or work product as applied in the common interest context among USTMA and its members, which includes all defendants, should be protected.[2] MNAI submitted the Declaration of Tracey Norberg, USTMA General Counsel, describing the basis for protection. ECF 179-2 (Norberg Decl.). USTMA, through its counsel, formed a common interest joint

---

[1] MNAI sent its Notice of Claw Back consistent with Fed. R. Civ. P. 26(b)(5)(B) and the Stipulated Protective Order ¶ 11 (ECF 139). Plaintiffs' approach to file their discovery dispute with the Court first and ask questions later contradicts the intent behind the Standing Order for Discovery ¶ 18. That Plaintiffs felt an "urgent need to resolve the issue" does not preclude them from following Court rules. ECF 180, p. 1-2 n. 5.

[2] *See* USTMA "Our Members" webpage available at https://www.ustires.org/about-us/our-members.



December 3, 2024
Page Two

defense group to "track legal developments with respect to 6PPD-q, and plan[ ] litigation and defense strategy for the anticipated actions that were expected to ensue" almost immediately after publication of the *Tian* study on December 3, 2020.[3] *Id.* ¶ 11. USTMA formed the group because the *Tian* study "would likely provoke significant scientific research and inquiry and potential government regulation, including possible regulatory enforcement action by EPA and /or other regulatory agencies, and *raised the very significant possibility of litigation* seeking to address potential impacts of 6PPD-q." *Id.* ¶ 9 (emphasis added), see also ¶¶ 11, 14.[4]

**Documents MNAI-IFR-PCFFA-2637, 2688, 2691, 2693, 3837, and 3858[5] reflect the protected work product of ToxStrategies**, which was retained by USTMA counsel to "assist counsel with evaluating how this research [scientific literature concerning 6PPD-Q] could bear on and help guide the legal strategies being evaluated by USTMA and members." *Id.* ¶ 14. The work "was confidential, done at the direction of counsel. . ." and would not have been created in substantially similar form but for the prospect of litigation. *Id.* ¶¶ 11, 13. The Ninth Circuit confirms that environment reports like these are privileged work product. *See In re Grand Jury Subp*. (*Mark Torf/Torf Envtl. Mgt*.), 357 F.3d 900, 908-909 (9th Cir. 2004) (reversing district court's denial of motion to quash and order of civil contempt finding environmental consultant reports as privileged). Similar to the environmental documents at issue in *Mark Torf,* USTMA "needed the help of an investigator" to provide "informed legal advice . . . and to prepare for anticipated litigation," and the ToxStrategies work product were, *at a minimum*, "at least in part" created to help USTMA counsel advise and defend its members in anticipated litigation. *Ibid.*

Plaintiffs argue without evidence that USTMA "had myriad business reasons to hire consultants," flatly ignoring relevant portions of Ms. Norberg's Declaration and the Ninth Circuit authority stated above. ECF 180, p. 3:15-16. Ms. Norberg confirms that "USTMA counsel quickly concluded that the [*Tian*] study would likely provoke . . . possibly regulatory enforcement action by EPA and/or regulatory agencies, and raised the very significant possibility of litigation seeking to address potential impacts of 6PPD-q." ECF 179-2 ¶ 9. Plaintiffs' own cited authority *supports* application of the privilege for documents that may have a dual purpose. *Callwave Commun., LLC v. Wavemarket, Inc.* No. C 14-80112 JSW (LB), 2015 WL 831539, at *4 (N.D. Cal. Feb. 23, 2015) (finding work product and common interest doctrines protect dual-purpose business documents). Any dual purpose for these documents would necessarily be "grounded in the same set of facts that created the anticipation of litigation," the publication of the *Tian* study, which is the same study provoking Plaintiffs' present litigation. *Mark Torf, supra,* 357 F.3d at 909; *see e.g.,* ECF 19 (Amended Complaint) ¶ 83. Moreover, these environmental reports are wholly unlike documents with an independent purpose that "is truly separable from the anticipation of litigation," like tax documents, and therefore appear in a standard form requested by USTMA counsel to inform technical issues related to the prospect of litigation. *Ibid.* citing *United States v. Frederick*, 182 F.3d 496, 501–02 (7th Cir.1999); *accord United States v. Richey,* 632 F.3d 559, 568 (9th Cir. 2011) (appraisal report "required by law" to be procured for a federal tax return). Ms. Norberg confirms that USTMA secured these consulting reports given the threat of anticipated prospective litigation following the *Tian* study and had an expectation of confidentiality, and therefore, the privilege should be maintained. ECF 179-2 ¶¶ 9-14.

