

Susan E Smith
456 Montgomery Street, Suite 1800
San Francisco, CA 94104-1251
+1.415.262.4023
SSmith@bdlaw.com

December 27, 2024

*Via ECF*

**Re:    Discovery Dispute in *Institute for Fisheries Resources, et al. v. Bridgestone Tire Operations, LLC, et al.*, 23-cv-05748-JD Re Defendants' Responses to Plaintiffs' Requests for Production Nos. 12 and 17-22 (Dkt. 181)**

To the Hon. James Donato:

This letter responds to Plaintiffs' November 26, 2024 discovery dispute letter concerning Requests for Production Nos. 12 and 17-22, in accordance with this Court's December 6, 2024 Order.

Plaintiffs' Endagered Species Act (ESA) Section 9 claim requires proof that the Defendants' inclusion of 6PPD in tires "takes" listed salmonids.  The First Amended Complaint (FAC) focuses exclusively on 6PPD-q, a transformation byproduct of 6PPD, as the causes of the alleged "take".  (ECF 19 at ¶¶ 5, 22).  Plaintiffs' Requests for Production ("RFPs") 12 and 17–22 not only renege on months' long negotiations regarding the proper scope of discovery but also seek to impose an obligation on Defendants to search for and produce a plethora of documents entirely untethered to this claim.

*First*, Plaintiffs' RFPs 12 and 17–22 circumvent the good faith negotiations of the parties.  Plaintiffs served their first set of discovery requests on April 25, including RFP 5, which sought all studies referring or relating to tire leachate, 6PPD, 6PPD-Q, and/or salmonid mortality or sub-lethal salmonid impacts.  Defendants objected that this RFP, as well as several other requests, was overly broad, unduly burdensome, and sought irrelevant information due to the absence of a nexus between 1) studies regarding tire leachate or regarding salmonid impacts and 2) 6PPD, 6PPD-q, and the potential impact thereof on salmonids.  After months of effort to resolve this dispute, Plaintiffs agreed to accept as responsive to RFP 5 studies on the mortality or sub-lethal impacts to salmonids caused by 6PPD or 6PPD-Q.  We estimate that tens of thousands of documents were subsequently collected and reviewed.[1]  To date, Defendants have produced approximately 12, 474 documents (totaling 139,253 pages).

---

[1] Defendant Michelin North America represents that it has substantially completed its production under Plaintiffs' original requests for production and will be substantially complete with its production under the supplemental requests soon after January 1, 2025, subject to the pending discovery disputes.



Now, Plaintiffs' RFP 12 seeks documents related to communications about research or studies performed by or on behalf of USTMA "regarding whole tire and/or tire component(s) toxicity testing, studies, research, or proposed testing, studies, or research." RFPs 17-22, seek documents referring or relating to communications with and research conducted by three researchers that mention 6PPD, 6PPD-Q, 6PPD quinone *or any* of the following terms "tire wear particles, tire road wear particles, tire wear emissions, tire leachate, tire leachate toxicity…salmonids, coho, chinook, steelhead, mortality syndrome, or urban runoff mortality syndrome."[2] In sum, Plaintiffs now seek studies and research that not only go beyond the agreed-to scope of RFP 5 but also far beyond the original, objectionable scope thereof. It would be unreasonable and unfair for the Court to order the Defendants to re-do the ESI collection and document review at this late date, considering Plaintiffs' prior assent to the discovery limits and the lack of justification, as discussed below. The Court has an obligation to prevent unreasonable, unnecessary and wasteful discovery. *Roberts v. Clark Cnty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (observing that the amendments to Fed. R. Civ. P. 26(b)(1) "emphasize the" need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'").

*Second,* RFPs 12 and 17-22 seek clearly irrelevant information. As noted above, Plaintiffs' claim hinges on 1) the alleged addition of **6PPD** to Defendants' tires; 2) the alleged shedding **of 6PPD-q** from tires onto hard surfaces; 3) the alleged transportation **of 6PPD-q** into aquatic habitats; and 4) the alleged impacts **of 6PPD-q on listed salmonids**. *See, e.g.*, FAC ¶ 96. If 6PPD-q is not shed from tires, Plaintiffs have no claim. If 6PPD-q is not transported to aquatic environments, Plaintiffs have no claim. If 6PPD-q does not impact listed salmonids, Plaintiffs have no claim. Documents regarding—or even merely mentioning—tire toxicity, tire wear particles, tire road wear particles, tire wear emissions, tire leachate, tire leachate toxicity, salmonids, coho, chinook, steelhead, mortality syndrome, or urban runoff mortality syndrome, with *no* connection to 6PPD or 6PPD-q and *no* connection to the impact thereof on salmonids will be of no consequence in determining this action.

