

February 14, 2025

**VIA ECF**

The Hon. James Donato
San Francisco Courthouse
Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *IFR et al. v. Bridgestone Americas et al.*, Case No. 3:23-cv-05748
            Discovery Dispute Regarding Plaintiffs' Responses to Special
            Interrogatories

To the Hon. James Donato:

      Defendant Pirelli Tire LLC ("Pirelli Tire") writes to request an order compelling Plaintiffs Pacific Coast Federation of Fishermen's Associations ("PCFFA") and Institute for Fisheries Resources ("IFR") (collectively, "Plaintiffs") to provide further responses to Pirelli Tire's Special Interrogatory Nos. 1–7.[1] Plaintiffs bring a claim under the Endangered Species Act ("ESA"), alleging that defendant tire manufacturers' inclusion of 6PPD in tires contributes to the formation of 6PPD-Q, which allegedly flows into bodies of water, causing a "take" of several species of fish. Dkt. 19, First Amend. Compl. ¶¶ 1–7. Plaintiffs served deficient interrogatory responses that fail to provide basic information about the source, location, timing, and migration of 6PPD and 6PPD-Q and the impact of these compounds on fish populations. This is not just relevant information; the discovery goes to the central issues in this case. Plaintiffs also failed to identify potential other sources of 6PPD-Q that they admit they have. The failure to provide this information inhibits Defendants from preparing their case. Pirelli Tire certifies that its counsel met and conferred with counsel for Plaintiffs pursuant to the Court's Standing Order for Discovery in Civil Cases and the Local Rules.

**I.    Plaintiffs' Responses To Interrogatories 1–6 Are Deficient And Evasive.**

      Interrogatory nos. 1–6 request that Plaintiff identify the waterways where Plaintiffs contend there was a take, (rog. no. 1), when the take occurred (rog. no. 2), the roadways where the 6PPD-Q originated (rog. no. 3), how 6PPD-Q migrated from those specific roadways to the

---

[1] PCFFA's responses to Interrogatory Nos. 1–7 are attached hereto as Exhibit A. IFR's responses to Interrogatory Nos. 1–7 are attached hereto as Exhibit B. Because the responses from PCFFA and IFR are materially identical, they are referred to collectively throughout.

Hogan Lovells US LLP is a limited liability partnership registered in the state of Delaware. "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in: Alicante Amsterdam Baltimore Beijing Berlin Birmingham Boston Brussels Colorado Springs Denver Dubai Dublin Dusseldorf Frankfurt Hamburg Hanoi Ho Chi Minh City Hong Kong Houston Johannesburg London Los Angeles Luxembourg Madrid Mexico City Miami Milan Minneapolis Monterrey Munich New York Northern Virginia Paris Philadelphia Riyadh Rome San Francisco São Paulo Shanghai Silicon Valley Singapore Sydney Tokyo Warsaw Washington, D.C. Associated Offices: Budapest Jakarta Shanghai FTZ. Business Service Centers: Johannesburg Louisville. For more information see www.hoganlovells.com

affected waterways (rog. no. 4), how the take occurred—whether by death, injury, harassment or habitat degradation (rog. no. 5), and the volume of the fish population affected (rog. no. 6). *See* Ex. A; Ex. B.

Plaintiff's responses to these interrogatories are deficient. For example, rather than identify the actual waterways where Plaintiffs contend a take occurred, Plaintiffs state that they "have not conducted a survey of Waterways to identify each Waterway" and that "critical habitat have been defined for each of the Subject populations which critical habitat identifies waterways. *See* Critical Habitat and Listing decisions and recovery plans and status reports for Subject Populations." Ex. A, Resp. to Rog. No. 1, Ex. B, Resp. to Rog No. 1. But the response nowhere lists a single waterway where Plaintiffs contend a take actually occurred, and the Plaintiffs' vague citation to "Critical Habitat and Listing decisions" is insufficient because an interrogatory must be complete in itself. Rutter Group, Prac. Guide Fed. Civ. Pro. Before Trial Ch. 11 § 11:17331.  Plaintiffs' responses should be supplemented.

