ELIZABETH B. FORSYTH (Bar No. 288311)
eforsyth@earthjustice.org
JANETTE K. BRIMMER (*Pro Hac Vice*)
jbrimmer@earthjustice.org
AURORA R. JANKE (*Pro Hac Vice*)
ajanke@earthjustice.org
Earthjustice
810 3rd Ave #610
Seattle, WA 98104
Tel: (206) 343-7340

GREGORY C. LOARIE (Bar No. 215859)
gloarie@earthjustice.org
SCOTT W. STERN (Bar No. 336427)
sstern@earthjustice.org
Earthjustice
50 California Street #500
San Francisco, CA 94111
Tel: (415) 217-2000

ADAM J. BERGER (*Pro Hac Vice*)
berger@sgb-law.com
Schroeter Goldmark & Bender
401 Union St., Suite 3400
Seattle, WA 98101
Tel: (206) 622-8000

*Counsel for Plaintiffs Institute for Fisheries Resources
& Pacific Coast Federation of Fishermen's Associations*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INSTITUTE FOR FISHERIES RESOURCES, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, *et al.*,<br><br>Defendants. | Case No. 23-cv-05748-JD<br><br>**PLAINTIFFS' OPPOSITION TO SUMITOMO RUBBER USA, LLC'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

As recently as October 15, 2024, Defendant Sumitomo Rubber USA, LLC ("SRUSA"), represented that it manufactured 3.5 million tires annually, each of which contained 6PPD. SRUSA Answer ¶¶ 49–50 (ECF 164). Less than a month later, on November 11, 2024, SRUSA ceased its direct New York manufacturing activities. SRUSA Mot. Summ. J. ("SRUSA Mot.") at 4 (ECF 237). It is nonetheless likely that SRUSA tires are continuing to be sold, and it is virtually certain that SRUSA tires remain on U.S. roads, as they will for years to come. SRUSA's attempt to obtain summary judgment on the basis of its sudden cessation of New York manufacturing must therefore fail. Settled precedent holds that plaintiffs can maintain an Endangered Species Act ("ESA") claim for a violation causing continuing harm so long as there is effective relief that the court can order to redress the violation. Here, the harm that 6PPD in SRUSA tires is inflicting on salmonid populations is ongoing and remediable. Further, material disputes of fact remain concerning SRUSA's continuing role in manufacturing tires with 6PPD; SRUSA has not ceased all operations but rather has retained its tire materials engineers and "transition[ed] production across the company's existing global footprint." Decl. Elizabeth Forsyth ("Forsyth Decl.") ¶ 70 & Ex. 59. Finally, at the heart of this matter is a simple issue of fairness: SRUSA has known for years that its tires are killing fish, yet it has sought to cast doubt on the science while attempting to delay meaningful regulation. SRUSA should not be allowed to continue to evade liability while harm from its tires is ongoing.

## BACKGROUND

SRUSA's summary judgment motion asks this Court to release from ESA liability a company that for years knowingly manufactured tires containing a fish-killing chemical—tires that remain on the road to this day—while participating in industry-sponsored efforts to obfuscate and minimize the consequences of its actions. Like all Defendants in this case, SRUSA has long been aware of the environmental and health consequences of its tires. This awareness stems in part from SRUSA's participation in the Tire Industry Project ("TIP"), a group of the largest tire companies in the world, organized in 2005 to, among other things, fund the industry's own studies of the risks associated with tire and road wear particles ("TRWP"), the tiny debris

that forms due to tire abrasion with the road. *See id.* ¶¶ 4–5 & Exs. 1–2. SRUSA monitored the available TRWP research as a participant in TIP, as well as a member of the U.S. Tire Manufacturers Association ("USTMA")—the tire industry's U.S. trade group (which includes all Defendants). *Id.* TIP-funded research has long confirmed that TRWP are transported from roadways into aquatic environments, *id.*; *see also*, *id.* ¶¶ 6–8 & Exs. 3–5, but TIP-funded studies of the resulting environmental impacts for years reached conclusions strikingly favorable to the tire industry, *id.* ¶¶ 9–11 & Exs. 6–8. As the USTMA (representing SRUSA) stated in 2019: "TIP studies have evaluated environmental impacts of TRWP in the aquatic environment and concluded that TRWP in sediment is unlikely to have adverse effects on freshwater and sediment-dwelling species." *Id.* ¶ 12 & Ex 9.

