UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INSTITUTE FOR FISHERIES RESOURCES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CONTINENTAL TIRE THE AMERICAS, LLC, et al.,<br><br>Defendants. | Case No. 23-cv-05748-JD<br><br>**ORDER RE SUMITOMO SUMMARY JUDGMENT** |

The crux of this environmental case is whether the use of N-(1,3-dimethylbutyl)-N'-phenyl-p-phenylenediamine (6PPD) in car and truck tires made by defendants resulted in road runoff in the form of 6PPD-quinone (6PPD-q) that is toxic to protected salmonid fish species in West Coast populations and caused a "take" under Section 9 of the Endangered Species Act, 16 U.S.C. § 1531 *et seq.* (ESA). Dkt. No. 19 (first amended complaint). Defendant Sumitomo Rubber USA, LLC (SRUSA), which is one of many tire suppliers named as a defendant, asks for summary judgment on the grounds that it exited the tire manufacturing business in the United States in 2024, and so cannot be liable under Section 9. *See* Dkt. No. 237. Another Sumitomo defendant, Sumitomo Rubber North America, Inc. (SRNA), did not seek summary judgment. The parties' familiarity with the record is assumed, and summary judgment is denied.

SRUSA's theory for summary judgment is straightforward. As attested to by its Vice President and General Counsel, SRUSA manufactured vehicle tires in the United States in a single facility located in the state of New York. Dkt. No. 273-1 ¶¶ 3-4 (Leonardi Decl.). It ceased manufacturing operations and tire production in the New York facility in November 2024. *Id*. ¶ 7. It states that the cessation will be permanent. *Id*. ¶ 9. SRNA exclusively marketed, distributed, and sold the tires in the United States made by SRUSA. *Id*. ¶ 5.

On these facts, SRUSA says that plaintiffs cannot prove a Section 9 claim against it. The amended complaint was filed in December 2023, approximately one year before SRUSA shut down the New York plant. *See* Dkt. No. 19. Now that "SRUSA does not manufacture or

distribute vehicle tires now and will not do so in the future," it contends that plaintiffs "have no factual basis for a Section 9 claim against" it. Dkt. No. 237 at 4.

The point is not well taken. To start, SRUSA's theory is premised on an unduly cramped reading of the amended complaint. In SRUSA's view, plaintiffs challenge only the "manufacture and/or distribution of tires containing 6PPD," which SRUSA does not currently do. *Id.*; *see also* Dkt. No. 263 at 3 (same in reply brief). But a fair reading of the amended complaint leaves no doubt that plaintiffs' Section 9 claim is directed to the ongoing discharge of 6PPD-q into aquatic environments from the use of tires manufactured by defendants on roadways. *See, e.g.,* Dkt. No. 19 ¶¶ 2-5, 76-80. This is the "Urban Runoff Mortality Syndrome" that is at the heart of plaintiffs' case. *Id.* ¶ 80. The take of salmonids is attributed to the transformation of 6PPD into 6PPD-q when it reacts to ozone and oxygen "[a]s vehicles drive and park on hard surfaces such as streets, roads, highways, parking lots, and alleys," and becomes a toxic runoff. *Id.* ¶¶ 76-79.

Consequently, SRUSA's suggestion that the amended complaint is limited to the literal manufacturing of tires is something of a straw man. The fact that SRUSA ended its manufacturing operations does not definitively answer plaintiffs' claim that the ongoing use of its tires on roadways is a source of toxic runoff that causes a take of protected species.

SRUSA also misconstrues the scope of injunctive relief available to plaintiffs. SRUSA says the best plaintiffs can do is win an order compelling SRUSA to stop making tires containing 6PPD, which it has already done. *See* Dkt. No. 237 at 5. In effect, SRUSA suggests that the Section 9 claim against it is moot because the Court cannot order effective relief under the ESA. Dkt. No. 263 at 3-4.

Not so. In environmental cases such as this one, the "completion of activity is not the hallmark of mootness." *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1065 (9th Cir. 2002). Even taking SRUSA's cramped reading of the amended complaint at face value, the mere fact that it stopped making tires is not the end of the inquiry. "The question is whether there can be *any* effective relief" available for plaintiffs' claims, irrespective of the relief initially sought when the amended complaint was filed. *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1245 (9th Cir. 1988) (quotation omitted) (emphasis in original). Plaintiffs suggest that an

injunction might require SRUSA to obtain a permit for the ongoing 6PPD-q discharges from the tires it has already manufactured that includes funding measures to abate the continuing harm caused by runoff. Dkt. No. 253 at 4. SRUSA did not meaningfully rebut this suggestion, or otherwise demonstrate that no relief might be available against it on the runoff claim alleged in the amended complaint.

SRUSA's mention of the Clean Water Act, 33 U.S.C. § 1251 *et seq.* (CWA), is misdirected. It analogizes the citizen lawsuit provision in the ESA to the one in the CWA, and invokes cases interpreting the CWA to say that past violations alone cannot support a remedy. *See* Dkt. No. 263 at 3-4 (citing *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 57 (1987); *Coastal Envtl. Rts. Found. v. Naples Rest. Grp., LLC*, 115 F.4th 1217, 1224 (9th Cir. 2024)[1]). But as discussed, plaintiffs are seeking relief for ongoing discharges of 6PPD-q, and not just past conduct by SRUSA. In addition, even under SRUSA's own reading of the amended complaint, it has not met the "heavy" burden of demonstrating that it is "*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Gwaltney*, 484 U.S. at 66 (quotation omitted) (emphasis in original). Simply saying, without more, that it "cannot reasonably be expected" to make tires again in the United States, Dkt. No. 263 at 4, is far from demonstrating with absolutely clarity that that is so, particularly in light of the factual disputes raised by plaintiffs, Dkt. No. 253 at 6-7. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 193-94 (2000) (remanding CWA mootness decision for facility that was closed, dismantled, and put up for sale, because "[t]he effect of both Laidlaw's compliance and the facility closure on the prospect of future violations is a disputed factual matter").

**IT IS SO ORDERED.**

Dated: December 23, 2025

_____
JAMES DONATO
United States District Judge

---

[1] This opinion was withdrawn and superseded after the parties finished briefing. *See Coastal Envtl. Rts. Found. v. Naples Rest. Grp., LLC*, 158 F.4th 1052, 1054 (9th Cir. 2025).