**Documents 3849 and 3858 reflect narrowly redacted attorney-client communication from USTMA counsel Sarah Amick to the USTMA Tire Materials Committee,** which includes MNAI and other defendants in this litigation. The small redactions reflect the legal strategy and identify the ToxStrategies protected work product. ECF 179-2 ¶¶ 11, 13 (Ms. Amick communicated confidential legal advice to USTMA members); ECF 179-1, Ex. 2. Plaintiffs' unsupported assertion that the emails do not seek or transmit legal advice directly contradicts Ms. Norberg's Declaration and the documents themselves, which demonstrate they are from counsel to the association members with the only redactions made to selectively

---

[3] Zhenyu Tian, et al, *A ubiquitous tire rubber–derived chemical induces acute mortality in coho salmon* (Dec. 3, 2020) available at https://www.science.org/doi/10.1126/science.abd6951.

[4] Further legal basis is explained in MNAI's response to Plaintiffs' Motion to Seal. *See* ECF 179 (MNAI's Response to Seal Motion) p. 2:23 to 3:19.

[5] Document 3858 is from USTMA counsel discussing the work product of ToxStrategies and is therefore also an attorney-client communication discussed below.



remove the specific legal advice and leave the non-legal advice. ECF 179-1, Ex. 2. In the context of a trade association, "courts have held that where the communications related to a legal matter and were made with an expectation of confidentiality, they did not effect a waiver of any privilege or protection" constituting protected communications under a common interest doctrine. *Diva Limousine, Ltd. v. Uber Techs., Inc.*, No. 18-CV-05546-EMC, 2019 WL 144589, at *8 (N.D. Cal. Jan. 9, 2019) (quotation omitted) (prior counsel to a trade association disqualified from later representing an adverse party in litigation against association member under the common interest doctrine, as a material part of the Court's inquiry).

Plaintiffs erroneously rely on *United States v. Richey* to argue no privilege applies because the documents pre-date Plaintiffs' August 15, 2023 Notice of Intent to Sue. ECF 175 p. 2 citing 632 F.3d 559, 567 (9th Cir. 2011); *see also* ECF 180 p. 5:1-3. Nothing in *Richey* suggests a formal notice of litigation is needed for the protections to apply. That case only suggests that the work product procured for legal advice must be made in anticipation of litigation, which Ms. Norberg confirms. ECF 179-2 ¶¶ 11-12. Plaintiffs further mischaracterize the district court's opinion in *In re Lidoderm Antitrust Litig.* to argue that business groups like USTMA can never be afforded such protections merely because the group may also serve a commercial purpose. 14-MD-02521-WHO, 2016 WL 861019, at *5 (N.D. Cal. Mar. 7, 2016). Not so. The district court carefully considered whether the legal advice at issue there was made to protect a parties' legal interest or for commercial purposes. *Ibid.* (distinguishing the legal interest to sell and protect patents for a drug as potentially privileged, from the commercial purpose of keeping other drugs off the market as not). Nothing suggests USTMA was working in the commercial interest of its members when gathering technical information to inform on legal strategy related to newly discovered 6PPDQ that was likely to, and did, spur litigation. Further, Plaintiffs inappropriately rely on a Fifth Circuit opinion where parties *admitted* the documents in dispute "were not made in anticipation of future litigation." *In re Santa Fe Intern. Corp.*, 272 F.3d 705, 713 (5th Cir. 2001). Here, Ms. Norberg's Declaration confirms the advice was given to protect the USTMA members' legal interests, who are also defendants in this litigation, following publication of the *Tian* study that, in fact, spurred the present litigation. ECF 179-2 ¶¶ 10-15.

Last, Plaintiffs wrongly assert that because the USTMA privileged documents came from MNAI's employee custodial file, the privilege was somehow waived, misconstruing the facts and the law. ECF 180 p. 3 n. 5; *Griffith v. Davis*, 161 F.R.D. 687, 699 (C.D. Cal. 1995) ("Disclosure of work product to third persons, however, does not automatically waive the protection."). MNAI, a member of USTMA, may maintain confidential documents in the custodial files of employees that participate in meetings of the USTMA. That obvious fact does not, in any way, "substantially increase[] the opportunity for potential adversaries to obtain the information" because those employees obtained the documents in their capacity as the representative for the USTMA member. *Ibid.* (quotation omitted). An MNAI employee called to attend USTMA member meetings obviously cannot waive the privilege of a common interest document by disclosing it to him or herself.