Plaintiffs are now trying to get around this obvious overreach—and repudiate the scope limitations they accepted—by manufacturing a "foreseeability" argument. The question in an ESA Section 9 case is whether it is foreseeable that the actions complained will likely result in an unauthorized "take". Proximate cause requires the "causal factors and the result to be reasonably foreseeable." *Aransas Project v. Shaw*, 756 F.3d 801, 820 (5th Cir. 2014) (citing *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 697 n.9 (1995)); see also *Ca. River Watch v. Cnty. of Sonoma*, 55 F.Supp.3d 1204, 1212 (N.D. Cal. 2014) (citing *Aransas*, 756 F.3d at 820–21). The only causal factor at issue here is the inclusion of 6PPD in tires and the only alleged

---

[2] Plaintiffs claim that the information sought is "not privileged". This dispute is not ripe; however, it is Defendants' position that much of the work product of USTMA's consultants is, in fact, privileged because it was undertaken in anticipation of expected or threatened regulation, at the request and direction of USTMA counsel *See* Dkt. 178, 179 and 184.



result is the "take" of certain salmonids due to exposure to 6PPD-q.  *See, e.g.,* FAC ¶¶ 96, 107.  What was known about tire wear particles, emissions, leachate, or salmonids in 2014, or 2018, is not relevant to the foreseeability analysis because the mechanism of the claimed injury, 6PPD-q, was not known—*by anyone*—to exist until late 2020.  After that, and particularly with respect to any future take that may allegedly occur, relevant documents are those that at least mention 6PPD or 6PPD-q.  *See, e.g.*, FAC ¶ 5 (alleging the "foreseeable discharge of 6PPD-q from tires into waterways harms, harasses, wounds and kills" the salmonid species at issue).  And only future takes are relevant.  Unlike a toxic tort case, where past knowledge is at issue, the inquiry in an ESA Section 9 case is a purely forward-looking analysis.  "[W]hat we require is a *definitive threat of future harm to protected species."  National Wildlife Fed'n v. Burlington Northern R.R.*, 23 F.3d 1508, 1512 (9th Cir. 1994).

*Third,* RFP Nos. 12 and 17-22, which seek all documents referring to or relating to a broad range of terms, are facially overbroad and disproportionate.  *Roberts, supra*, 312 F.R.D. at 603; *see also Sanchez Ritchie v. Energy,* No. 10CV1513-CAB(KSC), 2015 WL 12914435, at *2 (S.D. Cal. Mar. 30, 2015) (internal citation omitted).  Even if Plaintiffs' RFPs 12 and 17–22 did not exceed the bounds of relevance, the information Plaintiffs claim to be looking for has already been established through testimony of 30(b)(6) witnesses that USTMA started to look into the potential for tire wear particles and tire leachate to reach the environment before 6PPD-q was identified, and that 6PPD and 6PPD-q may be found in tire wear particles, based on post-2020 research and studies.

*Fourth,* RFPs 12 and 17-22 are duplicative and hence unduly burdensome.  Interrogatory No. 14 asks whether Defendants or their agents or employees have conducted research regarding "tire leachate toxicity, 6PPD, or 6PPD-q"; Interrogatory No. 20 asks about the companies' efforts to monitor tire wear, breakdown, or degradation; and Interrogatory No. 21 asks about the monitoring of the fate and/or transport of chemicals or pieces or particles from tires, conducted by the companies or anyone in their employ or at their direction.  RFPs 3, 4 and 5 effectively seek all documents regarding, referring to, or related to any such research or monitoring.[3]  Defendants responded to these requests, subject to objections, and document productions are ongoing.

In sum, Defendants respectfully request that this Court deny Plaintiffs the relief sought and further request full briefing and argument on this matter because RFPs 12 and 17–22 are an attempt to side-step the parties' past agreements, seek information not relevant to Plaintiffs' claims, and are facially overbroad and unduly burdensome.

---

[3] In response to RFP 5, Defendants agreed to produce non-privileged/protected studies within their possession, custody, or control, on the mortality or sub-lethal impacts to salmonids caused by 6PPD or 6PPD-Q.



Respectfully Submitted,

Susan E. Smith, (CA Bar No. 329539)
ssmith@bdlaw.com
456 Montgomery Street, Ste. 1800
San Francisco, CA  94104
P: 415-262-4023

Loren R. Dunn, *(pro hac vice)*
ldunn@bdlaw.com
600 University Street, Ste. 1601
Seattle, WA  98101
P: 206-315-4810

W. Parker Moore *(pro hac vice)*
pmoore@bdlaw.com
1900 N. Street NW, Ste. 100
Washington, D.C.  20036
P: 202-789-6028

*Counsel for Defendants Bridgestone Americas Tire Operations, LLC; Continental Tire the Americas, LLC; GITI Tire (USA), Ltd.; Nokian Tyres Inc.; Nokian Tyres U.S. Operations, LLC; Sumitomo Rubber North America, Inc.; Sumitomo Rubber USA, LLC; Toyo Tire Holdings of Americas Inc.; and Yokohama Tire Corporation.*