Plaintiffs' other discovery responses are similarly evasive:

- Plaintiffs do not identify when any take occurred, except to say "every month in every year since Subject Populations were listed under the Endangered Species Act." Ex. A, Resp. to Rog. No. 2; Ex. B, Resp. to Rog No. 2.

- Plaintiffs do not identify the roadways from which the 6PPD-Q migrated, except to evasively say "every paved street, road, highway, parking lot or alley on which vehicles using tires with 6PPD in them are driven." Ex. A, Resp. to Rog. No. 3; Ex. B, Resp. to Rog No. 3.

- Plaintiffs do not identify how 6PPD-Q migrated from each roadway to a waterway, except to generically say that when "precipitation falls on paved surfaces, it runs off into ditches and storm sewers that discharge to waterways or directly to waterways." Ex. A, Resp. to Rog. No. 4; Ex. B, Resp. to Rog No. 4.

- Instead of identifying whether the take that occurred in each waterway is based on death, injury, harassment or habitat degradation, Plaintiff responds that their allegations are based on "death, sub-lethal effects, harassment, and/or degradation . . . depending on whether the species is Coho, Chinook or steelhead" and that the science "is developing." Ex. A, Resp. to Rog. No. 5; Ex. B, Resp. to Rog No. 5.

- Instead of identifying the volume of fish affected by a take, Plaintiffs state that "significantly more than one of the Subject Populations has died and/or been subjected to sub-lethal effects, harassment and/or degradation of habitat." Ex. A, Resp. to Rog. No. 6; Ex. B, Resp. to Rog No. 6.

This information sought by these interrogatories is critical to the preparation of Defendants' cases.  To defend themselves, Defendants are entitled to basic information about where, when, and how the alleged take occurred, which among other issues goes to whether any activity by Defendants "proximately and foreseeably caus[ed] actual, as opposed to hypothetical or speculative, death or injury to identifiable protected animals." *Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144, 1158 (9th Cir. 2024) (citations omitted).

Plaintiffs' evasive non-answers are premised on meritless objections. Plaintiffs primarily rely on *Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144 (9th Cir. 2024) to argue that the "law does not require this level of detail for a claim under Section 9 of the Endangered Species Act." *See e.g.,* Ex. A, Resp. to Rog. No. 1, Ex. B, Resp. to Rog No. 1. *Cascadia* says no such thing. That case reviewed a district court's permanent injunction that ordered lumber companies to stop clearing forests that served as a breeding ground for endangered marbled murrelets. *Cascadia*, 105 F.4th at 1156. Under the court's deferential "clear error" review of the facts, it found that the evidence was sufficient to establish injury and proximate cause. *Id.,* at 1156–1159. The case in no way limits discovery in ESA claims, nor does it stand for the proposition that parties are prohibited from discovery beyond some hypothetical threshold "level of detail." It merely found certain evidence was sufficient under a deferential standard of review to affirm a permanent injunction. In fact, *Cascadia* reinforces that Plaintiffs must provide specific information about where, when, and how the alleged take case occurred. *Id.*, at 1157 (identifying the specific tract in which the murrelets nested).

Plaintiffs' other objections should also be rejected. The interrogatories of course seek relevant information. It is difficult to imagine what could be more relevant than when, where, and how a take occurred. Plaintiffs have not justified their burden objections with any specific descriptions of the burdens or costs of obtaining the information; nor could they, given the scope of their claims. Nor do the interrogatories prematurely seek expert opinions. The interrogatories seek information that is currently in Plaintiffs' possession that form the basis for their claims. The fact that an expert may opine on a topic later in the litigation does not *per se* absolve that party from disclosing information currently in its possession.

## II.     Plaintiffs' Responses To Interrogatory No. 7 Are Deficient And Evasive.

Interrogatory No. 7 requests that for each waterway where Plaintiff contends a take occurred, that Plaintiffs identify sources of 6PPD or 6PPD-Q in the waterway other than tires manufactured by Defendants. Ex. A, Rog. No. 7, Ex. B, Rog No. 7. Plaintiffs respond that they know "that other sources generally exist but none of those other sources are responsible for the take at issue in this case." This is an evasive answer. The interrogatory requests that Plaintiffs identify the other sources it is aware of. Plaintiffs admit that they are aware of other sources, but fail to identify them. Plaintiffs also improperly attempt to incorporate other documents into its interrogatory response by directing Pirelli Tire to Plaintiffs' request for admission responses. The Court should order Plaintiffs to supplement their interrogatory responses.