At least as early as 2018, however, SRUSA (along with all Defendants) was aware of the growing body of non-industry research connecting tires to coho salmon deaths. *See id.* ¶¶ 7, 13–14 & Exs. 4, 10–11. This awareness grew in 2019 and 2020, as more such research was published and USTMA shared and discussed it with SRUSA and the other Defendants. *See id.* ¶¶ 15–20 & Exs. 10, 12–16. Nonetheless, SRUSA and the other Defendants (through USTMA) continued to publicly rely on TIP-funded research, insisting ███████████████████
████████████████████████████████████████████████████████
█████████████████████████████████. *Id.* ¶ 20 & Ex. 16.

In late 2020, a groundbreaking study published in the journal *Science* by Tian et al. ("Tian study") confirmed that 6PPD, a chemical used in 100 percent of on-road vehicle tires in the United States, reacts with ozone to form the chemical 6PPD-Q. Decl. of Edward Kolodziej Ex. A at 7–9. On November 24, 2020, SRUSA (along with all other Defendants) learned that 6PPD-Q from tires, transported to aquatic environments via roadway runoff, was the "primary causal toxicant" responsible for decades of mass die-offs of coho salmon. Forsyth Decl. ¶¶ 21–22 & Exs. 17–18. USTMA's President privately called this revelation ████████████
████████ *Id.* ¶ 23 & Ex. 19.

Following publication of the Tian study, SRUSA did not immediately remove 6PPD from tires. Nor did SRUSA seek to fund installation of remedial measures such as rain gardens, which

OPP'N TO SUMITOMO RUBBER USA, LLC'S MOT.
FOR SUMM. JUDG.
CASE NO. 23-cv-05748-JD

2

the industry has acknowledged to be effective at preventing harm to salmonids from 6PPD-Q. *Id.*
¶¶ 24–30 & Exs. 1, 20–25. Instead, SRUSA and the other Defendants, concerned with the media coverage, "mount[ed] a campaign to counter some of the very aggressive State accusations relating to particulate release into the environment," *id.* ¶ 31 & Ex. 26, and engaged in a multi-pronged attempt to control the media narrative and steer discussions of 6PPD toward industry talking-points and industry-funded science. *Id.* ¶¶ 31–38 & Exs. 26–33. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* ¶¶ 39–44 & Exs. 1, 19, 34–37, and ▮▮▮▮▮▮▮▮ that TIP-funded studies of TRWP are ▮▮▮▮ ▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮ *id.* ¶¶ 45–47 & Exs. 16, 38–39, the industry continued to release messaging stating TIP-sponsored studies have found a "low risk of toxicity" from TRWP. *Id.* ¶¶ 48–53 & Exs. 40–45.

Through USTMA, the industry also immediately sought to "prevent[] introduction of state and federal legislation to ban 6PPD." *Id.* ¶ 54 & Ex. 46. USTMA proactively requested that the California Department of Toxic Substances Control ("DTSC") add 6PPD/6PPD-Q to its list of chemicals of concern and initiate its process to analyze alternatives. *See id.* ¶¶ 55–56 & Exs. 47–48. This process ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶ 56 & Ex. 48. Further, it is slow-moving and provides the industry with ▮▮▮▮▮▮▮▮▮▮ as DTSC allows industry itself to analyze alternatives, *see id.* ¶¶ 57–58 & Exs. 37, 49,[1] and it allows 6PPD to remain in tires if DTSC determines no alternative is economically feasible. Cal. Code Regs., tit. 2, § 69506.5. USTMA then invoked DTSC's process to attempt to quash other efforts at regulating 6PPD, *id.* ¶¶ 58, 64–68 & Exs. 49, 54–58, a tactic that complemented the tire industry's extensive lobbying effort against any other oversight of 6PPD.[2]

---

[1] In July 2024, USTMA asked DTSC for an extra year extension of time in the process to "allow for additional preliminary performance testing" of seven of the "most promising" alternatives, all of which the industry and others have privately and/or publicly rejected due to performance, safety, and other concerns. Forsyth Decl. ¶¶ 59–63 & Exs. 37, 50–53.

[2] These lobbying efforts included requesting that a Washington state senator introduce a bill to strip the state of funding to consider 6PPD alternatives, Forsyth Decl. ¶ 64 & Ex. 54, and

In sum, SRUSA has knowingly engaged in behavior that kills ESA-protected fish while participating in an industry-wide effort to downplay sound science and impede efforts to regulate 6PPD. Its recent cessation of New York manufacturing does not exempt it from liability.

## ARGUMENT

### I. Plaintiffs' Section 9 "Take" Claim Against SRUSA Is Justiciable Because Harm from SRUSA's Tires Is Ongoing and the Court Can Order Effective Relief.