At bottom, Plaintiffs' discovery letter does not reflect MNAI's revised and substantially narrowed claw back notice or privilege log. And Plaintiffs' analysis is wrong on the facts and law. MNAI respectfully asks the Court to consider the only documents at issue, as set forth in ECF 179-1 Ex. 2. The Court should deny Plaintiffs' Discovery Challenge given the documents are appropriately designated as privileged. If the Court is inclined, MNAI is also available to further and properly brief the issue prior to decision.

Respectfully submitted,

**DLA PIPER LLP (US)**

By:   */s/ George Gigounas*
GEORGE GIGOUNAS
CAROLINE LEE
PAUL WIERENGA (*Admitted Pro Hac Vice*)
Attorneys for Defendant Michelin North America, Inc.

# EXHIBIT A



DLA Piper LLP (US)
555 Mission Street
Suite 2400
San Francisco, California 94105-2933
www.dlapiper.com

George Gigounas
george.gigounas@us.dlapiper.com
T   415.615.6005
F   415.659.7305

November 21, 2024
VIA E-MAIL: jbrimmer@earthjustice.org

Janette K. Brimmer
Senior Attorney
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA 98104

Re:   *PCFFA v. Bridgestone Americas Tire Operations LLC et al.* No. 3:23-cv-05748-JD
      Michelin North America, Inc. Production Vol. MNAI-IFR- PCFFA00000002
      REVISED Second Production and Privilege Log

Dear Counsel:

Consistent with Michelin North America, Inc. (MNAI) November 14, 2024 Revised Clawback Notice, MNAI transmits today production volumes MNAI-IFR-PCFFA00000002 – Reprod (certain revised pages from its production volume MNAI-IFR-PCFFA00000002) and MNAI-IFR-PCFFA00000003 (documents removed from the privilege log, not previously produced) and issues an amended privilege log, subject to MNAI's objections and responses to Plaintiffs' First Set of Interrogatories and Requests for Production.

The documents transmitted today reflect both the changes identified in our November 14 Revised Clawback Notice and additional changes to previously withheld documents that appeared on our October 11 privilege log, as follows:

MNAI transmits slipsheets for the following documents that were clawed back:

- MNAI-IFR-PCFFA00002637
- MNAI-IFR-PCFFA00002688
- MNAI-IFR-PCFFA00002691
- MNAI-IFR-PCFFA00002693

MNAI transmits revised pages of the following documents that reflect certain minor redactions:

- MNAI-IFR-PCFFA00003837
- MNAI-IFR-PCFFA00003849
- MNAI-IFR-PCFFA00003858
- MNAI-IFR-PCFFA00003950



November 21, 2024
Page Two

- MNAI-IFR-PCFFA00003966
- MNAI-IFR-PCFFA00003967

The following documents that were previously reflected on the privilege log are also now being transmitted and MNAI does not assert that these documents are privileged:

- MNAI-IFR-PCFFA00003951
- MNAI-IFR-PCFFA00003954
- MNAI-IFR-PCFFA00003969

The production volume will be made available via Sharefile link that you will receive via separate email. A password to access the files was provided in the email enclosing this letter.

The revised privilege log also transmitted today fully replaces the privilege log transmitted on October 11, 2024, and is designated Confidential under the Protective Order entered in this case.

Best regards,

George Gigounas

Encl: 11/21/2024 MNAI Amended Consolidated Privilege Log

cc: Aurora Janke ajanke@earthjustice.org;
Elizabeth Forsyth eforsyth@earthjustice.org;
Linda Hunsinger lhunsinger@earthjustice.org;
Susan Smith SSmith@bdlaw.com;
Loren Dunn LDunn@bdlaw.com;
Gwen Keyes Gwen.KeyesFleming@us.dlapiper.com
Adam Baas Adam.Baas@us.dlapiper.com;
Elizabeth O'Neill Elizabeth.ONeill@wbd-us.com;
Michael Murphy MMurphy@gibsondunn.com
David Fotouhi DFotouhi@gibsondunn.com
Rafe Peterson rafe.petersen@hklaw.com