*          *          *

For the foregoing reasons, Pirelli Tire respectfully requests that this Court order Plaintiffs to supplement their responses to Pirelli Tire's Interrogatory Nos. 1–7.

Sincerely,

*[signature]*

Joseph R. O'Connor
*Attorney for Defendant*
*Pirelli Tire LLC*

# Exhibit A

| 1 | ELIZABETH B. FORSYTH (CA Bar No. 288311) |
| 2 | eforsyth@earthjustice.org |
| | JANETTE K. BRIMMER (*Pro Hac Vice*) |
| 3 | jbrimmer@earthjustice.org |
| | NOORULANNE JAN (*Pro Hac Vice*) |
| 4 | njan@earthjustice.org |
| 5 | AURORA JANKE (*Pro Hac Vice*) |
| | ajanke@earthjustice.org |
| 6 | Earthjustice |
| | 810 3rd Ave #610 |
| 7 | Seattle, WA 98104 |
| | Tel: (206) 343-7340 |
| 8 | |
| 9 | GREGORY C. LOARIE (CA Bar No. 215859) |
| | gloarie@earthjustice.org |
| 10 | SCOTT W. STERN (CA Bar No. 336427) |
| | sstern@earthjustice.org |
| 11 | Earthjustice |
| 12 | 50 California Street #500 |
| | San Francisco, CA 94111 |
| 13 | Tel: (415) 217-2000 |
| 14 | *Counsel for Plaintiffs Institute for Fisheries Resources & Pacific Coast Federation of Fishermen's Associations* |

ELIZABETH B. FORSYTH (CA Bar No. 288311)
eforsyth@earthjustice.org
JANETTE K. BRIMMER (*Pro Hac Vice*)
jbrimmer@earthjustice.org
NOORULANNE JAN (*Pro Hac Vice*)
njan@earthjustice.org
AURORA JANKE (*Pro Hac Vice*)
ajanke@earthjustice.org
Earthjustice
810 3rd Ave #610
Seattle, WA 98104
Tel: (206) 343-7340

GREGORY C. LOARIE (CA Bar No. 215859)
gloarie@earthjustice.org
SCOTT W. STERN (CA Bar No. 336427)
sstern@earthjustice.org
Earthjustice
50 California Street #500
San Francisco, CA 94111
Tel: (415) 217-2000

*Counsel for Plaintiffs Institute for Fisheries Resources
& Pacific Coast Federation of Fishermen's Associations*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INSTITUTE FOR FISHERIES RESOURCES; and PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, <br><br> Plaintiffs, <br><br> v. <br><br> BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC; CONTINENTAL TIRE THE AMERICAS, LLC; GITI TIRE (USA) Ltd.; THE GOODYEAR TIRE & RUBBER COMPANY, individually and as successor in interest to COOPER TIRE & RUBBER COMPANY; HANKOOK TIRE AMERICA Corp.; KUMHO TIRE U.S.A., Inc.; MICHELIN NORTH AMERICA, Inc.; NOKIAN TYRES Inc.; NOKIAN TYRES U.S. OPERATIONS LLC; PIRELLI TIRE LLC; SUMITOMO RUBBER NORTH AMERICA, Inc.; SUMITOMO RUBBER USA, LLC; TOYO TIRE HOLDINGS OF AMERICAS Inc.; and YOKOHAMA TIRE Corporation, <br><br> Defendants. | Case No. 23-cv-05748-JD <br><br> **PLAINTIFF PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS' RESPONSES TO DEFENDANT PIRELLI TIRE LLC'S SPECIAL INTERROGATORIES (SET ONE)** |

regarding information that individual or supporting members may possess in their individual capacity, or when acting in their individual or representative capacity for other parties and entities, and thus which does not apply to PCFFA. PCFFA further objects that this definition is overbroad and calls for responses regarding information outside of PCFFA's possession, custody, or control to the extent it calls for information held by its Member Associations, which are each a distinct legal entity with its own leadership and structure, or by their individual/supporting members. PCFFA's responses pertain only to PCFFA's knowledge of the facts and circumstances at issue in this case.