The threat to ESA-protected salmonids from SRUSA's tires remains ongoing, and this Court can still order effective relief. The Court should therefore deny SRUSA's motion.

The Ninth Circuit has explained that "where the violation complained of may have caused continuing harm and where the court can still act to remedy such harm by limiting its future adverse effects, the parties clearly retain a legally cognizable interest in the outcome." *Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241, 1245 (9th Cir. 1988). Thus, for ESA claims, where the threat from a past action remains ongoing and the court can order effective relief, plaintiffs' ESA claims remain justiciable. *See Los Molinos Mut. Water Co. v. Ekdahl*, 695 F. Supp. 3d 1174, 1203 (E.D. Cal. 2023); *Greenpeace Found. v. Mineta*, 122 F. Supp. 2d 1123, 1129 (D. Haw. 2000); *Ctr. for Biological Diversity v. EPA*, 316 F. Supp. 3d 1156, 1175 (N.D. Cal. 2018); *Cal. Native Plant Soc'y v. Norton*, No. 01CV1742 DMS (JMA), 2004 WL 1118537, at *6–*7 (S.D. Cal. Feb. 10, 2004). Here, SRUSA's tires remain on the road, continuing to cause harm to protected salmonids, Forsyth Decl. ¶ 69 & Ex. 1 (admitting SRUSA tires "[l]ikely" remain on the road), and this Court can order effective injunctive relief, such as requiring SRUSA to apply for a permit that would include funding measures to address ongoing harm from SRUSA tires on the road, such as rain gardens that prevent 6PPD-Q from SRUSA's tires from entering aquatic habitats. *See* Pls. Resp. to Rule 12(b)(1) MTD at 6–10 (ECF 128) (explaining available relief); *see also, e.g., Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 823–24 (9th Cir. 2018) (explaining a district court has latitude in fashioning injunctive relief in a Section 9 case to "adjust its relief to the exigencies of the case in accordance with the equitable principles

---

[redacted] *Id.* ¶ 33 & Ex. 28.

governing judicial action"); *San Luis Obispo Coastkeeper v. County of San Luis Obispo,* No. 2:24-cv-06854-SPG-AS, 2024 WL 5048365 (C.D. Cal. Dec. 9, 2024) (ordering detailed injunctive relief for a Section 9 violation, including requiring defendant to "thoroughly and expeditiously develop the [conservation plan] and ESA § 10 incidental take permit applications"). Plaintiffs can therefore maintain their ESA claim against SRUSA.

SRUSA cites no case supporting its position. Instead, SRUSA misconstrues Plaintiffs' complaint as "seek[ing] to compel SRUSA to refrain from doing something it is not doing and will not do in the future." SRUSA Mot. at 5. But Plaintiffs' complaint more broadly alleges that "Defendants' manufacturing and/or distribution of tires containing 6PPD has caused, and is continuing to cause" take, and asks the court broadly to "[e]njoin Defendants from continuing the unauthorized take" and "[g]rant such other and further relief as the Court deems just, equitable, and proper." Am. Compl. ¶¶ 105, 109, 111 (ECF 19). This makes this case similar to *Los Molinos Mutual Water Co.*, where plaintiffs alleged that debris that accumulated due to defendants' past unlawful conduct, blocking a fish ladder, was harming fish under ESA Section 9; defendants sought to dismiss plaintiffs' claim by contending "that past incidents cannot form the basis of a claim under § 9 of the ESA." 695 F. Supp. 3d at 1203. The district court disagreed because "the blockage has not been cleared and the threat it poses remains ongoing." *Id*.; *see also Cal. Native Plant Soc'y*, 2004 WL 1118537, at *7 (plaintiffs' ESA claims regarding the impact of a development on an ESA-protected plant species remained justiciable, even when the plant had been removed, when plaintiffs had sought "other and further relief" that the court could order); *Bear Warriors United, Inc. v. Lambert*, No. 6:22-cv-2048-CEM-LHP, 2025 WL 1122327, at *5–*7 (M.D. Fla. Apr. 11, 2025) (imposing ESA liability where previously discharged "legacy pollutants" that "persist in the environment and cause harmful effects long after they have entered the system" were the cause of ongoing Section 9 take of manatees).[3]

---

[3] The continuing harm caused by SRUSA's tires distinguishes its conduct from the injury complained of in *Coastal Environmental Rights Foundation v. Naples Restaurant Group, LLC*, 115 F.4th 1217 (9th Cir. 2024). In that case no "'present harm' [wa]s left to enjoin." *Id*. at 1224.