8. PCFFA objects to instruction number 4 to the extent that it is inconsistent with the ESI Stipulation and Order in this case and to the extent that Defendants have failed to provide privilege logs for any of their responses to date.

## SPECIAL INTERROGATORIES

**INTERROGATORY NO. 1:**

For each Subject Population, Identify each Waterway allegedly used by the Subject Population for migration, spawning or habitat in which You contend a Take of the Subject Population has occurred for which You seek relief in the Amended Complaint.

**RESPONSE:** PCFFA objects to Interrogatory No. 1 as overbroad and burdensome and seeks premature disclosure of expert information. Interrogatory No. 1 is also not likely to lead to the discovery of admissible evidence because the law does not require this level of detail to prevail on a claim under Section 9 of the Endangered Species Act. *See, Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144 (9th Cir. 2024). Subject to and without waiving its objections, PCFFA responds that is has not conducted any survey of Waterways to identify each Waterway allegedly used by the Subject Population for migration, spawning or habitat in which PCFFA contends a take of the Subject Population has occurred for which PCFFA seeks relief in the Amended Complaint and that critical habitat has been defined for each of the Subject populations which critical habitat identifies waterways. *See* Critical Habitat and Listing decisions and recovery plans and status reports for Subject Populations. Discovery is continuing and PCFFA reserves the right

to more specifically identify additional waterways in the future. PCFFA will supplement this response in accordance with the prehearing order and applicable case law and civil rules.

**INTERROGATORY NO. 2:**

For each Waterway identified in response to Interrogatory No. 1, Identify each month and year during which You contend that a Take of the Subject Population has occurred for which You seek relief in the Amended Complaint.

**RESPONSE:** PCFFA objects to Interrogatory No. 2 as vague, overbroad, burdensome, not likely to lead to the discovery of admissible evidence because that level of detail is not necessary to demonstrate a section 9 claim, and it potentially seeks premature disclosure of expert information. *See, Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144 (9th Cir. 2024). Subject to and without waiving its objections, PCFFA responds every month in every year since the Subject Populations were listed under the Endangered Species Act. Discovery is continuing and PCFFA will supplement this response in accordance with the prehearing order and applicable case law and civil rules.

**INTERROGATORY NO. 3:**

For each Waterway and time period identified in response to Interrogatory Nos. 1 and 2, Identify each street, road, highway, parking lot, alley or other hard surface from which You allege 6PPD or 6PPD-q originated.

**RESPONSE:** PCFFA objects to Interrogatory No. 3 as vague, overbroad, burdensome and seeks premature disclosure of expert information. Interrogatory No. 3 is also not likely to lead to the discovery of admissible evidence because the law does not require this level of detail for a claim under Section 9 of the Endangered Species Act. Subject to and without waiving its objections, PCFFA responds that every paved street, road, highway, parking lot or alley on which vehicles using tires with 6PPD in them are driven, is a source of 6PPD and/or 6PPD-Q within the watersheds of identified critical habitat fresh-water waterways. Discovery is continuing and

PCFFA will supplement this response in accordance with the prehearing order and applicable case law and civil rules.

**INTERROGATORY NO. 4:**

For each Waterway, time period, and hard surface identified in response to Interrogatory Nos. 1, 2, and 3, Identify the specific routes, processes, or mechanisms by which Stormwater Runoff, Runoff, or other water containing 6PPD or 6PPD-Q was transported from the applicable street, road, highway, parking lot, alley or other hard surface to the Waterway.

**RESPONSE:** PCFFA objects to Interrogatory No. 4 as overbroad and burdensome and seeks premature disclosure of expert information. Interrogatory No. 4 is also not likely to lead to the discovery of admissible evidence because the law does not require this level of detail for a claim under Section 9 of the Endangered Species Act. *See Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144 (9th Cir. 2024). Subject to and without waiving its objections, PCFFA responds that precipitation falls on paved surfaces, it runs off into ditches and storm sewers that discharge to waterways or directly to waterways. Discovery is continuing and PCFFA will supplement this response in accordance with the prehearing order and applicable case law and civil rules.