SRUSA essentially argues that shuttering its New York manufacturing plant has mooted Plaintiffs' claim. Yet the mootness doctrine counsels against summary judgment here, where SRUSA has for years manufactured tires it knew caused harm to salmonids, and now seeks to avoid liability simply through "transition[ing] production" elsewhere. Forsyth Decl. ¶ 70 & Ex. 59. "The Ninth Circuit has expressed concern that if the completion of the action challenged were sufficient to render the case nonjusticiable, entities could ignore environmental regulations, destroy the land or species at issue before the case gets to court, and then hide behind the mootness doctrine"—essentially what SRUSA seeks to achieve. *Cal. Native Plant Soc'y*, 2004 WL 1118537, at *6 (citing *Cantrell v. City of Long Beach,* 241 F.3d 674, 678 (9th Cir. 2001)). For this reason, "[c]ompletion of activity is not the hallmark of mootness. Rather, a case is moot only where no effective relief for the alleged violation can be given." *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1065 (9th Cir. 2002). SRUSA could not meet its heavy burden to establish mootness, even if it had tried. The Court should deny its motion.

## II. In the Alternative, Material Disputes of Fact Exist as to SRUSA's Ongoing Role in Manufacturing.

In the alternative, there are genuine issues of material fact as to SRUSA's contention that it "now conducts *no manufacturing or sales activities at all.*" SRUSA Mot. at 2. Such disputes preclude summary judgment. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

SRUSA did not end operations completely when it closed its New York plant in November 2024. Forsyth Decl. ¶ 70 & Ex. 59. Rather, according to its own notice to its suppliers, "SRUSA is finalizing plans to transition production across the company's existing global footprint," *id.*, while retaining its "materials design and materials lab" and associated engineers in SRUSA's "tire design group" in New York. Forsyth Decl. ¶ 71 & Ex. 1. Retained employees include David Johansen, SRUSA's "vice president of technical." *Id*. Today, Johansen is not only

---

That injunctive relief remains available for an ongoing harm also distinguishes this case from *Friends of Gualala River v. Gualala Redwood Timber, LLC*, No. 22-16924, 2024 WL 4345302, at *2 (9th Cir. Sept. 30, 2024), where completion of logging mooted appellants' ESA claim and plaintiffs failed to appeal the denial of injunctive relief.

still employed by SRUSA, but he is also still listed on DTSC's website as representing Sumitomo "globally in regards to the alternative analysis process" to address 6PPD pollution. *Id.*; Forsyth Decl. ¶ 72 & Ex. 60. Under DTSC's regulations, the "responsible entity" listed on this website ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Forsyth Decl. ¶ 73 & Ex. 61; Cal. Code Regs. tit. 2, § 69501.2. SRUSA's ongoing role in manufacturing tires with 6PPD creates genuine issues of material fact that precludes summary judgment in SRUSA's favor.

## CONCLUSION

SRUSA asks this Court "to 'forgive' potentially egregious" conduct, *Columbia Basin Land Prot. Ass'n v. Schlesinger*, 643 F.2d 585, 591 n.1 (9th Cir. 1981)—the continuing devastation of protected fish populations and the fishing communities that rely on them—solely because of SRUSA's strategic shift in corporate operations. "Such a result is not acceptable." *Id*. Plaintiffs respectfully request that the Court deny SRUSA's motion for summary judgment.

DATED this 23rd day of May, 2025.

/s/ Elizabeth B. Forsyth
ELIZABETH B. FORSYTH (CA Bar No. 288311)
eforsyth@earthjustice.org
JANETTE K. BRIMMER (*Pro Hac Vice*)
jbrimmer@earthjustice.org
AURORA R. JANKE (*Pro Hac Vice*)
ajanke@earthjustice.org
Earthjustice
810 3rd Ave #610
Seattle, WA 98104
Tel: (206) 343-7340

GREGORY C. LOARIE (CA Bar No. 215859)
gloarie@earthjustice.org
SCOTT W. STERN (CA Bar No. 336427)
sstern@earthjustice.org
Earthjustice
50 California Street #500
San Francisco, CA 94111
Tel: (415) 217-2000

| | |
|---|---|
| 1 | ADAM J. BERGER (*Pro Hac Vice*) |
| 2 | berger@sgb-law.com |
| | Schroeter Goldmark & Bender |
| 3 | 401 Union St., Suite 3400 |
| | Seattle, WA 98101 |
| 4 | Tel: (206) 622-8000 |
| 5 | |
| | *Counsel for Plaintiffs Institute for Fisheries Resources* |
| 6 | *& Pacific Coast Federation of Fishermen's Associations* |