**INTERROGATORY NO. 5:**

For each Waterway and time period identified in response to Interrogatory Nos. 1 and 2, specify whether your allegations of Take are based upon death, sub-lethal effects, harassment, and/or degradation of habitat of the Subject Population.

**RESPONSE:** PCFFA objects that Interrogatory no. 5 seeks premature disclosure of expert information. Subject to and without waiving its objections, PCFFA responds that its allegations of take under Section 9 of the Endangered Species Act are based upon death, sub-lethal effects, harassment, and/or degradation of habitat of the Subject Populations, depending on whether the species is Coho, Chinook or steelhead and that the science of 6PPD/6PPD-Q and aquatic environments and salmonids is developing. Discovery is continuing and PCFFA will supplement this response in accordance with the prehearing order and applicable case law and civil rules.

**INTERROGATORY NO. 6:**

For each Waterway and time period identified in response to Interrogatory Nos. 1 and 2, Identify the number, volume, or percentage of each Subject Population for which the Take resulted in death, sub-lethal effects, harassment, and/or degradation of habitat, as applicable.

**RESPONSE:** PCFFA objects to Interrogatory No. 6 as vague, overbroad, burdensome, and seeks premature disclosure of expert information. Interrogatory No. 6 is also not likely to lead to the discovery of admissible evidence because there is no threshold number of members of the Subject Population, other than one, for take to occur under Section 9 of the Endangered Species Act. The law thus does not require this level of detail for a claim under Section 9 of the Endangered Species Act. PCFFA further objects to Interrogatory No. 6 because it misstates the law in that take does not "result in death, sub-lethal effects, harassment, and/or degradation of habitat." Rather, death, sub-lethal effects, harassment, and/or degradation of habitat can each result in take under Section 9 of the Endangered Species Act. Subject to and without waiving its objections, PCFFA responds that Coho salmon, steelhead trout, and Chinook salmon exposed to toxic concentrations of 6PPD-Q often die within hours of exposure and/or are harmed by 6PPD-Q's sublethal effects and 6PPD-Q is found in toxic concentrations in watersheds across the West Coast. The studies identified in response to interrogatories above suggest that all Coho salmon that come into contact with 6PPD-Q die. Accordingly, significantly more than one of the Subject Population has died and/or been subjected to sub-lethal effects, harassment and/or degradation of habitat. Discovery is continuing and PCFFA will supplement this response in accordance with the prehearing order and applicable case law and civil rules.

**INTERROGATORY NO. 7:**

For each Waterway and time period identified in response to Interrogatory Nos. 1 and 2, Identify sources of 6PPD or 6PPD-Q other than tires manufactured by Defendants.

**RESPONSE:** PCFFA objects to Interrogatory No. 7 as vague, burdensome, and not likely to lead to the discovery of admissible evidence, because the presence or absence of other sources of take under the Endangered Species Act is not determinative or relevant to whether take has

occurred in the instances alleged in the Amended Complaint. Subject to and without waiving its objections, PCFFA responds that it knows that other sources of 6PPD generally exist but none of those other sources are responsible for the take at issue in this case. *See* also PCFFA's response to Requests for Admission in this case. Discovery is continuing and PCFFA will supplement this response in accordance with the prehearing order and applicable case law and civil rules.

**INTERROGATORY NO. 8:**

With respect to each Subject Habitat from which You allege a Take of Subject Population has occurred, as alleged in the Amended Complaint, identify the steps You contend would be sufficient to minimize and mitigate the impacts of such Takes.

**RESPONSE:** PCFFA objects to Interrogatory No. 8 as burdensome and prematurely seeks disclosure of expert information. Interrogatory No. 8 is also not likely to lead to the discovery of admissible evidence because under the law PCFFA has no obligation to identify minimization and mitigation to allege and prove take under Section 9 of the Endangered Species Act. Subject to and without waiving its objections, PCFFA responds that elimination of 6PPD (and similar chemicals) from tires combined with capture and elimination of 6PPD and 6PPD-Q in water that runs off of paved surfaces might begin to minimize and mitigate the impacts of 6PPD and 6PPD-Q in the environment, but PCFFA has not determined whether this is sufficient nor what other actions may be necessary under the law or available. Also subject to and without waiving its objections, PCFFA directs defendant to: Jenifer K. McIntyre, et al., *Soil Bioretention Protects Juvenile Salmon and their Prey from the Toxic Effects of Stormwater Runoff,* Chemosphere (2015) (provided in initial disclosures); Mitchell et al. *Mitigating Tire Wear Particles in Stormwater with Permeable Pavements,* Science of the Total Environment (2023) (provided in initial disclosures); Ximin Hu et al., Stormwater Management Conference slideshow (2023) (provided in initial disclosures); Timothy F. M. Rodgers et al., *Bioretention Design Modifications Increase Simulated Capture of Hydrophobic and Hydrophilic Trace Organic Compounds,* Environmental Science and Technology 2024) (provided in initial disclosures); King County, prepared by Jennifer White, Jenée Colton, Fran Sweeney, Water and Land Resources Division; and Curtis Hinman, Curtis

# Exhibit B

| 1 | ELIZABETH B. FORSYTH (CA Bar No. 288311)
| | eforsyth@earthjustice.org
| 2 | JANETTE K. BRIMMER (*Pro Hac Vice*)
| 3 | jbrimmer@earthjustice.org
| | NOORULANNE JAN (*Pro Hac Vice*)
| 4 | njan@earthjustice.org
| | AURORA JANKE (*Pro Hac Vice)*
| 5 | ajanke@earthjustice.org
| 6 | Earthjustice
| | 810 3rd Ave #610
| 7 | Seattle, WA 98104
| | Tel: (206) 343-7340
| 8 |
| 9 | GREGORY C. LOARIE (CA Bar No. 215859)
| | gloarie@earthjustice.org
| 10 | SCOTT W. STERN (CA Bar No. 336427)
| | sstern@earthjustice.org
| 11 | Earthjustice
| | 50 California Street #500
| 12 | San Francisco, CA 94111
| | Tel: (415) 217-2000
| 13 |
| 14 | *Counsel for Plaintiffs Institute for Fisheries Resources*
| | *& Pacific Coast Federation of Fishermen's Associations*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INSTITUTE FOR FISHERIES RESOURCES; and PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, <br><br> Plaintiffs, <br> v. <br><br> BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC; CONTINENTAL TIRE THE AMERICAS, LLC; GITI TIRE (USA) Ltd.; THE GOODYEAR TIRE & RUBBER COMPANY, individually and as successor in interest to COOPER TIRE & RUBBER COMPANY; HANKOOK TIRE AMERICA Corp.; KUMHO TIRE U.S.A., Inc.; MICHELIN NORTH AMERICA, Inc.; NOKIAN TYRES Inc.; NOKIAN TYRES U.S. OPERATIONS LLC; PIRELLI TIRE LLC; SUMITOMO RUBBER NORTH AMERICA, Inc.; SUMITOMO RUBBER USA, LLC; TOYO TIRE HOLDINGS OF AMERICAS Inc.; and YOKOHAMA TIRE Corporation, <br><br> Defendants. | Case No. 23-cv-05748-JD <br><br> **PLAINTIFF INSTITUTE FOR FISHERIES RESOURCES' RESPONSES TO DEFENDANT PIRELLI TIRE LLC'S SPECIAL INTERROGATORIES (SET ONE)** |

responses regarding information outside of IFR's possession, custody, or control to the extent it calls for information held by its Member Associations, which are each a distinct legal entity with its own leadership and structure, or by their individual/supporting members. IFR's responses pertain only to IFR's knowledge of the facts and circumstances at issue in this case.

8. IFR objects to instruction number 4 to the extent that it is inconsistent with the ESI Stipulation and Order in this case and to the extent that Defendants have failed to provide privilege logs for any of their responses to date.

## SPECIAL INTERROGATORIES

**INTERROGATORY NO. 1:**

For each Subject Population, Identify each Waterway allegedly used by the Subject Population for migration, spawning or habitat in which You contend a Take of the Subject Population has occurred for which You seek relief in the Amended Complaint.

**RESPONSE:** IFR objects to Interrogatory No. 1 as overbroad and burdensome and seeks premature disclosure of expert information. Interrogatory No. 1 is also not likely to lead to the discovery of admissible evidence because the law does not require this level of detail to prevail on a claim under Section 9 of the Endangered Species Act. *See, Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144 (9th Cir. 2024). Subject to and without waiving its objections, IFR responds that is has not conducted any survey of Waterways to identify each Waterway allegedly used by the Subject Population for migration, spawning or habitat in which IFR contends a take of the Subject Population has occurred for which IFR seeks relief in the Amended Complaint and that critical habitat has been defined for each of the Subject populations which critical habitat identifies waterways. *See* Critical Habitat and Listing decisions and recovery plans and status reports for Subject Populations. Discovery is continuing and IFR reserves the right to more specifically identify additional waterways in the future. IFR will supplement this response in accordance with the prehearing order and applicable case law and civil rules.

**INTERROGATORY NO. 2:**

For each Waterway identified in response to Interrogatory No. 1, Identify each month and year during which You contend that a Take of the Subject Population has occurred for which You seek relief in the Amended Complaint.

**RESPONSE:** IFR objects to Interrogatory No. 2 as vague, overbroad, burdensome, not likely to lead to the discovery of admissible evidence because that level of detail is not necessary to demonstrate a section 9 claim, and it potentially seeks premature disclosure of expert information. *See, Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144 (9th Cir. 2024). Subject to and without waiving its objections, IFR responds every month in every year since the Subject Populations were listed under the Endangered Species Act. Discovery is continuing and IFR will supplement this response in accordance with the prehearing order and applicable case law and civil rules.

**INTERROGATORY NO. 3:**

For each Waterway and time period identified in response to Interrogatory Nos. 1 and 2, Identify each street, road, highway, parking lot, alley or other hard surface from which You allege 6PPD or 6PPD-q originated.

**RESPONSE:** IFR objects to Interrogatory No. 3 as vague, overbroad, burdensome and seeks premature disclosure of expert information. Interrogatory No. 3 is also not likely to lead to the discovery of admissible evidence because the law does not require this level of detail for a claim under Section 9 of the Endangered Species Act. Subject to and without waiving its objections, IFR responds that every paved street, road, highway, parking lot or alley on which vehicles using tires with 6PPD in them are driven, is a source of 6PPD and/or 6PPD-Q within the watersheds of identified critical habitat fresh-water waterways. Discovery is continuing and IFR will supplement this response in accordance with the prehearing order and applicable case law and civil rules.

**INTERROGATORY NO. 4:**

For each Waterway, time period, and hard surface identified in response to Interrogatory Nos. 1, 2, and 3, Identify the specific routes, processes, or mechanisms by which Stormwater Runoff, Runoff, or other water containing 6PPD or 6PPD-Q was transported from the applicable street, road, highway, parking lot, alley or other hard surface to the Waterway.

**RESPONSE:** IFR objects to Interrogatory No. 4 as overbroad and burdensome and seeks premature disclosure of expert information. Interrogatory No. 4 is also not likely to lead to the discovery of admissible evidence because the law does not require this level of detail for a claim under Section 9 of the Endangered Species Act. *See Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144 (9th Cir. 2024). Subject to and without waiving its objections, IFR responds that precipitation falls on paved surfaces, it runs off into ditches and storm sewers that discharge to waterways or directly to waterways. Discovery is continuing and IFR will supplement this response in accordance with the prehearing order and applicable case law and civil rules.

**INTERROGATORY NO. 5:**

For each Waterway and time period identified in response to Interrogatory Nos. 1 and 2, specify whether your allegations of Take are based upon death, sub-lethal effects, harassment, and/or degradation of habitat of the Subject Population.

**RESPONSE:** IFR objects that Interrogatory no. 5 seeks premature disclosure of expert information. Subject to and without waiving its objections, IFR responds that its allegations of take under Section 9 of the Endangered Species Act are based upon death, sub-lethal effects, harassment, and/or degradation of habitat of the Subject Populations, depending on whether the species is Coho, Chinook or steelhead and that the science of 6PPD/6PPD-Q and aquatic environments and salmonids is developing. Discovery is continuing and IFR will supplement this response in accordance with the prehearing order and applicable case law and civil rules.

**INTERROGATORY NO. 6:**

For each Waterway and time period identified in response to Interrogatory Nos. 1 and 2, Identify the number, volume, or percentage of each Subject Population for which the Take resulted in death, sub-lethal effects, harassment, and/or degradation of habitat, as applicable.

**RESPONSE:** IFR objects to Interrogatory No. 6 as vague, overbroad, burdensome, and seeks premature disclosure of expert information. Interrogatory No. 6 is also not likely to lead to the discovery of admissible evidence because there is no threshold number of members of the Subject Population, other than one, for take to occur under Section 9 of the Endangered Species Act. The law thus does not require this level of detail for a claim under Section 9 of the Endangered Species Act. IFR further objects to Interrogatory No. 6 because it misstates the law in that take does not "result in death, sub-lethal effects, harassment, and/or degradation of habitat." Rather, death, sub-lethal effects, harassment, and/or degradation of habitat can each result in take under Section 9 of the Endangered Species Act. Subject to and without waiving its objections, IFR responds that Coho salmon, steelhead trout, and Chinook salmon exposed to toxic concentrations of 6PPD-Q often die within hours of exposure and/or are harmed by 6PPD-Q's sublethal effects and 6PPD-Q is found in toxic concentrations in watersheds across the West Coast. The studies identified in response to interrogatories above suggest that all Coho salmon that come into contact with 6PPD-Q die. Accordingly, significantly more than one of the Subject Population has died and/or been subjected to sub-lethal effects, harassment and/or degradation of habitat. Discovery is continuing and IFR will supplement this response in accordance with the prehearing order and applicable case law and civil rules.

**INTERROGATORY NO. 7:**

For each Waterway and time period identified in response to Interrogatory Nos. 1 and 2, Identify sources of 6PPD or 6PPD-Q other than tires manufactured by Defendants.

**RESPONSE:** IFR objects to Interrogatory No. 7 as vague, burdensome, and not likely to lead to the discovery of admissible evidence, because the presence or absence of other sources of take under the Endangered Species Act is not determinative or relevant to whether take has

occurred in the instances alleged in the Amended Complaint. Subject to and without waiving its objections, IFR responds that it knows that other sources of 6PPD generally exist but none of those other sources are responsible for the take at issue in this case. *See* also IFR's response to Requests for Admission in this case. Discovery is continuing and IFR will supplement this response in accordance with the prehearing order and applicable case law and civil rules.

**INTERROGATORY NO. 8:**

With respect to each Subject Habitat from which You allege a Take of Subject Population has occurred, as alleged in the Amended Complaint, identify the steps You contend would be sufficient to minimize and mitigate the impacts of such Takes.

**RESPONSE:** IFR objects to Interrogatory No. 8 as burdensome and prematurely seeks disclosure of expert information. Interrogatory No. 8 is also not likely to lead to the discovery of admissible evidence because under the law IFR has no obligation to identify minimization and mitigation to allege and prove take under Section 9 of the Endangered Species Act. Subject to and without waiving its objections, IFR responds that elimination of 6PPD (and similar chemicals) from tires combined with capture and elimination of 6PPD and 6PPD-Q in water that runs off of paved surfaces might begin to minimize and mitigate the impacts of 6PPD and 6PPD-Q in the environment, but IFR has not determined whether this is sufficient nor what other actions may be necessary under the law or available. Also subject to and without waiving its objections, IFR directs defendant to: Jenifer K. McIntyre, et al., *Soil Bioretention Protects Juvenile Salmon and their Prey from the Toxic Effects of Stormwater Runoff,* Chemosphere (2015) (provided in initial disclosures); Mitchell et al. *Mitigating Tire Wear Particles in Stormwater with Permeable Pavements,* Science of the Total Environment (2023) (provided in initial disclosures); Ximin Hu et al., Stormwater Management Conference slideshow (2023) (provided in initial disclosures); Timothy F. M. Rodgers et al., *Bioretention Design Modifications Increase Simulated Capture of Hydrophobic and Hydrophilic Trace Organic Compounds,* Environmental Science and Technology 2024) (provided in initial disclosures); King County, prepared by Jennifer White, Jenée Colton, Fran Sweeney, Water and Land Resources Division; and Curtis Hinman, Curtis